1
2
3
4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    BILLY ALABSI,                          Case No.  18-cv-06510-KAW

8                    Plaintiff,

9          v.                               **ORDER DENYING MOTION TO
                                            TRANSFER; GRANTING IN PART
10   SAVOYA, LLC,                           AND DENYING IN PART MOTION TO
                                            DISMISS**
11                   Defendant.
                                            Re: Dkt. Nos. 22, 34
12

13         Plaintiff Billy Alabsi brings this putative class and collective action against Defendant

14   Savoya, LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and various California

15   labor laws and regulations.  (First Amend. Compl. ("FAC"), Dkt. No. 29.)  Defendant now moves

16   to: (1) transfer the case to the Northern District of Texas, and (2) to dismiss the complaint.  (Def.'s

17   Mot. to Transfer, Dkt. No. 22; Def.'s Mot. to Dismiss, Dkt. No. 34.)  Having considered the

18   parties' filings, the relevant legal authority, and the arguments made at the March 21, 2019

19   hearing, the Court DENIES Defendant's motion to transfer and GRANTS IN PART and DENIES

20   IN PART Defendant's motion to dismiss.

21                         I.    BACKGROUND

22         Defendant operates a chauffeured limousine and luxury car transportation service.  (FAC ¶

23   15.)  Plaintiff worked as a driver for Defendant for approximately two years in San Francisco,

24   California.  (FAC ¶ 9.)  While working for Defendant, Plaintiff used the fictitious business name,

25   Translinks Limo.  (*See* Vendor Service Agreement ("VSA") at AP000001-2, Dkt. No. 23-1; Plf's

26   RJN re Mot. to Dismiss, Exh. A, Dkt. No. 45.)

27         Plaintiff alleges that Defendant derives all or nearly all of its revenue from providing

28   transportation services, relying on drivers like Plaintiff.  (FAC ¶ 15.)  The vast majority of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Defendant's business comes from corporate clients and recurrent contracts, rather than individual

2   members of the general public.  (FAC ¶ 17.)  Plaintiff further alleges, however, that Defendant

3   misclassified its drivers as independent contractors, rather than employees.  (FAC ¶¶ 15, 29.)

4       Plaintiff asserts that Defendant has and exercises extensive control over its drivers,

5   assigning specific customers, locations, pickup times, and destinations.  (FAC ¶ 18.)  Further,

6   while drivers have the right to decline assignments, they are penalized for declining jobs by not

7   receiving future jobs from Defendant.  (FAC ¶ 19.)  Defendant also requires drivers to provide

8   their own vehicles, which must usually be black, less than three years old, free of any visible

9   damage, and be on Defendant's list of approved sedans and SUVs.  (FAC ¶ 20.)  Plaintiff requires

10  drivers to use environmentally responsible maintenance procedures, including recycling used oil,

11  batteries, antifreeze, and tires.  (FAC ¶ 20.)  Vehicles must be stocked with an umbrella, bottled

12  water, newspapers, maps, GPS device, and a detailing kit.  (FAC ¶ 21.)  They must also be free of

13  magazines, tissues, candy, promotional materials, or items hanging from the rearview mirror.

14  Vehicles must be non-smoking and have a neutral order, and not contain visible air fresheners.

15  (FAC ¶ 21.)  Drivers must use tablets with computer-generated signage, cannot speak unless

16  spoken to, confirm radio and temperature preferences with passengers during the first five minutes

17  of the trip, and never discuss rates with passengers.  (FAC ¶ 22.)

18      Defendant monitors its drivers by requiring that they keep Defendant's app on and use

19  status update buttons to indicate when they are onsite, when the passenger is onboard, and when

20  the passenger is dropped off.  (FAC ¶ 23.)  Drivers must arrive at jobs fifteen minutes early, or

21  "spot time," and attend meetings, which they are not compensated for.  (FAC ¶¶ 32-33.)

22  Defendant also requires that drivers have liability insurance in a minimum amount set by

23  Defendant, that Defendant is listed as an Additional Insured on the insurance policy, and that the

24  policy come from an insurance carrier with an A.M. Best rating of A-VII.  (FAC ¶ 24.)  Finally,

25  Defendant has the right to terminate drivers without cause with 30 days' notice.  (FAC ¶ 25.)

26      Plaintiff asserts that by misclassifying drivers as independent contractors, Defendant fails

27  to reimburse drivers for expenses including vehicle costs and other operation costs such as

28  garaging, fuel, maintenance, repair, cleaning, licensing, insurance premiums, cell phone and

2

1   tablets services, and stocking the vehicle with Defendant-required items.  (FAC ¶ 29.)  Plaintiff

2   further alleges that after taking into account these expenses, drivers may earn less than minimum

3   wage.  (FAC ¶ 67.)  For example, Plaintiff estimates his average weekly expenses to exceed $800,

4   but that he sometimes made less than $800 -- including in the week of May 13-19, 2018 -- when

5   few jobs were available.  (FAC ¶ 67.)  Plaintiff also points to the failure to pay for spot time and

6   the mandatory meetings.  (FAC ¶ 68.)

7        Plaintiff also alleges that Defendant failed to pay overtime because Defendant

8   compensated its drivers at the same rate schedule for all hours worked, including overtime.  (FAC

9   ¶ 76.)  For example, Plaintiff states that he worked in excess of forty hours in the week of June 3

10  through June 9, 2018, but was not paid overtime compensation for the hours he worked in excess

11  of forty hours.  (FAC ¶ 77.)

12       On April 25, 2018, Plaintiff signed a new VSA in his capacity as an officer of Translinks

13  Limo.  (VSA at 1.)  The VSA included a choice of law and forum selection clause, which stated:

14       Governing Law.  This Agreement will be governed by and construed
        in accordance with the laws of the State of Texas, without giving
15      effect to any choice of law or conflict of law provisions or rule.  The
        choice of competent jurisdiction located in Dallas County, Texas
16      shall have sole and exclusive jurisdiction over any proceeding
        relating to or arising out of this Agreement.
17

18  (Id. ¶ 11g.)

19       On October 24, 2018, Plaintiff filed the instant putative class and collective action against

20  Defendant.  (Compl., Dkt. No. 1.)  Plaintiff seeks to bring a class action on behalf of all drivers

21  who worked for Defendant in California, and a collective action of all drivers who worked for

22  Defendant in the United States.  (See FAC ¶¶ 2-3.)  On December 10, 2018, Defendant filed a

23  motion to dismiss and a motion to transfer the case.  (See Dkt. No. 19; Def.'s Mot. to Transfer.)

24  On January 9, 2019, Plaintiff filed his amended complaint, bringing claims for: (1) failure to pay

25  minimum wage in violation of the FLSA; (2) failure to pay overtime in violation of the FLSA; (3)

26  failure to pay minimum wage compensation in violation of California Labor Code §§ 1194 and

27  1197, and Industrial Welfare Commission ("IWC") wage orders; (4) failure to pay overtime in

28  violation of California Labor Code §§ 510, 1194, and 1198, and IWC wage orders; (5) failure to

United States District Court
Northern District of California

3

reimburse business expenses in violation of California Labor Code § 2802; (6) failure to provide and/or authorize meal and rest periods in violation of California Labor Code §§ 226.7 and 512, and IWC wage orders; (7) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (8) waiting time penalties in violation of California Labor Code §§ 201-203; (9) unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*; and (10) civil penalties pursuant to the Private Attorneys General Act.  (FAC at 12-26.)  Defendant then filed a motion to dismiss the amended complaint, and the Court terminated the prior motion to dismiss as moot.  (Dkt. No. 41.)

