1

2  BRYAN SCHWARTZ LAW
   BRYAN SCHWARTZ (SBN 209903)
3  RYAN CHIN (SBN 281777)
   180 Grand Avenue, Suite 1380
4  Oakland, California 94612
   Tel. (510) 444-9300
5  Fax (510) 444-9301
   Email: bryan@bryanschwartzlaw.com
6  rchin@bryanschwartzlaw.com

   Attorneys for Plaintiff Billy Alabsi
7  Individually and all others similarly situated

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12  BILLY ALABSI, on behalf of himself and all      Case No. 4:18-cv-06510-KAW
    others similarly situated,
13                                                   **NOTICE OF MOTION AND
                  Plaintiff,                         UNOPPOSED MOTION FOR
14                                                   PRELIMINARY APPROVAL OF
            v.                                       CLASS ACTION SETTLEMENT AND
15                                                   CERTIFICATION OF SETTLEMENT
    SAVOYA, LLC, and DOES 1 through 50               CLASS**
16  inclusive,
                                                     First Amended Complaint Filed: January 9,
17                Defendant.                         2019
18
                                                     Date:
19                                                   Time:
                                                     Place: Kandis A. Westmore
20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on this Unopposed Motion for Preliminary Approval of Class Action Settlement of Plaintiff Leona Marino ("Plaintiff") regarding his proposed settlement with Defendant Savoya, LLC ("Savoya") (Defendant together with Plaintiff, the "Parties"). The hearing will be held on December 5, 2019, at 1:30 p.m. in the Courtroom of the Honorable Kandis A. Westmore, located at 1301 Clay Street, Oakland, California 94612. At the hearing, the Parties will request that the Court: (a) preliminarily approve the Settlement; (b) certify the proposed class for settlement purposes only; (c) name Bryan Schwartz Law as Class Counsel, and Billy Alabsi as Class Representative; (d) name Rust Consulting, Inc. ("Rust") as Settlement Administrator; (e) approve the Class Notice to be sent to the Settlement Class, and (f) and schedule a final approval hearing date.

The Motion is based upon the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class and the Memorandum of Points and Authorities in support thereof; the Declaration of Bryan J. Schwartz, Esq., in support of the Motion and the exhibits thereto, including the Settlement Agreement and the Proposed Notice to the Class; the Declaration of Billy Alabsi; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: October 23, 2019

BRYAN SCHWARTZ LAW

By: ___*/s/ Bryan J. Shwartz*_____
BRYAN J. SCHWARTZ

*Attorneys for Plaintiff and the Putative Class*

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:18-cv-06510-KAW

1

2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

3

4

I.      INTRODUCTION .................................................................................................... 1

5

II.     RELEVANT PROCEDURAL BACKGROUND ................................................... 2

6

III.    FACTUAL BACKGROUND ................................................................................. 3

7

IV.     THE PROPOSED SETTLEMENT TERMS AND FACTORS IN PARTIES'
        DECISION TO SETTLE ........................................................................................ 4

8

9

        A.      The Risk of Non-Payment Arising from the Defendant's Financial Concerns. ......... 5

10

        B.      Complex Litigation Concerning Independent Contractor Status Always Presents
                Uncertainty. ..................................................................................................... 6

11

        C.      Willfulness ........................................................................................................ 8

12

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. ......... 9

13

        A.      The Settlement Satisfies Rule 23 Requirements for Purposes of Settlement ............ 10

14

        B.      The Settlement Is Fair, Adequate and Reasonable ............................................. 11

15

16

                1.      The Settlement Is Non-Collusive and Was the Product of Extensive
                        Negotiations. ....................................................................................... 11

17

                2.      No Deficiencies in Settlement Agreement. ......................................... 12

18

                3.      No Preferential Treatment. ................................................................. 12

19

                4.      The Settlement Falls Within the Range of Possible Approval. ........... 12

20

        C.      The Service Awards are Warranted. ................................................................ 15

21

22

        D.      Attorneys' Fees at the Ninth Circuit's Benchmark of Twenty-Five Percent of the
                Common Fund are Justified. ............................................................................. 17

23

        E.      The Notice to the Class Is Sufficient ................................................................ 17

24

        F.      The Requested *Cy Pres* Beneficiary Is Appropriate ........................................ 19

25

VI.     CONCLUSION ..................................................................................................... 19

26

27

28

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:18-cv-06510-KAW

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*,
765 F.3d 981 (9th Cir. 2014)..................................................................... 7

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015)................................................................... 10

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003)..................................................................... 8

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245, 268 (N.D. Cal. 2015) .................................................... 15, 17

*Biggs v. Wilson*,
1 F.3d 1537, 1541-42 (9th Cir. 1993) ...................................................... 18

*Boeing Co., v. Van Gemert.*,
444 U.S. 472, 478 (1980) .......................................................................... 17

*Bonnette v. California Health & Welfare Agency*,
704 F.2d 1465 (9th Cir. 1983) .................................................................. 7

*Boyd v. Bank of Am. Corp.*,
CV 13–0561 (C.D. Cal.) ............................................................................ 16

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .......................................................... 9

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................ 6

*Buccellato v. AT & T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................... 16, 18

*Buckingham v. Bank of America, N.A.*,
3:15-cv-6344-RGS (N.D. Cal.) .................................................................. 15

*California Trucking Ass'n v. Su*,
903 F.3d 953 (9th Cir. 2018)..................................................................... 7

*Christopher v. SmithKline Beecham Corp.*,
132 S. Ct. 2156 (2012) .............................................................................. 8

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004)..................................................................... 18

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)................................................................... 9

*Custom Led, LLC v. eBay, Inc.*,
 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013)................................................................. 10

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2013).......................................................................................... 19

*Dent v. ITC Serv. Grp., Inc.*,
 2013 WL 5437331 (D. Nev. Sept. 27, 2013) .................................................................. 17

*Ellis v. Costco Wholesale Corp.*,
 285 F.R.D. 492, 506 (N.D. Cal. 2012) ............................................................................ 10

*Encino Motors v. Navarro*,
 138 S. Ct. 1134 (2018) ...................................................................................................... 8