On January 11, 2019, Plaintiff filed his opposition to Defendant's motion to transfer the case.  (Plf.'s Opp'n to Mot. to Transfer, Dkt. No. 31.)  On January 25, 2019, Plaintiff filed his opposition to Defendant's motion to dismiss.  (Plf.'s Opp'n to Mot. to Dismiss, Dkt. No. 39.)  That same day, Defendant filed its reply in support of its motion to transfer.  (Def.'s Reply re Mot. to Transfer, Dkt. No. 39.)  On March 6, 2019, Defendant filed its reply in support of its motion to dismiss.  (Def.'s Reply re Mot. to Dismiss, Dkt. No. 46.)  On March 13, 2019, Plaintiff filed objections to Defendant's request for judicial notice in support of the reply.  (Dkt. No. 48.)

## II.    LEGAL STANDARD

### A.    Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B.    Motion to Transfer

Generally, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  The party moving to dismiss based on forum non conveniens has the burden of showing that there is an adequate alternative forum and that the balance of private and public interest factors favors dismissal.  *Id.* at 1142-43.  "A

plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic)*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011).

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.  The Court must also give some weight to the plaintiffs' choice of forum.

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.6 (2013) (internal quotations and citations omitted).  Thus:

> The standard to be applied is whether, in light of these factors, defendants have made a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (internal quotations omitted).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  As with a motion to dismiss for forum non conveniens, a district court considering a § 1404(a) motion to transfer in the absence of a forum-selection clause "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.  Thus, the district court must "weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice." *Id.* (internal quotations omitted).

## C.     Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule

United States District Court
Northern District of California

1   12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

2   F.3d 729, 732 (9th Cir. 2001).

3          In considering such a motion, a court must "accept as true all of the factual allegations

4   contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

5   omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

6   there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

7   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

8   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

9   marks omitted).

10         A claim is plausible on its face when a plaintiff "pleads factual content that allows the

11  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

13  "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

14  will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

15         "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are

16  inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th

17  Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

18  a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a

19  probability requirement, but it asks for more than a sheer possibility that a defendant has acted

20  unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's

21  liability, it stops short of the line between possibility and plausibility of entitlement to relief."

22  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

23         If the court grants a motion to dismiss, it should grant leave to amend even if no request to

24  amend is made "unless it determines that the pleading could not possibly be cured by the

25  allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

26              ### III.   DISCUSSION

27  **A.   Request for Judicial Notice**

28         The parties make multiple requests for judicial notice, most of which are unopposed.

6

United States District Court
Northern District of California

1    Many of the requests are for sources that are from government sources, such as the U.S. District

2    Court's Judicial Caseload Profiles or other government websites.  Those requests are unopposed,

3    and thus the Court GRANTS the requests for judicial notice as to: (1) the U.S. District Courts-

4    Civil Statistical Tables for the Federal Judiciary, Table C-5; (2) the U.S. District Courts Judicial

5    Caseload Profiles for N.D. Cal. and N.D. Texas; (3) the California Secretary of State website

6    search results for "Translinks Limo;" (4) the City and County of San Francisco website search

7    result showing the registration of "Translinks Limo;" and (5) the San Francisco Municipal

8    Transportation Agency's new taxicab driver presentation.

9         The Court also GRANTS Defendant's request for judicial notice of the Delaware

10    Department of State entity details for "Translink Limo, LLC."  (Def.'s RJN ISO Reply re Mot. to

11    Dismiss, Exh. B, Dkt. No. 47.)  While Plaintiff opposes this request, courts have found that the

12    accuracy of the . . . Delaware Secretary of State's website[] cannot reasonably be questioned as

13    federal courts frequently rely on the accuracy of information obtained from government websites."

14    *Wells Fargo Bank, N.A. v. Weems*, CV 15-7768 RSWL (PJWx), 2016 WL 1118206, at *3 (C.D.

15    Cal. Mar. 22, 2016).  The Court notes, however, that there is no information on the entity details

16    that shows any connection of this entity to Plaintiff.

17         The Court DENIES Defendant's request to take judicial notice of the VSA.  (Def.'s RJN

18    ISO Mot. to Dismiss, Dkt. No. 36.)  Defendant argues judicial notice is warranted because the

19    complaint relies on the VSA.  While the Court may consider the VSA because it is essential to the

20    complaint, this does not make it "capable of accurate and ready determination by resort to sources

21    whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

22         The Court also DENIES Defendant's request to take judicial notice of the website,

23    translinklimo.com.  (Def.'s RJN ISO Reply re Mot. to Dismiss, Exh. C.)  While "[c]ourts have

24    taken judicial notice of websites maintained by parties to the action as reliable," Defendant makes

25    no showing that Plaintiff maintains this website or that it is connected to him.  *Kane v. Delong*,

26    Case No. 13-cv-5021-KAW, 2014 WL 894587, at *3 (N.D. Cal. Mar. 4, 2014).

27    **B.**      **Motion to Transfer**

28         Defendant argues that transfer to the Northern District of Texas is required because of the

VSA's forum-selection clause.  (Def.'s Mot. to Transfer at 6-9.)  In the alternative, Defendant

contends that the § 1404 factors weigh in favor of transfer.  (*Id.* at 9-17.)  The Court disagrees.

### i.   Forum Selection Clause

"The enforceability of the forum selection clause in [a] contract is controlled by *Bremen v.*

*Zapata Off-Shore Co.*, 407 U.S. 1 (1972), wherein the Supreme Court held that forum selection

clauses are presumptively valid."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir.

2004).  Because a forum selection clause is presumptively valid, it should be honored "absent

some compelling and countervailing reason."  *Bremen*, 407 U.S. at 12.  Thus, "[t]he party

challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement

would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-

reaching.'"  *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15.)  Courts recognize three

circumstances in which enforcement of a forum selection clause would be unreasonable: (1) if the

inclusion of the forum selection clause was the product of fraud or overreaching, (2) if the party

challenging the forum selection clause would effectively be deprived of his day in court if the

clause is enforced, or (3) if enforcement would contravene a strong public policy of the forum in

which the suit was brought.  *Id.*

Plaintiff does not assert that there was fraud or overreach, or that litigating in Texas would

be so burdensome as to deprive him of his day in court.  Instead, Plaintiff argues that the forum

selection clause contravenes California's strong public policy, as embodied in California Labor

Code § 925.[1]  (Plf.'s Opp'n to Mot. to Transfer at 3-6.)  Section 925 states, in relevant part:

> (a) An employer shall not require an employee who primarily
> resides and works in California, as a condition of employment, to
> agree to a provision that would do either of the following:

---

[1] In the alternative, Plaintiff argues that the VSA's choice of law provision would also contravene
California's policies.  (Plf.'s Opp'n to Mot. to Transfer at 6-9.)  While the Court need not consider
this argument because § 925 renders the forum selection clause unenforceable, the Court "[c]ourts
in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to
determining if the enforcement of a forum selection clause contravenes a strong public policy."
*Rowen v. Soundview Commc'ns, Inc.*, No. 14-cv-5530-WHO, 2015 WL 899294, at *4 (N.D. Cal.
Mar. 2, 2015).  "[A]bsent a total foreclosure of remedy in the transferee forum, courts tether their
policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable
only when it contravenes a policy specifically related to venue."  *Id.*

1            (1) Require the employee to adjudicate outside of California
a claim arising in California.

2            (2) Deprive the employee of the substantive protection of
California law with respect to a controversy arising in California.

3

4    (b) Any provision of a contract that violates subdivision (a) is
voidable by the employee, and if a provision is rendered void at the
request of the employee, the matter shall be adjudicated in

5    California and California law shall govern the dispute.

6        In *Jones v. GNC Franchising, Inc.*, the Ninth Circuit invalidated a forum selection clause

7    based solely on "California's strong public policy against enforcing such clauses in franchise

8    agreements, as expressed in § 20040.5 of the California Business and Professions Code."  211

9    F.3d 495, 497 (9th Cir. 2000).  There, the Ninth Circuit explained:

10   *Bremen* teaches that a strong public policy may be 'declared by
statute.'  407 U.S. at 15.  By voiding any clause in a franchise

11   agreement limiting venue to a non-California forum for claims
arising under or relating to a franchise located in the statute, §

12   20040.5 ensures that California franchisees may litigate disputes
regarding their franchise agreement in California courts.  We

13   conclude and hold that § 20040.5 expresses a strong public policy of
the State of California to protect California franchisees from the

14   expense, inconvenience, and possible prejudice of litigating in a
non-California venue.  A provision, therefore, that requires a

15   California franchisee to resolve claims related to the franchise
agreement in a non-California court directly contravenes this strong

16   public policy and is unenforceable under the directives of *Bremen*.