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
 307 F.3d 997 (9th Cir. 2002)........................................................................................... 17

*Fleming v. Covidien Inc.*,
 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) .................................................................. 9

*Fowler v. Wells Fargo Bank, N.A.*,
 2019 WL 330910 (N.D. Cal. 2019).................................................................................. 18

*Franklin v. Kaypro Corp.*,
 884 F.2d 1222 (9th Cir. 1989).......................................................................................... 9

*Glass v. UBS Fin. Servs., Inc.*,
 2007 WL 221862 (N.D. Cal. 2007)........................................................................ 6, 15, 18

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1027 (3rd Cir. 1998) ........................................................................................ 14

*Harris v. Vector Marketing Corp.*,
 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .......................................................... 11, 12

*Hendricks v. Starkist Co*,
 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............................................................... 12

*In re Anthem, Inc. Data Breach Litig.*,
 2018 WL 3872788 (N.D. Cal. Aug. 15, 2018)................................................................... 6

*In re Beef Indus. Antitrust Litig.*,
 607 F.2d 167, 179 (5th Cir. 1979)................................................................................... 11

*In re Farmers Insurance Exchange*,
 481 F.3d 1119 (9th Cir. 2007).......................................................................................... 7

*In re Mercury Interactive Corp. Securities Litigation*,
 618 F.3d 988, 994-95 (9th Cir. 2010) ....................................................................... 12, 18

*In re Novartis Wage and Hour Litig.*,
 611 F.3d 141 (2d Cir. 2010).............................................................................................. 8

*In re Omnivision Techs., Inc.,*
    2007 WL 4293467 (N.D. Cal. 2007)..................................................................... 18

*In re Warner Comm'cns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985)......................................................................... 6

*Kakani v. Oracle Corp.,*
    2007 WL 1793774 (N.D. Cal. June 19, 2007) ..................................................... 12

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012).................................................................................. 5

*Lawson v. Grubhub, Inc.,*
    302 F. Supp 3d 1071 (N.D. Cal. 2018) .................................................................. 1

*Lazarin v. Pro Unlimited, Inc.,*
    2013 WL 3541217 (N.D. Cal. July 11, 2013) ...................................................... 18

*Lusby v. Gamestop Inc.,*
    2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) ..................................................... 15

*Ma v. Covidian Holding, Inc.,*
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .................................................. 14, 15

*McKenzie v. Fed. Exp. Corp.,*
    2012 WL 2930201 (C.D. Cal. July 2, 2012) ........................................................ 13

*O'Sullivan v. AMN Servs., Inc.,*
    12-cv-2125 (N.D. Cal.) ......................................................................................... 15

*Officers for Justice v. Civil Service Comm'n of City & County of San Francisco,*
    688 F.2d 615, 625 (9th Cir. 1982)................................................................... 10, 14

*Real v. Driscoll Strawberry Assocs., Inc.,*
    603 F.2d 748 (9th Cir. 1979).................................................................................. 7

*Rodriguez v. West Pub. Corp.,*
    563 F.3d 948, 965-966 (9th Cir. 2009) ............................................................. 9, 14

*Ross v. U.S. Bank Nat. Ass'n,*
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) .................................................... 16

*Rutti v. Lojack Corp.,*
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ...................................................... 16

*Saleem v. Corporate Transportation Group, Ltd.,*
    845 F.3d 131 (2d Cir. 2017)................................................................................... 7

*Satchell v. Fed. Exp. Corp.,*
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................................... 11

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003)................................................................................... 9

*Stranger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016)............................................................... 17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)................................................................. 6

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ..................................................... 15

*Vazquez v. Jan-Pro Franchising Int'l, Inc..*,
    901 F.3d 1107 (9th Cir. 2019).......................................................... 1, 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)........................................................... 18

*Willner v. Manpower Inc.*,
    35 F.Supp.3d 1116 (N.D. Cal. 2014) .................................................... 8

*Wright v. Adventures Rolling Cross Country, Inc.*,
    No. C-12-0982 (N.D. Cal.) ................................................................ 16

**State Cases**

*Armenta v. Osmose, Inc.*,
    135 Cal.App.4th 314 (2005) ................................................................ 8

*Dynamex Operations West v. Superior Court*,
    4 Cal. 5th 903 (2018) ........................................................... 1, 6, 7, 13

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
    48 Cal. 3d 341 (1989) ...................................................................... 1, 7

**Federal Statutes and Rules**

29 U.S.C. § 255(a) ................................................................................. 8

29 U.S.C. § 260 ..................................................................................... 8

Fed. R. Civ. P. 23 ................................................................................ 18

**State Statutes**

California Labor Code § 203 .................................................................... 8

California Labor Code § 226 .................................................................... 8

California Labor Code § 226.8 ............................................................ 8, 10

California Labor Code § 1194 .................................................................. 7

California Labor Code § 2699(e)(2) ..................................................... 9, 13

**Other Authorities**

Carlson, Richard R., *Why the Law Still Can't Tell an Employee When It Sees One and How It Ought to Stop Trying*, 22 Berkeley J. Emp. & Lab. L. 295 (2001)...................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a collective and class action against Defendant Savoya, LLC ("Savoya" or "Defendant"), brought by drivers allegedly misclassified as independent contractors. In this unopposed motion, Plaintiff seeks preliminary approval of a $750,000 settlement of this matter on behalf of 44 drivers who worked for Savoya as drivers in California at any time between January 1, 2016, through the date of Preliminary Approval.

Whether a driver for a chauffeured limousing and luxury car transportation service should be classified as an employee or an independent contractor remains a complex, fact-intensive issue for which the jurisprudence is still very much developing and evolving. *See Dynamex Ops. W. Inc. v. Superior Court*, 4 Cal. 5th 903 (2018) (establishing test to determine whether an individual is an employee or an independent contractor); *see also Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 930 F.3d 1107 (9th Cir. 2019) (certifying for the California Supreme Court the question of whether *Dynamex* applies retroactively). Cases in this Circuit with some similar facts, while distinguishable in Plaintiff's estimation, underscore the merits-related and certification challenges present here. *See, e.g., Lawson v. Grubhub, Inc.*, No. 302 F. Supp. 3d 1071 (N.D. Cal. 2018) (Corley, M.J.) (applying the *Borello* factors and holding that drivers for a food delivery company were independent contrators and not employees). Plaintiff and Defendants each maintain they would have prevailed ultimately as to the employee/contractor disputes.