17   *Id.* at 498.

18       Analogizing to *Jones*, the district court in *Karl v. Zimmer Biomet Holdings, Inc.* held that §

19   925 rendered the forum selection clause voidable per public policy.  Case No. 18-cv-4176-WHA,

20   2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018).  Like § 20040.5, "[i]n Section 925, California

21   expresses a strong public policy to protect employees from litigating labor disputes outside of their

22   home state."  *Id.*

23       Defendant counters that § 925 should not void the forum selection clause.  First, Defendant

24   urges the Court to rely on *Yates v. Norsk Titanium US, Inc.*  (Def.'s Reply re Mot. to Transfer at 3.)

25   In dicta, the *Yates* court concluded that the "[p]laintiff's singular reliance on state public policy"

26   could not "outweigh[] the presumptively valid forum selection clause."  Case No. SACV 17-01089

27   AG (SKx), 2017 WL 8232188, at *3 (C.D. Cal. Sept. 20, 2017).  The district court explained that

28   "[f]ollowing the Supreme Court's decision in *Stewart* [*Org. v. Ricoh Corp.*, 487 U.S. 22, 31

United States District Court
Northern District of California

9

1    (1988)], district courts have recognized that a particular state's public policy is not dispositive as to

2    the enforceability of a forum selection clause." *Id.* (internal quotation omitted).  Thus, "[i]t

3    follows that the prevailing policy in a particular forum is only one relevant factor for a court's

4    consideration." *Id.*  The Court finds *Yates* unpersuasive.  Contrary to *Yates's* conclusion that

5    public policy is merely a factor, *Jones* makes clear that a strong public policy alone can invalidate

6    a forum selection clause. *See* 211 F.3d at 498.

7         Second, Defendant argues that § 925 does not apply in the instant case because the VSA is

8    between two companies (Translinks Limo and Defendant), rather than an employer and an

9    employee.  (Def.'s Reply re Mot. to Transfer at 3.)  Plaintiff, however, has stated that Translink

10   Limo is not a company or even a separate entity, but is merely a fictitious business name. (*See*

11   Plf's RJN re Mot. to Dismiss, Exh. A, Dkt. No. 45.)  The Ninth Circuit has found employer-

12   employee relationships where the plaintiffs were required to use a fictitious business name and

13   obtain a business license and commercial checking account to be hired.  *See Ruiz v. Affinity*

14   *Logistics Corp.*, 754 F.3d 1093, 1096 (9th Cir. 2014).

15        Third, Defendant contends that § 925 does not apply because the VSA is a vendor

16   agreement, not an employment agreement.  (Def.'s Reply re Mot. to Transfer at 4.)  Defendant

17   essentially argues that no employment relationship is created by the VSA; this case, however, is

18   squarely about whether the VSA creates an employment relationship.  Indeed, Plaintiff points to

19   terms of the VSA itself in arguing there is an employment relationship, including insurance

20   coverage requirements, termination of the agreement with thirty days' notice, the unilateral setting

21   of rates, vehicle requirements, maintenance requirements, and driver behavior.  (*See* VSA at 3, 7,

22   12-16.)  To the extent Defendant is relying on the fact that the VSA states it is a vendor

23   agreement, permitting the label of the agreement to dictate whether § 925 applies would elevate

24   form over substance, which would not be consistent with the strong public policy California has

25   stated in protecting its citizens from litigating employment disputes in a foreign forum.

26        Fourth, Defendant disputes which standard applies to determine whether Plaintiff has

27   adequately pled an employer-employee relationship.  As discussed below, however, the Court

28   finds that Plaintiff has adequately pled an employer-employee relationship under the FLSA's

1   economic reality test, California's *Borello* test, and the *Dyanmex* ABC test for IWC wage order

2   claims.

3   Fifth, Defendant argues that § 925 does not apply to drivers who do not reside in

4   California, and who may become members of Plaintiff's proposed collective action.  (Def.'s Reply

5   re Mot. to Transfer at 5.)  Defendant's argument is premature, as those drivers are not currently

6   members of this case, and may never become members if the collective action is not certified or

7   the out-of-state drivers do not opt in.  More importantly, the residency of other drivers does not

8   affect *Plaintiff's* ability to void the forum selection clause as to his claims under § 925.

9   Finally, Defendants contend that Plaintiff fails to adequately plead his claims.  (Def.'s

10   Reply re Mot. to Transfer at 6.)  As discussed below with respect to Defendant's motion to

11   dismiss, while the Court agrees that the overtime claim is not adequately pled, the others are.

12   The Court concludes that § 925 expresses California's strong public policy to prohibit

13   forum selection clauses that require California residents to litigate their employment disputes

14   outside of the state, and therefore the forum selection clause is unenforceable.

15       **ii.   Transfer Factors**

16   In the alternative, Defendant argues that transfer is warranted per the § 1404 factors.

17       a.   Choice of Forum

18   Typically, "[t]he defendant must make a strong showing of inconvenience to warrant

19   upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805

20   F.2d 834, 843 (9th Cir. 1986).  Here, Defendant argues that Plaintiff's choice of forum is entitled

21   to very little deference because Plaintiff seeks to bring a nationwide collective action.  (Def.'s Mot.

22   to Transfer at 10.)  When a plaintiff "represents a class, the named plaintiff's choice of forum is

23   given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (internal citations omitted).

24   "As deference accorded to a plaintiff's choice of forum decreases, a defendant's burden to upset the

25   plaintiff's choice of forum also decreases."  *Glaxo Grp. Ltd. v. Genentech, Inc.*, Case No. 10-cv-

26   675-JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010) (internal citation omitted).  In

27   weighing the deference due to the plaintiff's choice of forum, "consideration must be given to the

28   extent of both [the plaintiff's] and the [defendant's] contacts with the forum, including those

United States District Court
Northern District of California

relating to [the plaintiff's] cause of action." *Lou*, 834 F.2d at 739 (internal citation omitted).

In class actions, courts have given some deference to the named plaintiff's choice of forum where the plaintiff lived in the transferor district and the events at issue occurred in the transferor district. *See Hendricks v. StarKist*, Case No. 13-cv-729-YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). Here, Plaintiff is a resident of this district, and worked for Defendant exclusively in San Francisco. (FAC ¶ 9.) Plaintiff also seeks to represent a California class bringing claims under California labor law. (FAC ¶¶ 3-5.) This entitles Plaintiff's choice of forum to some deference. *See Shultz v. Hyatt Vacation Mktg. Corp.*, Case No. 10-cv-4568-LHK, 2011 WL 768735, at *3 (N.D. Cal. Feb. 28, 2011) (giving some weight to the plaintiff's choice of forum where the plaintiff lived and worked for the defendant in the district, and sought to represent both a nationwide class and a California class for violations of California law); *Holliday v. Lifestyle Lift, Inc.*, Case No. 09-cv-4995-RS, 2010 WL 3910143, at *6 (N.D. Cal. Oct. 5, 2010) (same).