Perhaps even more significantly, at mediation, Defendant, along with counsel, communicated to Plaintiff and undersigned counsel that there are financial concerns about Defendant's ability to any judgment or settlement amount beyond a certain threshold, and if not structured for payout over a period of time.

Plaintiff would have to take and defend numerous depositions, win and maintain through trial class action certification, survive Defendant's motion for summary judgment, navigate whether and the extent to which the California Supreme Court's decision in *Dynamex* applies retroactively to this matter, and potentially evaluate the impact of new legislation (for example, California Assembly Bill 5) on the employee/contractor question – all risky and expensive

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

propositions that would have, at minimum, greatly delayed and probably diluted recovery for the class action members.

Despite the lack of clear legal precedent and the financial risks, and after contentious litigation and a protracted, arms'-length settlement negotiation, following one full day of mediation and weeks of additional negotiations, the Parties reached resolution. Plaintiff is seeking approval of a settlement by which class members will receive meaningful financial recovery based on the number of hours they worked. Each of these workers will receive an average gross recovery of over $17,000 – an average net payment of nearly $12,500. The Court should readily grant preliminary approval of the proposed settlement, and approve the notices, class representatives, and settlement administrator.

## II.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed this class and collective action in this Court on October 24, 2018. ECF No. 1. Plaintiff's First Amended Complaint ("FAC"), filed on January 19, 2019, alleges ten causes of action of federal and state wage law arising from Plaintiff's central theory of independent contractor misclassification. ECF No. 29. On March 25, 2019, the Court denied Defendant's motion to transfer and granted in part and denied in part Defendant's motion to dismiss, dismissing Plaintiff's claim for overtime wages with leave to amend. ECF No. 52.

To date, the parties have completed some pre-certification and merits discovery and litigation, including Defendant's production of thousands of pages of document discovery and the class list to Plaintiff, in addition to the exchange of informal discovery in preparation for mediation. The parties attended a successful mediation with mediator Cynthia Remmers on August 29, 2019. Declaration of Bryan J. Schwartz ("Schwartz Decl.") at ¶ 5. The Parties arrived at a Memorandum of Understanding that evening (*id.* at ¶ 6), and fully executed a Long-Form Settlement Agreement on October 18, 2019. *Id.* at ¶ 7; Schwartz Decl., Ex. 1 ("Ex. 1" or "Settlement Agreement").

In agreeing to the terms contained in the Settlement Agreement, Plaintiff relied not only upon the extensive information, documents, and data provided by Plaintiff and Defendants in discovery, but also upon Defendant's financial state as represented at mediation. Schwartz Decl.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

at ¶ 8. As such, Plaintiff was well-equipped to evaluate the strengths and weaknesses of his class claims regarding Defendant's liabilities, possible exemption defenses, the likelihood of class certification, Defendant's potential damages exposure, and the risk of non-payment. *Id.* at ¶ 9.

## III.    FACTUAL BACKGROUND

Defendant operates a chauffeured limousine and luxury car transportation service. (FAC ¶ 15.) Plaintiff worked as a driver for Defendant for approximately two years in San Francisco, California. (FAC ¶ 9.)

Plaintiff alleges that Defendant derives all or nearly all of its revenue from providing transportation services, relying on drivers like Plaintiff. (FAC ¶ 15.) The vast majority of Defendant's business comes from corporate clients and recurrent contracts, rather than individual members of the general public. (FAC ¶ 17.)

Plaintiff asserts that Defendant has and exercises extensive control over its drivers by assigning specific customers, locations, pickup times, and destinations, by penalizing drivers for declining jobs, and by monitoring its drivers through Defendant's app. (FAC ¶¶ 18-19, 23.) Plaintiff alleges that Defendant also requires drivers to provide, maintain, and present their own vehicles in a manner consistent with Defednant's detailed specifications. (FAC ¶¶ 20-21, 24.) Drivers' conduct and client interactions are also dictated by Defendant's rules and specifications, according to the lawsuit. (FAC ¶ 22.) Further, Plaintiff contends that Defendant has the right to terminate drivers without cause with 30 days' notice. (FAC ¶ 25.)

Plaintiff asserts that by misclassifying drivers as independent contractors, Defendant fails to reimburse drivers for expenses including vehicle costs and other operation costs required to perform the job. (FAC ¶ 29.) Plaintiff alleges that after taking into account these expenses, drivers may earn less than minimum wage, and also alleges that Defendant failed to pay overtime because Defendant compensated its drivers at the same rate schedule for all hours worked, including overtime. (FAC ¶¶ 67, 76.) Plaintiff also points to the failure to pay for spot time and the mandatory meetings. (FAC ¶ 68.)

Defendant maintains that these allegations, even if true, are not enough to establish that Plaintiff and the other Drivers were employees rather than independent contractors.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

## IV.    THE PROPOSED SETTLEMENT TERMS AND FACTORS IN PARTIES' DECISION TO SETTLE

Out of the $750,000, of which the full amount has been guaranteed by a Standby Letter of Credit ("SLOC") from Defendant's commercial bank (Schwartz Decl. at ¶ 11), the Settlement calls for:

- a net payment of $537,500 to 44 class members (*i.e.,* approximately $12,216 per person),[1] none of which will revert to Defendant (unless the settlement fails to receive Court approval, or more than 4 class members opt out and Defendant elects to exercise their reserved right to recission);

- $187,500 in attorneys' fees and out-of-pocket expenses;

- $7,500 in penalty payments to the Labor and Workforce Development Agency (Ex. 1 at ¶¶ 23, 61);

- $7,500 as an incentive award to representative Plaintiff Billy Alabsi (*id.* at ¶¶ 20, 56);

- and up to $10,000 to compensate the proposed Settlement Administrator, Rust. (*id.* at ¶¶ 45, 52.)