### b. Convenience of Parties and Witnesses

Defendant argues that this factor weighs heavily in favor of transfer. First, Defendant contends that 119 of the 173 putative members of the nationwide collective action live in or east of Texas. (Def.'s Mot. to Transfer at 10.) In *Holliday*, however, the district court found it speculative to consider the convenience to unnamed members in a motion to transfer the case to Michigan. 2010 WL 3910143, at *7. There, 75 putative class members resided between Texas and the east coast, while 38 lived east of Colorado. *Id.* Thus, "because more putative class members actually reside in eastern states, transfer to Michigan might actually prove more convenient for plaintiffs as well as for defendants." *Id.* The district court then went on to find:

> [N]o class has thus far been certified. Additionally, an employee must 'opt in' to litigation under the FLSA. [Cite.] No other SICM employee has done so. Moreover, the California subclass will almost certainly reside within this State. At least so far, Holliday is the only named plaintiff and it would be speculative for this Court to consider fairness and convenience to unnamed plaintiff in as yet undetermined locations. While the Court entertains the possibility that class members might reside in districts closer to Michigan than to California, it is premature and misguided to ground a convenience decision on parties who may never need or with to appear, or to assume the only "convenience" factor is distance.

*Id.*; *see also Karl*, 2018 WL 5809428, at *6 ("no class or collective has yet been certified, so

United States District Court
Northern District of California

United States District Court
Northern District of California

1   named plaintiff is the only plaintiff in this action and his convenience merits greater consideration

2   than the putative class or collective members").  Such is the case here, where the collective action

3   has yet to be certified, and drivers closer to Texas may never opt in.  Thus, the Court finds that the

4   location of yet-identified plaintiffs do not weigh in favor of transfer.

5          Next, Defendant argues that the Northern District of Texas is more convenient for

6   Defendant and its witnesses, including the seven employee-witnesses most likely to testify in this

7   case.  (Def.'s Mot. to Transfer at 11-13.)  This weighs slightly in favor of transfer.  "[T]he

8   convenience of a litigant's employee witnesses are entitled to little weight because litigants are

9   able to compel their employees to transfer at trial, regardless of forum."  *Alul v. Am. Honda Motor*

10  *Co., Inc.*, Case No. 16-cv-4384-JST, 2016 WL 7116934, at *4 (N.D. Cal. Dec. 7, 2016) (internal

11  quotation omitted); *see also Hendricks*, 2014 WL 1245880, at *4 ("Even if StarKist is correct in

12  claiming that it will provide more witnesses and those witnesses will provide the most relevant

13  testimony in this case, StarKist still only refers to party witnesses, and not the non-party witnesses

14  with which this factor is chiefly concerned. . . [T]his will not be a sufficient reason to justify a

15  transfer[.]").  Transfer "is not appropriate merely to shift the inconvenience from one party to

16  another."  *Alul*, 2016 WL 7116934, at *4 (internal quotation omitted).

17         Finally, Defendant contends that the Northern District of Texas is more convenient for two

18  anticipated third-party witnesses.  (Def.'s Mot. to Transfer at 13-15.)  Defendant identifies one

19  driver in Houston, Texas and one driver in New York City, who will testify that they performed

20  services for their own independent businesses and Defendant's contractors.  (*Id.* at 14.)  "The

21  convenience of non-party witnesses is a more important factor than the convenience of party

22  witnesses."  *Alul*, 2016 WL 7116934, at *4 (internal quotation omitted).  The Court finds this

23  factor weighs in favor of transfer, although not heavily given there are only two witnesses

24  identified.  *See id.* at *4 ("a single third-party witness in a class action . . . weighs only slightly in

25  favor of transfer").

26         Taken together, the Court finds this factor weighs somewhat in favor of transfer.

27                 c.   The Ease of Access to Evidence

28  Defendant argues that this factor weighs heavily in favor of transfer because most of the

13

documents relating to this case are located at Defendant's headquarters in Dallas, and the policies at issue were developed in Dallas.  (Def.'s Mot. To Transfer at 15.)  "Courts have differing opinions on the continuing relevance of this factor in the digital age."  *Alul*, 2016 WL 7116934, at *5.  Some courts have found that "where electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of information."  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014); *Hendricks*, 2014 WL 1245880, at *4 ("the transportation of documents generally is not regarded as a burden because of technological advances in document storage and retrieval"); *Holliday*, 2010 WL 3910143, at *8 ("The reality of electronic communication and transmission at least dilutes the weight given to this convenience factor.").  Others have found that "[w]hile technological developments have reduced the weight of this factor in the transfer determination, this factor nonetheless weighs in favor of transfer."  *Roe v. Intellicorp Records, Inc.*, Case No. 12-cv-2567-YGR, 2012 WL 3727323, at *3 (N.D. Cal. Aug. 27, 2012).  The Court finds this factor weighs only slightly in favor of transfer.

### d.   Familiarity of Forum with Applicable Law

Here, Plaintiff asserts claims under the FLSA, as well as various California labor laws.  In *Karl*, the district court explained:

> The two districts are equally familiar with federal law, which forms the basis of the putative FLSA collective action; however, this district is more familiar with the state laws underlying the California class action claims.  But since other federal courts are fully capable of applying California law, this factor weighs only slightly against transfer.

2018 WL 5809428, at *6.  Such is the case here.  Accordingly, this factor weighs slightly against transfer.

### e.   Local Interest in Controversy

The Court finds this factor weighs somewhat in favor of transfer, as both states have a strong interest in the controversy.  Texas has a strong interest because Defendant's corporate headquarters are located there, and thus Texas "has a significant interest in monitoring allegedly unlawful behavior of companies within its borders."  *Hendricks*, 2014 WL 1245880, at *6; *see*

United States District Court
Northern District of California

14

*also Holliday*, 2010 WL 3910143, at *8. Likewise, because Plaintiff is a California resident, California "has an interest in protecting the rights of [Plaintiff] and any other members of the California subclass." *Holliday*, 2010 WL 3910143, at *8 (finding this factor neutral); *Hendricks*, 2014 WL 1245880, at *6 (same). Notably, in *Karl*, the district court found that this factor "tipp[ed] the scales against transfer" because "[s]ection 925 expresses California's interest in preventing contractual circumvention of its labor law." 2018 WL 5809428, at *7.

### f. Relative Court Congestion

The Court finds this factor very slightly favors transfer. The median time from filing to disposition is shorter in the Northern District of Texas (7 months) than in this district (7.2 months), as is the median time from filing to trial (28 months vs. 30 months). (*See* Def.'s RJN ISO Mot. to Dismiss, Exh. C.) The Court notes, however, that the median time from filing to disposition before pretrial is shorter in this district (6.4 months) than the Northern District of Texas (7.4 months). (*See* Def.'s RJN ISO Mot. to Dismiss, Exh. B.) Further, this district has far fewer cases that are over 3 years old (462 vs. 8,180). (Def.'s RJN ISO Mot. to Dismiss, Exh. C.) Taken together, these differences are not particularly meaningful. Moreover, even if the court congestion was more disparate, a court "should not transfer a case on the basis of docket congestion after determining the balance of the other factors weigh against transfer." *Hendricks*, 2014 WL 1245880, at *6 (internal quotation omitted).

### g. Weighing the Factors

After considering all of the factors, the Court finds that transfer is not warranted. While Plaintiff's choice of forum is not entitled to great deference, it is still owed some deference, which the remaining § 1404 factors do not outweigh. Again, the convenience of witnesses weighs somewhat in favor of transfer, while ease of access to evidence weighs only slightly in favor of transfer. The local interest weighs against transfer, while the familiarity of the court with the applicable law weighs slightly against transfer. The remaining factors are neutral. The Court therefore DENIES Defendant's motion to transfer.

///

///

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.    Motion to Dismiss[2]**

### i.    Plaintiff's Relationship with Defendant

First, Defendant argues that the complaint must be dismissed because "Plaintiff has not articulated the nature of his alleged employment relationship with [Defendant,]."  (Def.'s Mot. to Dismiss at 7.)  Defendant contends Plaintiff must specify whether Defendant is liable as a direct employer or a joint employer because the VSA was signed between Defendant and Translinks Limo, not Defendant and Plaintiff.  (*Id.*)  In support, Defendant points to *Johnson v. Serenity Transportation, Inc.*, which found that "a plaintiff seeking to hold multiple entities liable as joint employers must plead specific facts that explain how the defendants are related and how the conduct underlying the claims is attributable to each defendant."  141 F. Supp. 3d 974, 990 (N.D. Cal. 2015).  Here, however, Plaintiff does *not* seek to hold Translinks Limo liable for any alleged violations; he seeks only to hold *Defendant* liable for the alleged violations.  Further, Plaintiff states that Translinks Limo does not exist as a separate entity.  (*See* Plf.'s RJN re Mot. to Dismiss, Exh. A.)  Thus, Plaintiff is not required to further plead the nature of his relationship with Defendant.