Each class member's allocation will be a *pro rata* share of the net settlement sum based on the number of workweeks completed during the relevant class period. *See id.* at ¶¶ 25, 47. Any unclaimed funds, as a result of checks that remain uncashed ninety (90) days after mailing will be redistributed *pro rata* to participating Class Members in subsequent allocations, and, if uncashed from the final allocation, will be distributed *cy pres* (*id.* at ¶ 48) to Legal Aid at Work.

The parties request that the Court appoint Rust, a reputable claims administration firm, which submitted a competitive bid relative to two other settlement administration firms, and has provided good service to the parties in successfully administering other wage-and-hour class settlements. Schwartz Decl. ¶ 16. When the Court provides authorization to send the Class Notice to the Settlement Class, the Settlement Administrator will mail the Class Notice to all class members, using the most current mailing address from Defendant's records or any more current address discovered from an address search. Ex. 1 at ¶ 63(a). The agreed-upon Class Notice (Schwartz Decl., Ex. 2) describes the litigation, the terms of the Settlement, and each Class

---

[1] According to Savoya's records, the Class Memebers include 44 drivers that worked for Savoya during the class period. Schwartz Decl. at ¶ 13. Dividing the proposed net class member recovery of $537,500 by 44 class members equals $12,216 per member.

member's options with regard to participating in the Settlement. The Class Notice also provides information regarding the consequences of doing nothing, the final approval hearing, and how class members can obtain additional information or opt out of the settlement. *Id.*

Class members who do not timely opt out of the Settlement Class will be deemed members of the relevant class. *Id.* at § 10(b). Class members who do opt out will not receive a settlement payment, but also will not be subject to the release of claims. *Id.* at § 14. In addition, as explained in more detail in the Class Notice, participating Class members can state objections. *Id*. at §§ 16-17.

All participating Class members will be subject to the judgment and its associated release of claims. *Id.* at § 11. Checks sent to Class members shall contain a legend on the reverse of the check that states: "By cashing this check, you are agreeing to release all claims covered by this settlement. You will be opting into the federal Fair Labor Standards Act ("FLSA") settlement, and you will also be exercising and releasing your claims under the FLSA." Ex. 1 at ¶ 68(c).

Some of the factors considered in reaching this settlement include, among others:

**A.    The Risk of Non-Payment Arising from the Defendant's Financial Concerns.**

At mediation, Defendant's counsel represented that Defendant had financial concerns about its ability to pay any judgment or settlement amount beyond a certain point. Schwartz Decl. at ¶ 18.

To avoid the manifold risks, delays, and costs of potentially pursuing Defendant in bankruptcy, Plaintiff required, as a component of the proposed settlement agreement, that Defendant agree to provide a SLOC from its commercial bank providing a guarantee to satisfy the settlement amounts on the established dates as provided for in the Settlement. Schwartz Decl. at ¶ 20. To alleviate Defendant's concern about its ability to pay, Plaintiff agreed to a payment plan that provides for the total settlement amount to be paid in three equal payments spread over 18 months. Schwartz Decl. at ¶ 18.

The Ninth Circuit has repeatedly indicated that the risk of a defendant's bankruptcy is a factor weighing in favor of settlement approval. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823

(9th Cir. 2012) (rejecting objector's challenge to class action settlement where the lower court "meaningfully accounted for potential value of members' claims . . . and noted risks of bringing such claims to trial, and evidence indicated that one of defendants that could be subject to liability under [a particular theory] was on verge of bankruptcy."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (evaluating class action settlement adequacy, finding, "Here one factor predominates to make clear that the district court acted within its discretion. That factor is [the defendant's] financial condition."). Because "the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures," this factor strongly supports granting final approval here. *See In re Warner Comm'cns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985).

**B.    Complex Litigation Concerning Independent Contractor Status Always Presents Uncertainty.**

"In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval." *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) (Lloyd, M.J) (citing *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *3 (N.D. Cal. 2007) (Chesney, J.)); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3872788, at **11, 21 (N.D. Cal. Aug. 15, 2018) (Koh, J.) ("legal uncertainty supports approval of a settlement"). Plaintiff asserts that drivers were misclassified as independent contractors, and that no relevant exemption to the payment of wages under the federal Fair Labor Standards Act (FLSA) and California state law that applies to drivers. Defendant vigorously disputes these assertions. In support of it's contention that drivers were properly classified as independent contractors, defendant contends that many, if not all, of these derivers also performed services through their own businesses or Savoya's competitors, and note that drivers were free to determine which hours they worked for Savoya and could decline trips. Defendant argues that all of the damages are contingent upon Plaintiff prevailing on the misclassification issue.

The California Supreme Court recently issued its decision in *Dynamex*, simplifying the inquiry into employee status by adopting the "ABC test," at least with respect to claims brought

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

under Labor Code Section 1194 and applicable provisions in the Wage Orders. *Dynamex*, 4 Cal. 5th at 957. Whether the ABC test applies, *e.g.,* to claims brought under PAGA, or for reimbursements, has not been resolved. *See California Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018) ("*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections."). Also, on July 22, 2019, the Ninth Circuit certified to the California Supreme Court the question of whether *Dynamex* applies retroactively, thereby guaranteeing litigation on this issue for years to come (including this case, in the absence of settlement). *See Vazquez*, 930 F.3d at 1107.

Plaintiff determined not to pursue the case outside of California, because the case law is so treacherous for drivers under the FLSA. *See, e.g., Saleem v. Corporate Transportation Group, Ltd.,* 845 F.3d 131 (2d Cir. 2017) (limo drivers were independent contractors, not employees, under the FLSA). The Ninth Circuit applies a multi-factor test to determine whether a worker should be classified as an independent contractor or an employee under the FLSA. *See Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). As to California claims, under the *Borello* test, California courts applied a similar, multi-factor test, emphasizing the right to control, to resolve whether a worker is an employee or independent contractor. *See Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th Cir. 2014) (citing *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)). The outcome of such multi-factor/totality-of-the-circumstances tests tends to be uncertain, and would be here, based on the numerous factual disputes. *See generally* Richard R. Carlson, *Why the Law Still Can't Tell an Employee When It Sees One and How It Ought to Stop Trying*, 22 Berkeley J. Emp. & Lab. L. 295 (2001) ("multifactored analysis becomes [ever] more complex and its outcome less predictable"), *available at*: http://scholarship.law.berkeley.edu/bjell/vol22/iss2/2 (last visited Oct. 2, 2018).