### ii.    Taxicab Driver Exemption

Next, Defendant argues that Plaintiff's claims fail because of the exemptions for taxicab drivers, relying primarily on the Second Circuit's recent ruling in *Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208 (2d Cir. 2018).  (Def.'s Mot. to Dismiss at 17-18.)  The taxicab exemption "exemptions from the overtime require 'any driver employed by an employer engaged in the business of operating taxicabs.'"  29 U.S.C. § 213(b)(17).  In *Munoz-Gonzalez*, the Second Circuit determined that under the FLSA, a taxicab is: "(1) a chauffeured passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule,

---

[2] Plaintiff requests that the Court strike portions of Defendant's motion to dismiss, arguing that Defendant is attempting to get around the 25-page limit by using twenty-three single-spaced footnotes.  (Plf.'s Opp'n to Mot. to Dismiss at 21.)  Defendant responds that the Local Rules permit single-spaced footnotes.  (Def.'s Reply re Mot. to Dismiss at 15.)  While Defendant is technically correct, it is also inappropriate to put substantive arguments in footnotes.  *See Estate v. Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").  The Court denies Plaintiff's request to strike, but notes that it will not consider arguments raised only in footnotes and/or only on reply.

United States District Court
Northern District of California

1   fixed route, or fixed termini."  904 F.3d at 214.  In so finding, the Second Circuit relied primarily

2   on the dictionary definition of "taxicabs," as well as how the taxicab exemption fit within the

3   structure of the FLSA itself.  *Id.* at 214-15.

4          Without determining the persuasive value of *Munoz-Gonzalez*, the Court finds that based

5   on Plaintiff's allegations, the taxicab exemption does not apply.  Plaintiff has alleged in the

6   operative complaint that the "vast majority of [Defendant's] business comes from corporate clients

7   and recurrent contracts, rather than from individual members of the general public."  (FAC ¶ 17;

8   Plf.'s Opp'n to Mot. to Dismiss at 18.)  In *Munoz-Gonzalez*, the Second Circuit acknowledged that

9   "a company that received virtually all its business from recurrent contracts and corporate clients

10  might not be 'available for hire by individual members of the general public' under [its] three-part

11  definition."  904 F.3d at 217.  While Defendant argues that Plaintiff does not allege that members

12  of the general public are prohibited from doing business with Defendant, *Munoz-Gonzalez* does

13  not require a complete prohibition.  Instead, it noted that the defendant's recurrent contracts

14  "constituted a negligible amount -- less than 5%."  *Id.*; *contrast with McKinney v. Med. Grp.*

15  *Transp. LLC*, 988 F. Supp. 2d 993, 1002 (E.D. Wis. 2013) (concluding that a car service was not a

16  taxicab company because it received 95 to 98% of its business through recurrent contracts).  Thus,

17  at this stage, the Court cannot conclude that the taxicab exemption applies.

                iii.   **Employment Relationship**

18

19         Defendant argues that all claims should be dismissed because Plaintiff has failed to

20  adequately allege that drivers are employees rather than independent contractors under any of the

21  applicable tests.  As explained below, the Court finds that based on Plaintiff's allegations, the

22  Court cannot find that Defendant's drivers are independent contractors as a matter of law,

23  particularly at the pleading stage.

24                a.   FLSA

25         Under the FLSA, "'employees are those who *as a matter of economic reality* are dependent

26  upon the business to which they render service.'"  *Real v. Driscoll Strawberry Assocs., Inc.*, 603

27  F.2d 748, 754 (9th Cir. 1979) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).  The

28  Ninth Circuit has identified several factors for distinguishing employees from independent

contractors under the FLSA, which include:

> 1) the degree of the alleged employer's right to control the manner in which the work is performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists." *Id.* Rather, "[s]uch a determination depends 'upon the circumstances of the whole activity.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 772, 730 (1947)).

Defendant argues that as a matter of law, Plaintiff cannot demonstrate that he is an employee relying primarily on *Razak v. Uber Technologies, Inc.*, Civil Action 16-573, 2018 WL 1744467 (E.D. Penn. Apr. 11, 2018). (Def.'s Mot. to Dismiss at 20.) There, the district court found at summary judgment that UberBlack drivers were independent contractors under the FLSA, applying the same factors. The Court finds that *Razak* is distinguishable, and that Plaintiff has alleged sufficient facts to demonstrate an employment relationship under the FLSA.

### 1. Employer Control

The *Razak* court found that the employer control factor weighed heavily in favor of independent contractor status. There, the contract between Uber and its drivers gave drivers the "sole right" to determine how long the driver would use the app and Uber's services. 2018 WL 1744467, at *14. Drivers could hire sub-contractors, work for Uber's competitors, and log on to the Uber app as much or little as they wanted, subject to safety limitations. *Id.* at *15. Uber also did not require drivers to display its logo or colors on the vehicle, or require that drivers wear a uniform. *Id.* at *14. Drivers were free to reject trip requests for any reasons aside from unlawful discrimination, and independently decided where to go to offer rides. *Id.* at *4. No restrictions are placed on the drivers' ability to do personal activities while using the Uber app, including

18

1   accepting rides from private clients, sleeping, doing errands, smoking, and taking personal calls.

2   *Id.* at \*5.  Uber did not require how vehicles would be maintained.  *Id.*  While the district court

3   acknowledged that Uber could deactivate drivers for canceling trips, failing background checks,

4   falling short of a particular rating, or soliciting payments outside of the Uber app, it ultimately

5   found that the fact that Uber exercised some control over drivers when on the app did not convert

6   such drivers into employees.  *Id.* at \*14-16.  Instead, the district court compared the drivers to a

7   carpenter or plumber who is hired to complete a renovation project for a homeowner.  While the

8   homeowner could impose certain requirements, such as not permitting certain fumes, footwear, or

9   music, the conditions only applied when the carpenter or painter was in the home.  *Id.* at \*16.

10         Here, however, Plaintiff has alleged other instances of control that make *Razak*

11   distinguishable.  For example, unlike Uber drivers who could log on the Uber app as they liked,

12   Plaintiff alleges that Defendant assigns specific customers, and that they could not decline

13   assignments without being penalized by not receiving future jobs.  (FAC ¶ 18.)  Defendant also

14   enforced a strict dress code and requirements for drivers' vehicles, including maintenance

15   procedures and vehicle contents.  (FAC ¶¶ 19-21.)  Plaintiff also alleges that Defendant dictated

16   how drivers behaved prior to and during trips, including requiring that drivers use tablets with

17   computer-generated signs, not speaking unless spoken to, confirming customer preferences during

18   the first five minutes of the trip, and never discussing rates.  (FAC ¶ 22.)  Defendant also not only

19   required drivers to maintain liability coverage from particular carriers in a specific amount, but to

20   list Defendant as an additional insured.  (FAC ¶ 24.)  Defendant further had the right to terminate

21   drivers without cause upon 30 day' notice.  (FAC ¶ 25.)  Defendant also required drivers to attend

22   mandatory meetings.  (FAC ¶ 68.)

23         These allegations could compel a finding that Defendant had the right to control its drivers.

24   For example, in *Ruiz*, the Ninth Circuit found that the defendant had the right to control its drivers,

25   as the defendant controlled its drivers' rates, schedules, and routes, equipment, and appearance.

26   754 F.3d at 1101-02.  Drivers were required to report to the defendant's office, and attend

27   meetings.  *Id.* at 1102.  The defendant also had the right to monitor the progress of its drivers, and

28   to terminate drivers without cause with sixty days' notice.  *Id.*  The Court finds that at this stage,

United States District Court
Northern District of California

1    Plaintiff has sufficiently alleged facts that could demonstrate Defendant's drivers were subject to

2    control sufficient to show an employment relationship.