Exemption misclassification cases always present a significant risk of losing on the merits, even after extensive litigation, as in *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt). *See also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) (abrogating *In re Novartis Wage and Hour Litig.,* 611 F.3d 141 (2d Cir. 2010)). In *Novartis,* after winning at the Second Circuit, plaintiffs settled for $99 million – and were granted final approval *less than a month* before the *Christopher* decision, which would have left them empty-handed. Schwartz Decl. at ¶ 21; Ex. 3 to *id*. The risk is now greater after the Supreme Court's decision in *Encino Motors v. Navarro,* where it rejected the longstanding rule that exemptions to the FLSA should be construed narrowly. *See* 138 S. Ct. 1134, 1142 (2018).

Here, drivers risk losing under both federal and state law at the certification and merits stages. This Settlement removes the risk to drivers of an unfavorable interpretation of the federal or state exemptions on the instant facts. Accordingly, the myriad risks surrounding complex litigation involving misclassification under the wage laws with the taxicab exemption at issue weighs strongly in favor of granting preliminary approval of this settlement.

### C.   Willfulness

For maximum recovery, Plaintiff would have to prove that Defendant's alleged violations of the labor laws were willful, under the FLSA and California Labor Code. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (FLSA standard for willfulness); *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 325 (2005) (standard under Labor Code §203); *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) (Tigar, J.) (standard for "knowing and intentional" violation under Labor Code § 226). If Plaintiff was unable to establish the requisite level of intent, the statute of limitations under the FLSA would be reduced to two years. *See* 29 U.S.C. § 255(a). In addition, if Defendant was successful in asserting a good faith defense, such defense would bar Plaintiff's claims under Labor Code Sections 203 and 226, and eliminate liquidated damages for the FLSA collective (29 U.S.C. § 260).

Importantly, potentially the highest value claim asserted by Plaintiff – Section 226.8 penalties brought under the PAGA – requires a finding that drivers were misclassified by Defendants "voluntarily and knowingly." Cal. Lab. Code § 226.8(i)(4) (defining "willful misclassification"). Without a strong showing of willfulness under Section 226.8, any civil

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1   penalties award may be subject to steep reductions by the Court, as authorized by Labor Code

2   Section 2699(e)(2). *See, e.g., Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug.

3   12, 2011) (reducing PAGA penalties by 82%); Cal. Lab. Code § 2699(e)(2).

4          Accordingly, the Defendants might avoid a significant portion of the theoretical damages

5   alleged in the operative complaint by persuading the trier of fact that: (1) if drivers were

6   misclassified, it was based upon a good-faith if mistaken belief, and/or (2) any civil penalties

7   award should be sharply reduced under Section 2699(e)(2).

8   **V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

9          The Settlement is fair, adequate and reasonable, justifying preliminary approval. Because

10  the eventual fairness hearing will provide the Court with another opportunity to review the

11  Settlement, and with the benefit of class member input, the public interest supports the Court

12  authorizing the parties to give the Class notice of the proposed Settlement. *Franklin v. Kaypro*

13  *Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting

14  litigation" is "particularly true in class action suits"). Settlements that are reached as a result of

15  arm's-length bargaining between experienced and well-informed counsel, after thorough

16  investigation, are entitled to a presumption of fairness. *See Staton v. Boeing*, 327 F.3d 938, 960

17  (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). As

18  detailed *supra,* and in the Settlement Agreement and the declaration of counsel, the Settlement is

19  the result of lengthy, adversarial negotiations after partial discovery, and a full day of mediation

20  with a respected mediator. As such, the settlement is entitled to the favorable presumption.

21         Plaintiff's counsel recommends approval of the settlement. *See* Schwartz Decl. at ¶ 22.

22  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

23  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.); *see also Rodriguez v.*

24  *West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("we put a good deal of stock in the product

25  of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular

26  formula by which that outcome must be tested"). Plaintiff and undersigned counsel support the

27  Settlement because the Class's prospects of collecting more than the settlement amount if the

28  parties proceed to trial are highly uncertain, for at least the following reasons:

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

*First,* Plaintiff risks unfavorable determinations on the employee versus independent contractor issue and exemption defense to coverage under the FLSA and state law. *Second,* Plaintiff must establish Defendant's willfulness and the absence of good faith to extend the FLSA's statute of limitations and to obtain certain California penalties, including penalties under Labor Code Section 226.8. *Third,* Plaintiff risks failing to obtain Rule 23 class certification. *Fourth,* Plaintiff avoids the risk that Defendant would file bankruptcy or be otherwise unavailable to pay on a larger judgment in the future.

The Settlement—which will allow Defendant to avoid further protracted, costly litigation, and which will provide certain and significant compensation to the class members (about $12,216 on average per class member)—is the best outcome for the parties under the circumstances. In addition to significant compensation, there is *no reversion* to Defendant unless the Settlement fails. *See Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) (disfavoring reversionary settlements).

As such, the settlement agreement meets the Ninth Circuit's standards for approval, articulated in *Officers for Justice v. Civil Service Comm'n of City & County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) (stating that "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable" and providing list of relevant factors).

### A.    The Settlement Satisfies Rule 23 Requirements for Purposes of Settlement.

Plaintiff contends that preliminary approval of the proposed settlement is justified because, for settlement purposes, the settlement meets the requirements of a class action pursuant to Rule 23 and Ninth Circuit jurisprudence. Specifically: the class members are numerous (over 40); Plaintiff is typical of the class members and an adequate representative of the Class (having served as a driver during the relevant time, possessing no conflicts with the Class, and represented by seasoned Class Counsel); and, there are common questions of law and fact that predominate (such as whether they were independent contractors and whether they were misclassified willfully by Defendant). *See Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492, 506 (N.D. Cal. 2012) (Chen, J.) (discussing Rule 23 elements). A class action is the superior means of resolution. *See, e.g., Custom Led, LLC v. eBay, Inc.,* 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.)