3                          2.    Opportunity for Profit or Loss

4            Next, the *Razak* court found that this factor strongly favored a finding of an independent

5    contractor relationship.  2018 WL 174467, at *16-17.  Specifically, the district court explained

6    that the drivers were permitted to work whatever hours they chose, including concentrating their

7    efforts around "surge pricing," when rates were higher.  *Id.* at *16.  Drivers could also work for

8    Uber's competitors, and choose not to accept trip requests to make money elsewhere.  *Id.* at *17.

9            In contrast, in *Flores v. Velocity Express, LLC*, the district court found that this factor

10   weighed in favor of employee status because the defendant had the ultimate authority to determine

11   pay, including by "determin[ing] the customer, the rate of pay for a particular route, the stops, and

12   the order of the stops before they even hired a driver to work the route."  250 F. Supp. 3d 468, 487

13   (N.D. Cal. 2017).  The *Flores* court also noted that to the extent the defendants argued that the

14   driver could have made himself available for more routes, "a worker's ability to simply work more

15   is irrelevant because more work may lead to more revenue, but not necessarily more profit."  *Id.*

16   (internal quotation omitted).

17           Based on the allegations, the Court finds this case to be more comparable to *Flores* than

18   *Razak*.  Plaintiff has alleged that Defendant assigns them their clients, and that they are, as a

19   practical matter, unable to turn down any jobs.  (FAC ¶ 18.)  Rates are also solely determined by

20   Defendant.  (FAC ¶ 16.)  Further, there are no allegations of "surge pricing" here, such that

21   Defendant's drivers could concentrate their hours during times when there were increased rates to

22   maximize profit.  Thus, the Court finds that this factor does not, as a matter of law, demonstrate an

23   independent contractor relationship.

24                          3.    Investment in Equipment

25           "When analyzing this factor under the economic realities test, the Ninth Circuit has

26   assessed the alleged employee's investment relative to the alleged employer's investment."  *Flores*,

27   250 F. Supp. 3d at 488; *see also Real*, 603 F.2d at 755.  In *Razak*, the district court found that this

28   factor strongly favored independent contractor status because UberBlack drivers had to purchase

                                              20

or lease their own expensive vehicles.  2018 WL 1744467, at *17.  *Razak*, however, did not

compare the cost of the vehicles to Uber's costs.

Here, Plaintiff's allegations show that drivers invest significantly in their equipment,

including the vehicle costs, operation costs, and insurance premiums.  (*See* FAC ¶ 29.)  There are

no allegations regarding Defendant's costs, such that the Court can determine as a matter of law

that this factor weighs in favor of an independent contractor status.

### 4.   Whether the Services Rendered Requires a Special Skill

"It is generally accepted that 'driving' is not itself a 'special skill.'"  *Razak*, 2018 WL

1744467, at *18; *see also Alexander v. FedEx Ground Package Sys.*, 765 F.3d 981, 995 (9th Cir.

2014).  While the *Razak* court noted that UberBlack drivers replicated a limousine experience,

such that drivers had to maintain a high level of customer service, the district court still concluded

that this factor weighed in favor of finding employee status.  *Id.*  Such is the case here.

### 5.   Degree of Permanence of the Working Relationship

Courts in the Ninth Circuit consider three factors: "whether the worker 'continuously

provided services to the alleged employer for a long period of time; whether the worker had 'a

fixed employment period; and whether the worker offered their services to different employers."

*Flores*, 250 F. Supp. 3d at 491 (internal quotations and modification omitted).

In *Razak*, the district court found that this factor weighed heavily in favor of independent

contractor status because drivers had complete freedom regarding how long they wished to work

for Uber and the hours in which they serve.  2018 WL 1744467, at *18-19.  Thus, there was "no

permanence of the working relationship whatsoever, unless the driver wants it."  *Id.* at *18.

The Ninth Circuit, however, has analyzed this factor differently, considering the overall

length of the working relationship rather than how workers acted during their working time.  For

example, in *Narayan v. EGL, Inc.*, the Ninth Circuit found that a contract which had automatic

renewal clauses and that could be terminated by either party upon 30 days' notice or breach of the

agreement was "a substantial indicator of an at-will employment relationship."  616 F.3d 895, 902-

03 (9th Cir. 2010).  In other words, "[t]his was not a circumstance where a contractor was hired to

perform a specific task for a defined period of time.  There was no contemplated end to the service

1    relationship at the time that the plaintiff Drivers began working for [the defendant]." *Id.* at 903.

2        Here, Plaintiff worked for Defendant for approximately two years, and there does not

3    appear to be a fixed period. (*See* FAC ¶ 9.) The absence of a defined period of time points to an

4    employment relationship. *See Narayan*, 616 F.3d at 903. Additionally, the VSA states that

5    "[e]ither party may terminate this Agreement, without cause, upon thirty (30) days written notice

6    to the other party." (VSA ¶ 11a.) In *Ruiz*, the Ninth Circuit recognized that a "mutual termination

7    provision is consistent with either an employer-employee or independent contractor relationship."

8    754 F.3d at 1105. Finally, there are no allegations to whether drivers could offer their services to

9    different employers. Based on these allegations, again, the Court cannot find that this factor

10   favors a finding of independent contractor relationship as a matter of law.

11                    6.   Whether the Services Rendered are Integral to the Hiring Entity's
12                         Business

13       Where "the workers play an integral role in the alleged employer's business, this shows

14   that the arrangement follows more closely that of an employer-employee relationship than an

15   independent contractor dynamic." *Flores*, 250 F. Supp. 3d at 492. The *Razak* court found that

16   "Uber drivers are an essential part of Uber's business as a transportation company," and that "it

17   seems beyond dispute that if Uber could not find drivers, Uber would not be able to function."

18   2018 WL 1744467, at *19. Thus, this factor weighed in favor of an employment relationship. *Id.*

19   Defendant does not dispute that this factor weighs a favor of an employment relationship in this

20   case as well. (Def.'s Mot. to Dismiss at 25.)

21               b.   *Borello* Test

22       Exclusively in footnotes, Defendant argues that Plaintiff also fails to satisfy the *Borello*

23   test for his state law claims. (*See* Def.'s Mot. to Dismiss at 19-20 n.18; 22 n.19; 24 nn.20-22; 25

24   n.23.) Arguments in footnotes are inappropriate. *Estate of Saunders*, 745 F.3d at 962 n.8. Even if

25   the Court did consider this argument, it cannot conclude as a matter of law that Defendant's drivers

26   are independent contractors.

27       California applies a right-to-control test, in which "'[t]he principal test of an employment

28   relationship is whether the person to whom service is rendered has the right to control the manner

United States District Court
Northern District of California

and means of accomplishing the result desired.'"  *Alexander*, 765 F.3d at 988 (quoting *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)).  Additionally, "[t]he right to terminate at will, without cause, is strong evidence in support of an employment relationship."  *Id.* (internal quotation omitted).  Other factors include: (1) whether the person performing services is engaged in a distinct occupation or business, (2) whether the work is usually done under the direction of the principal or by a specialist without supervision, (3) the skill required, (4) whether the principal or the worker supplies the instrumentalities, tools, and place of work, (5) the length of time for which the services are to be performed, (6) the method of payment, whether by the time or by the job, (7) whether the work is part of the regular business of the principal, and (8) whether the parties believe they are creating an employer-employee relationship.  *Id.* at 989.