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1    (superiority established because a "class action would achieve the resolution of the putative class
2    members' claims at a lower cost and would reduce the likelihood of inconsistent
3    determinations").

4        **B.    The Settlement Is Fair, Adequate and Reasonable.**

5        "At the preliminary approval stage, the Court may grant preliminary approval of a
6    settlement and direct notice to the class if the settlement: (1) appears to be the product of serious,
7    informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly
8    grant preferential treatment to class representatives or segments of the class; and (4) falls within
9    the range of possible approval." *Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *7
10   (N.D. Cal. Apr. 29, 2011) (Chen, J.) (citing cases). The Court should take into account "all the
11   normal perils of litigation as well as the additional uncertainties inherent in complex class
12   actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979). Here, the pertinent
13   factors support granting preliminary approval and authorizing distribution of the Class Notice.

14       **1.    The Settlement Is Non-Collusive and Was the Product of Extensive**
15       **Negotiations.**

16       As discussed *supra,* the proposed Settlement was the product of arm's-length, non-
17   collusive negotiations, including a full-day of mediation with a highly experienced mediator.
18   Schwartz Decl. ¶¶ 4-5; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal.
19   Apr. 13, 2007) (Illston, J.) ("The assistance of an experienced mediator in the settlement process
20   confirms that the settlement is non-collusive."). Plaintiff was well-informed about the strengths
21   and weaknesses of his case after reviewing the discovery produced by Defendant, and conducting
22   a damages analysis based on data produced by Defendant. Schwartz Decl. at ¶¶ 9-10.

23       Plaintiff and the putative class members are and have been represented by experienced
24   counsel, who fought for terms most advantageous to the Class throughout the course of the
25   litigation, including a number of heavily contested motions. *Id*. at ¶¶ 14-15, 36. Among other
26   advantageous terms, counsel insisted that the settlement payment be non-reversionary (*i.e.*,
27   maximizing payments to class members and aligning the interests of all parties to a successful
28   settlement administration), and secured a SLOC from Defendant's commercial bank to ensure

11

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1 | timely, secure payments to the class members. *Id*. at ¶ 11; Ex. 1 at ¶¶ 47, 69.

2 | ### 2.   No Deficiencies in Settlement Agreement

3 | The Settlement will pay approximately $12,216 per person, net, on average (with

4 | payments proportional to the amount that each Class Member worked). Schwartz Decl. at ¶ 23.

5 | Other than Plaintiff, for whom a service award is requested, the class members are waiving only

6 | their claims arising out of facts that were pled in the operative FAC. *See* Ex. 1 ¶¶ 8, 44. *See*

7 | *Hendricks v. Starkist Co*, 2016 WL 5462423, at **4, 8 (N.D. Cal. Sept. 29, 2016) (Gilliam, J.)

8 | (approving class settlement; scope of the release was limited to "the factual predicate in the

9 | operative complaint"); *cf. Kakani v. Oracle Corp.*, 2007 WL 1793774, at *6 (N.D. Cal. June 19,

10 | 2007) (Alsup, J.) (denying preliminary approval of proposed wage and hour settlement in part

11 | because release not tailored to the facts of the case). Plaintiff's counsel will move for approval of

12 | the requested attorneys' fees and costs at least fourteen days before the objections

13 | deadline. Schwartz Decl. at ¶ 13; *see In re Mercury Interactive Corp. Securities Litigation*, 618

14 | F.3d 988, 994-95 & n.2 (9th Cir. 2010).

15 | ### 3.   No Preferential Treatment

16 | The Settlement will treat all class members fairly, according to the same formula

17 | described above, which emphasizes the number of weeks worked by each class member during

18 | the relevant time period. Plaintiff's service award is discussed separately, *infra*.

19 | ### 4.   The Settlement Falls Within the Range of Possible Approval

20 | The primary inquiry at this stage is whether Plaintiff's expected recovery absent

21 | settlement balances appropriately against the value of the settlement offer. *See Harris*, 2011 WL

22 | 1627973, at *9. Courts "preview the factors that ultimately inform final approval:" (1) the

23 | strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

24 | litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5)

25 | the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a

26 | government participant (not applicable here); and (8) the reaction of class members. *Id.* Here:

27 |

28 |

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

*First*, Plaintiff believes his claims on the merits of the independent contractor misclassification claim under state law are strong, after *Dynamex,* but with a risk that there will be no retroactivity (which would drastically curtail liability), and further believes that the FLSA claims are very risky, at best.

*Second*, the complexity and the expense of a class trial would be considerable, and would almost certainly result in appeals by one or both sides, including possible interlocutory appeals at various stages of the proceedings.

*Third*, the risk of failing to obtain or maintain class status through trial is substantial. Defendant planned on conducting extensive discovery to oppose certification and/or decertify and, indeed, early discovery suggested that drivers had different experiences at Defendant.

*Fourth*, the amount offered under the proposed settlement provides relatively high average net recovery for a class action of this nature. *See also infra*, discussing the amount.

*Fifth*, the Parties have engaged in discovery, including exchanging thousands of pages of documents and information necessary to evaluate certification, understand the basic merits questions, and assess the value of each Class member's claims.

*Sixth*, the firm representing Plaintiff is highly experienced in wage and hour class actions, having had wage and hour settlements approved repeatedly by this Court and numerous other courts in the Ninth Circuit and elsewhere. *See* Schwartz Decl. at ¶ 36. In the view of undersigned counsel, this Settlement is in the best interests of the Class in light of the risk and delay of a class action trial and appeal, as compared with the immediate and substantial recovery in the Settlement. Schwartz Decl. at ¶ 22.

*Seventh*, there is no governmental entity involved other than the Labor Workforce Development Agency ("LWDA"), which chose not to intervene.[2] *See McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (compliance with LWDA notice requirement and payment of 75% of PAGA penalties favors approval of settlement).