Many of these factors overlap with the FLSA economic realities test discussed above, which again, do not as a matter of law demonstrate an independent contractor relationship.  Again, with respect to control, Plaintiff was required to provide a particular vehicle, maintain the vehicles in a particular way, accept all jobs or risk being penalized with no future jobs, follow a strict dress code, stock his vehicle with specific items, behave in specified ways, attend mandatory meetings, and purchase insurance with Defendant listed as an additional insured.  (*See* FAC ¶¶ 18-22, 24, 68.)  Such allegations could suggest a level of control that indicates an employee relationship.  *Contrast with Lawson v. Grubhub, Inc.*, 302 F. Supp. 3d 1071 (N.D. Cal. 2018) (finding after a bench trial no right to control where the defendant did not control which mode of transportation the plaintiff used to make deliveries, did not control the condition of that mode of transportation, did not control the plaintiff's appearance, did not require training or orientation, did not tell the plaintiff how to interact with customers, did not require specific supplies, and did not require the plaintiff to take on particular jobs).  Notably, Defendant also had a right to terminate at will with 30 days' notice, which can be strong evidence of the right to control.  *See Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) ("Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.") (internal quotation omitted).

1    As to the other factors that do not overlap with the FLSA economic realities' test, such

2    factors are either in dispute or relatively neutral.  For example, as to whether Plaintiff is engaged

3    in a distinct occupation or business, the parties dispute whether Plaintiff had a separate business.

4    If Plaintiff operated a distinct business of which Defendant was only one client, this could

5    demonstrate an independent contractor relationship.  If he did not, this could favor an employment

6    relationship.  *See Lawson*, 302 F. Supp. 3d at 1088-89.  The method of payment is also unclear, as

7    Plaintiff alleges that he could be paid either a flat-fee based on distance or hourly payments for

8    trips lasting more than two hours.  (FAC ¶ 16.)  Finally, the parties' intent to create an independent

9    relationship is neutral or only slightly favors an independent contractor relationship, as courts have

10   repeatedly emphasized that "the label placed by the parties on their relationship is not dispositive."

11   *Lawson*, 302 F. Supp. 3d at 1091; *Alexander*, 765 F.3d at 996-97.  Thus, the Court concludes that

12   Plaintiff has plausibly alleged an employment relationship as to the state labor law claims.

13            c.   ABC Test

14       In *Dynamex Operations W. v. Superior Court*, the California Supreme Court determined

15   that the ABC test applies to claims arising from an IWC wage order.  4 Cal. 5th 903, 956-57.  The

16   ABC test:

17            presumptively considers all workers to be employees, and permits
             workers to be classified as independent contractors only if the hiring
18            business demonstrates that the worker in question satisfies *each* of
             three conditions: (a) that the worker is free from the control and
19            direction of the hiring entity in connection with the performance of
             the work, both under the contract for the performance of such work
20            and in fact; *and* (b) that the worker performs work that is outside the
             usual course of the hiring entity's business; *and* (c) that the worker is
21            customarily engaged in an independently established trade,
             occupation, or business of the same nature as the work performed.
22

23   4 Cal. 5th 903, 955-56 (2018).  Thus, "[a] worker is an employee if the employer fails to prove any

24   of the above factors."  *Karl*, 2018 WL 5809428, at *3.

25       Defendant argues that it satisfies all three conditions.  The Court disagrees, particularly

26   with respect to Part B.  Part B considers whether the workers could be "reasonably viewed as

27   providing services to the business in a role comparable to that of an employee, rather than in a role

28   comparable to that of a traditional independent contractor.  Workers whose roles are most clearly

24

United States District Court
Northern District of California

1   comparable to those of employees include individuals whose services are performed within the

2   usual course of the business of the entity for which the work is performed . . . ."  *Dynamex*, 4 Cal.

3   5th at 959.  For example:

4           when a retail store hires an outside plumber to repair a leak in a
        bathroom on the premises or hires an outside electrician to install a
5       new electrical line, the services of the plumber or electrician are not
        part of the store's usual course of business and the store would not
6       reasonably be seen as having suffered or permitted the plumber or
        electrician to provide services to it as an employee.  On the other
7       hand, when a clothing manufacturing company hires work-at-home
        seamstresses to make dresses from cloth and patterns supplied by
8       the company that will thereafter be sold by the company, or when a
        bakery hires cake decorators to work on a regular basis on its
9       custom-designed cakes, the workers are part of the hiring entity's
        usual business operation and the hiring business can reasonably be
10      viewed as having suffered or permitted the workers to provide
        services as employees.

11

12  *Id.* at 959-60 (internal citations omitted).

13          Here, Defendant is alleged to "operate[] a chauffeured limousine and luxury car

14  transportation business" that "derives all or nearly all of its revenue from the provision of

15  transportation services."  (FAC ¶ 15.)  Drivers like Plaintiff provide the service of chauffeuring

16  Defendant's clients.  (FAC ¶ 15.)  Thus, drivers provide the chauffeuring services that are the core

17  of Defendant's business, making them akin to the seamstresses hired by a clothing manufacturing

18  company to make clothing for sale by the company.  *See Dynamex*, 4 Cal. 5th at 959-60.

19          Defendant previously acknowledged that under the FLSA economic realities test, the factor

20  of whether the service rendered is an integral part of the alleged employer's business weighed in

21  favor of employment status.  (Def.'s Mot. to Dismiss at 25.)  In its reply, Defendant argues that

22  Part B of the ABC test is satisfied because in *Razak*, the district court used a similar analogy of

23  plumbers and carpenters to explain why transportation network companies do not control their

24  drivers.  (Def.'s Reply re Mot. to Dismiss at 14.)  *Razak*, however, was using this analogy in the

25  context of employer control, *not* whether the worker was performing services within the usual

26  course of the hiring entity's business.  *See* 2018 WL 1744467, at *16.  Simply because *Razak* and

27  *Dynamex* were using similar analogies involving plumbers, electricians, and painters does not

28  mean they were discussing the same issue.  At the hearing, Defendant conceded that it could not

United States District Court
Northern District of California

United States District Court
Northern District of California

1    satisfy Part B.

2         Accordingly, because the Court finds that Defendant has not demonstrated Part B of the

3    ABC test, the Court finds that Plaintiff has sufficiently alleged an employment relationship as to

4    the IWC claims.

5                        iv.    **Sufficiency of Claims**

6                               a.   Minimum Wage Claims

7         Defendant argues that Plaintiff has failed to adequately plead his minimum wage claim

8    because he does not explain how he calculates Plaintiff's and the other drivers' compensation.

9    (Def.'s Mot. to Dismiss at 9-14.)  Defendant also contends that Plaintiff's minimum wage claims

10   are implausible in light of the VSA's rate schedule, which provided for rates of $75-100/hour for

11   trips that were more than two hours, and $90-284 for flat rate trips based on distance.  (*Id.* at 9-11;

12   *see* VSA at 9.)

13        Here, Plaintiff alleges that he is responsible for expenses, including the cost of purchasing

14   and maintaining an approved vehicle, liability insurance, cell phones and tablets, and clothing, and

15   that these weekly expenses exceeded $800.  (FAC ¶ 67.)  Plaintiff further asserts that there were

16   weeks such as between May 13 and 19, 2018, in which he earned less than that because few jobs

17   were available.  (FAC ¶ 67.)  Plaintiff also alleges that he was not paid for all hours worked, such

18   as the mandatory 15-minute "spot time" and mandatory meetings.  (FAC ¶ 68.)

19        Defendant contends that these allegations are insufficient because the costs of obtaining the

20   vehicles are not an employment-related expense.  (Def.'s Mot. to Dismiss at 9-10.)  Defendant,

21   however, provides no authority that the costs of obtaining a vehicle are never reimbursable.

22   Courts in this district have acknowledged that plaintiffs could seek reimbursement for vehicles.

23   *See Johnson v. Serenity Transp., Inc.*, Case No. 15-cv-2004-JSC, 2018 WL 3646540, at *14 (N.D.

24   Cal. Aug. 1, 2018) (finding for purposes of class certification that there were common questions

25   regarding whether the purchase of vehicles was a necessary expense for which the plaintiffs could

26   be reimbursed).