---

[2] Plaintiff exhausted with the LWDA at the outset, with no response. Schwartz Decl. at ¶ 34. The parties will comply with California Labor Code § 2699(l)(2) by concurrently submitting the proposed settlement to the LWDA for review. *Id.* at ¶ 35.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

*Eighth*, the reaction of the class members to the settlement will be better gauged at the final fairness hearing and the close of the opt-out deadline.

As to the amount offered in settlement, the Court need not compare the Settlement to an estimated full-relief, best-day outcome in the case if it were fully litigated. *Rodriguez v. West Publ.*, 563 F.3d 948, 965-966 (9th Cir. 2009). The Ninth Circuit explains:

> We are not persuaded . . . by Objectors' further submission that the court should have specifically weighed the merits of the class's case against the settlement amount and quantified the expected value of fully litigating the matter. . . . [T]he Seventh Circuit directs courts to "'estimate the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Id.* However, our approach, and the factors we identify, are somewhat different. We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, *Hanlon,* 150 F.3d at 1027; *Officers for Justice* [*v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982)], and have never prescribed a particular formula by which that outcome must be tested. As we explained in *Officers for Justice,* "[u]ltimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." 688 F.2d at 625 (internal quotation marks and citation omitted).

*Rodriguez,* 563 F.3d at 965.

Even if the Court were to assume Plaintiff's victory, the settlement amount compares favorably with the estimated full relief for Plaintiff and the Class Members' claims. For his damages analysis, Plaintiff identified the total number of work weeks by each class member, and applied overtime (and where applicable, minimum wage) rates, penalties, liquidated damages under state law, and state-specific interest rates to the work weeks identified, making reasonable assumptions regarding overtime hours worked, minimum wages unpaid, California meal and rest breaks missed, and unreimbursed business expenses based on the records provided by Defendant. Schwartz Decl. ¶ 10. As explained in Plaintiff's counsel's appended declaration, the estimated value of the claims, according to a comprehensive analysis, is arguably $639,000 for unpaid wages (including missed meal/rest breaks), and $673,000 for unreimbursed business expenses – a total of $1,312,000. *See* Schwartz Decl. ¶ 24. The gross $750,000 recovered is thus 57.1% of the total, best-day exposure in the case, before civil or statutory penalties. *Id.*; *see also Rodriguez*, 563 F.3d at 955 (court may calculate settlement reasonableness without considering penalties). Compare this result to *Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014),

14

in which a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see also O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal.) (Spero, M.J.) (Schwartz Decl., Ex. 4) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief).

On the other hand, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, the rejected settlement would have been $750,000 for 13,872 people (13,828 more than here for the same amount paid) – paying a *de minimis* $0.26/shift, after fees/costs, etc. were deducted. 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) (Lloyd, M.J.).

**C.     The Service Award is Warranted.**

Plaintiff Billy Alabsi's requested service award is justified under the case law and the facts of this case. *See, e.g.*, *Glass*, 2007 WL 221862, at *16 (approving payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (Corley, M.J.) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed as part of the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (Williams, J.) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's service award: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id*. at 299. These factors all support the need for service payments to the Class Representative here. Moreover, the $7,500 amount for the service award for Plaintiff Alabsi is within the range of service awards approved by this Court and numerous others. *See Buckingham v. Bank of America, N.A.*, 3:15-cv-6344-RGS (ECF No. 103 at pp. 8-9) (N.D. Cal.)

1  (Seeborg, J.) (approving $15,000 service award to class representative who initiated lawsuit,

2  $2,500 to each of the later-added class representatives) (Schwartz Decl., Ex. 5); *Buccellato v. AT*

3  *& T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (Koh, J.) (approving

4  service award of $20,000 for one class representative, $5,000 for four others, and collecting

5  cases); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 (N.D. Cal.) (Chen, J.)

6  (ECF No. 174 at pp. 2-3, final approval order in exemption misclassification class action,

7  approving $15,000 service award to each of the two class representatives, totaling 9.37% of net

8  settlement fund) (Schwartz Decl., Ex. 6); *Boyd v. Bank of Am. Corp.*, CV 13–0561 (C.D. Cal.)

9  (ECF No. 397 at p. 3, final approval order in exemption misclassification class action, approving

10  $25,000 service award to each of the four class representatives) (Schwartz Decl., Ex. 7).

11      Plaintiff Alabsi experienced reputational risk (and "notoriety") as a result of bringing this

12  case, placing himself into the public spotlight and feeling like he is losing a source of job

13  references and future employment opportunities based on participation in this lawsuit. *See*

14  Declaration of Billy Alabsi ("Alabsi Decl.") ¶¶ 5-7; *see also Rutti v. Lojack Corp.*, 2012 WL

15  3151077, at *5 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for

16  employees to participate in a class action against their current or former employer, particularly

17  when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*,

18  2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (service awards based on

19  "willingness to serve as representatives despite the potential stigma that might attach to them in

20  the banking industry from taking on those roles"). Indeed, a Google search for "Billy Alabsi"

21  results in a link to this Court's order on Defendant's motion to dismiss in this case on the first

22  page of results. Schwartz Decl. at ¶ 32.

23      Plaintiff Alabsi has spent dozens of hours on this case, over years of litigation, including:

24  - bringing this case as the lone named plaintiff (none of the Class would be recovering otherwise);
- reaching out to putative Class members;

25

26  - attending a full day of mediation in August 2019, in person, shutting down his business to participate in the mediation;

27  - reviewing briefs, declarations, and agreements;
- and consulting extensively with Plaintiff's counsel about the case both before and after the case was filed.

28

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1    Schwartz Decl. at ¶ 26; Alabsi Decl. at ¶ 4.

2         The personal benefit that Plaintiff Alabsi would receive if he received the same settlement

3    payment as the rest of the class members would not come close to compensating him for the

4    foregoing personal costs he has paid and stress he has endured in order to benefit the class. Had

5    Plaintiff Alabsi proceeded individually, rather than sacrificing for the class, he might have

6    recovered more than his recovery as a class member here. At every turn, he delayed his own

7    potential gain to ensure his former co-workers would be given the chance to recover.

8         Finally, Plaintiff is executing a much broader waiver of claims than other class members,

9    warranting additional compensation. Exh. 1 ¶ 60; *see Dent v. ITC Serv. Grp., Inc.*, 2013 WL

10   5437331, at \*4 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour

11   plaintiff signed a general release).

12

13   **D.    Attorneys' Fees at the Ninth Circuit's Benchmark of Twenty-Five Percent of the Common Fund Are Justified..**

14        Before final approval, Plaintiff's counsel intends to seek, and Defendants will not oppose,

15   attorneys' fees of one-quarter of the $750,000 Settlement. Ex. 1 at ¶ 53. Though Plaintiff's

16   counsel will separately and more extensively brief their fee and cost request later, Plaintiff's

17   counsel request preliminary approval of the presumptively reasonable one-quarter amount. *See,*

18   *e.g., Bellinghausen*, 306 F.R.D. at 265 (25% is presumptively reasonable benchmark amount)

19        "Under the lodestar method, the court multiplies a reasonable number of hours by a

20   reasonable hourly rate." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006-07

21   (9th Cir. 2002). "Because there is a strong presumption that the lodestar amount represents a

22   reasonable fee, adjustments to the lodestar "'are the exception rather than the rule.'" *Stranger v.*

23   *China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quoting *Fischel*, 307. F.3d at 1007).

24        The United States Supreme Court "has recognized consistently that a litigant or a lawyer

25   who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a

26   whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit's benchmark for

27   presumptively reasonable fees in this context is twenty-five percent of the gross settlement

28   amount, and courts that depart from the benchmark should indicate their reasons for doing so.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1    *Glass,* 2007 WL 221862, at *14.

2         Here, Plaintiffs' counsel's request for the benchmark fee award of twenty-five percent of

3    the common fund (*i.e.,* $187,500) is justified for the outstanding, prompt result achieved and the

4    non-reversionary nature of the settlement. *See id*. Courts consider not only the results achieved,

5    but also the risk of litigation, the contingent nature of the fee and the financial burden carried by

6    the Plaintiffs. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *9 (N.D. Cal. 2007)

7    (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1048-50).

8         Furthermore, "class counsel should [not] necessarily receive a lesser fee for settling a case

9    quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely

10   result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050 n.5. This is

11   particularly true in the context of unpaid wages, where there is a recognized public policy in the

12   prompt payment of wages. *See, e.g., Biggs v. Wilson*, 1 F.3d 1537, 1541–42 (9th Cir. 1993)

13   (public policy of prompt payment of wages).

14        The Court should readily grant preliminary approval to the settlement with the $187,500

15   fee award. With their fee petition, Plaintiffs' Counsel will provide a detailed breakdown of their

16   hours worked and fees incurred for a lodestar cross-check, in which the lodestar multiplier will

17   certainly be less than 2.0. Schwartz Decl. ¶ 13; *see Vizcaino*, 290 F.3d at 1051 (holding that a

18   3.65 lodestar multiplier was reasonable and appropriate); *Fowler v. Wells Fargo Bank, N.A*, 2019

19   WL 330910, (N.D. Cal. Jan. 25, 2019) (Gilliam, J.) (lodestar multiplier of approximately 3.46

20   reasonable in light of length of case and procedural posture); *Lazarin v. Pro Unlimited, Inc.*, 2013

21   WL 3541217 (N.D. Cal. July 11, 2013) (Lloyd, M.J.) (lodestar multiplier of 3.36 reasonable);

22   *Buccellato* at *1 (approving 4.3 multiplier). In light of *In re Mercury*, Plaintiffs will make their

23   fee and cost petition public more than 14 days in advance of the deadline for class members to opt

24   out of or object to the settlement. *In re Mercury*, 618 F.3d at 994-95 & n.2; Schwartz Decl. ¶ 13;

25   *see* [Proposed] Order submitted herewith.

26   **E.    The Notice to the Class Is Sufficient.**

27        The proposed Class Notice and proposed method of distribution are appropriate. *See* Fed.

28   R. Civ. P. 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

2004). The proposed form of notice will be sent via first-class mail to each class member and, prior to mailing the Class Notices, an experienced Settlement Administrator will consult the United States Postal Service's National Change of Address Database to review the accuracy of and, if possible, update a class member's mailing address. Ex. 1 ¶¶ 63.a-63.b. The Class Notice (Schwartz Decl., Ex. 2) will provide the details of the case and the proposed settlement and the specific options available to class members, as described above. The Class Notice will provide class members with information from which they can make an informed decision about whether to opt out (or withdraw their consent to join the collective action), object, or take no further action and receive a payment from the proposed settlement. *Id.* Thus, the proposed Class Notice and distribution plan are adequate.

## F.    The Requested *Cy Pres* Beneficiary Is Appropriate

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (internal quotations omitted). Here, there is. This is a workers' rights suit seeking overtime and minimum wages, primarily for workers in California. Legal Aid at Work (https://legalaidatwork.org) is the leading provider of direct legal services in employment law for low-wage workers in California. Schwartz Decl. at ¶ 34. The Court should thus approve this *cy pres* recipient.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff submits that the proposed settlement is fair, adequate, and reasonable. Plaintiff and his counsel believe that the proposed settlement is in the best interests of Plaintiff and the putative Class. Under the applicable class and collective action standards, Plaintiff requests that the Court: (a) preliminarily approve the Settlement; (b) certify the proposed classes, for settlement purposes only; (c) name Bryan Schwartz Law as Class Counsel, and Billy Alabsi as Class Representative; (d) name Rust as Settlement Administrator; (e) approve the Class Notices to be sent to the Settlement Class, and (f) and schedule a final approval hearing.

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL /
Case No. 4:16-cv-06291-YGR

1

2       Dated: October 23, 2019        /s/  Bryan J. Schwartz

3                                             Bryan J. Schwartz
Ryan T. Chin

4                                             BRYAN SCHWARTZ LAW

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20