27        Defendant also argues that it is not plausible that Plaintiff's hourly rate could be reduced to

28   below $7.25 based solely on his expenses.  (Def.'s Mot. to Dismiss at 10-11.)  In particular,

United States District Court
Northern District of California

1   Defendant points to Plaintiff's allegation that he and other drivers "frequently work more than 40

2   hours per week." (FAC ¶ 76.) A driver, however, can work more than 40 hours in one week and

3   fewer hours in another week, such that their pay from jobs is less than their expenses.

4       Finally, Defendant points to cases such as *Yucesoy v. Uber Technologies, Inc.* and *Tan v.*

5   *GrubHub, Inc.*, where the courts rejected minimum wage claims because the plaintiffs failed to

6   allege information about the hours they were counting as compensable work time. (Def.'s Mot. to

7   Dismiss at 11-14.) In both cases, however, the plaintiffs were alleging that their entire shift was

8   compensable, even when they were not driving a passenger or making food deliveries. *Yucesoy*,

9   Case No. 15-cv-262-EMC, 2016 WL 493189, at *5 (N.D. Cal. Feb. 9, 2016); *Tan*, 171 F. Supp. 3d

10  998, 1008-09 (N.D. Cal. 2016). Thus, what plaintiffs were doing while waiting for a job was at

11  issue because whether such waiting time was compensable was "a fact-specific inquiry that looks

12  [at] the degree to which an employee is free to engage in personal activities." *Yucesoy*, 2016 WL

13  493189, at *5. Here, Plaintiff is not alleging that his waiting time is compensable for purposes of

14  his minimum wage claim; rather, he is alleging that there were weeks where he earned less than

15  his weekly expenses. (*See* FAC ¶ 67.) Thus, the facts regarding his waiting time is not at issue.

16      The Court finds that Plaintiff had adequately alleged his minimum wage claim.

17              b.   Overtime Claims

18      The Court, however, concludes that the overtime claim is not adequately pled. In *Landers*

19  *v. Quality Communications, Inc.*, the Ninth Circuit found that "at a minimum, a plaintiff asserting

20  a violation of the FLSA overtime provisions must allege that she worked more than forty hours in

21  a given workweek without being compensated for the hours worked in excess of forty during that

22  week." 771 F.3d 638, 645 (9th Cir. 2014). Such allegations must provide "sufficient detail about

23  the length and frequency of [the] unpaid work to support a reasonable inference that he worked

24  more than forty hours in a given week." *Id.* at 646. Thus, the Ninth Circuit affirmed the dismissal

25  of the plaintiff's overtime claim where the plaintiff failed to allege "any detail regarding a given

26  workweek when [the plaintiff] worked in excess of forty hours and was not paid overtime for that

27  given workweek . . . ." *Id.*

28      At the hearing, Plaintiff argued that per *Landers*, he need only identify a specific week in

1    which he worked more than forty hours.  The Court disagrees.  In *Bush v. Vaco Technology*

2    *Services, LLC*, the plaintiff alleged that she regularly worked more than ten hours a day and more

3    than sixty hours a week, and that she was paid a "fixed salary."  Case No. 17-cv-5605-BLF, 2018

4    WL 2047807, at *8 (N.D. Cal. May 2, 2018).  The district court found these allegations

5    insufficient because there were no "facts regarding 'what period of time or type of conduct' she is

6    counting as hours worked."  *Id.* at *9; *see also Tan*, 171 F. Supp. 3d 998 ("There are no allegations

7    about what period of time or type of conduct Plaintiffs are counting as hours worked.  Without

8    these basic factual allegations, the Court cannot conclude that Plaintiffs' . . . overtime claims are

9    plausible.").

10        Here, Plaintiff alleges that drivers were paid "according to the same rate schedule for all

11   hours worked, including overtime hours."  (FAC ¶ 76.)  Plaintiff also alleges that drivers "often

12   worked in excess of forty hours per workweek," and that he "worked in excess of forty hours

13   during the week of June 3 through 9, 2018."  (FAC ¶¶ 76-77.)  Plaintiff does not, however,

14   adequately identify what types of work he considers to be compensable.  For example, while

15   Plaintiff appears to allege that his hours include driving time, "spot time," and mandatory

16   meetings,[3] at the hearing he also stated that his compensable time included checking for referrals

17   and checking personalized text messages.  (*See* FAC ¶¶ 32-33.)  Thus, it is not clear what type of

18   conduct Plaintiff is counting as hours worked, such that the Court can determine whether the

19   drivers were working overtime.  The Court therefore DISMISSES the overtime claim with leave to

20   amend.

21            c.  Expenses, Meal and Rest Periods, Itemized Wage Statements, and Waiting
                 Time Penalties
22

23        Defendant also asserts that Plaintiff fails to adequately allege his other claims, relying

24   exclusively on a string cite.  (Def.'s Mot. to Dismiss at 16-17.)  The Court disagrees.

25        With respect to his § 2802 claim, Plaintiff has identified the unreimbursed expenses, which

26   include the cost of obtaining vehicles, operation, maintenance, garaging, repair, cleaning,

27

28   _____
     [3] Plaintiff does not state how long these meetings lasted, or how frequent they were.

28

1    licensing, insurance premiums, cell phone and tablets, and keeping the car stocked with items like

2    umbrellas.  (FAC ¶ 97.)  Plaintiff also alleges that these expenses were required by Defendant.

3    (FAC ¶¶ 19-21, 24.)  No more is required.  *See Tan*, 171 F. Supp. 3d at 1005 ("Section 2802

4    claims are sufficiently pled where the complaint identifies the particular expenses that were not

5    reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties.").

6           For his meal and rest periods claim, Plaintiff alleges that Defendant has no policies in

7    place to ensure lawful meal and rest breaks are provided.  (FAC ¶ 103.)  The absence of a policy

8    can form the basis of liability.  *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033

9    (2012) ("An employer is required to authorize and permit the amount of rest break time called for

10   under the wage order for its industry.  If it does not . . . it has violated the wage order and is

11   liable."); *Bradley v. Networkers Int'l., LLC*, 211 Cal. App. 211 Cal. App. 4th 1129, 1150 (2012)

12   ("Networkers argues *Brinker* is not controlling because . . . here plaintiffs are challenging the fact

13   that the employer's *lack* of a policy violated the law.  This is not a material distinction . . . .").

14          As to the accurate itemized statements claim, Plaintiff identifies the failure to show the

15   total hours worked, which he alleges injured drivers because they were unable to accurately

16   monitor the number of hours worked and thus seek all accrued overtime and minimum wage pay.

17   (FAC ¶¶ 113-14.)  Such allegations are sufficient for pleading purposes.  *See Johnson*, 141 F.

18   Supp. 3d at 1004 (finding sufficient allegations where the "[p]laintiff allege[d] that their wage

19   statements did not show the actual and total number of hours worked and that, as a result, they

20   have been precluded from accurately monitoring the number of hours worked, determining

21   whether they have been lawfully compensated for all hours worked, and seeking any owed

22   overtime").

23          Finally, Plaintiff has sufficiently pled the waiting time claim by asserting that he was not

24   paid his minimum wage, overtime wages, meal and rest period premiums, and business expenses

25   after leaving Defendant's employment.  (FAC ¶¶ 119-21.)  Defendant does not explain what more

26   is needed.  *Contrast with Yang v. Francesca's Collections, Inc.*, Case No. 17-cv-4950-HSG, 2018

27   WL 984637, at *6 (N.D. Cal. Feb. 20, 2018) (finding sufficient allegations where the plaintiff

28   alleged that she resigned and that the defendant failed to pay her unpaid overtime").

United States District Court
Northern District of California

29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES the motion to transfer, and GRANTS IN PART AND DENIES IN PART the motion to dismiss.  Plaintiff's overtime claim is dismissed with leave to amend.  Plaintiff may file an amended complaint addressing the deficiencies identified in this order within **ninety days** of the date of this order, along with any other amendments (*i.e.*, additional subclasses).  No new claims may be pled without leave of court or by stipulation.

IT IS SO ORDERED.

Dated: March 25, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge