UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY ALABSI,<br>　　　　Plaintiff,<br>　　v.<br>SAVOYA, LLC,<br>　　　　Defendant. | Case No. 18-cv-06510-KAW<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br>Re: Dkt. No. 62 |

Plaintiff Billy Alabsi filed the instant putative class and collective against Defendant Savoya, LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and various state labor laws. (*See* First Am. Compl. ("FAC"), Dkt. No. 29.) Pending before the Court is Plaintiff's motion for preliminary approval of a settlement agreement between the parties. (Pl.'s Mot., Dkt. No. 62.) Having considered the parties' filings and the arguments presented at the January 16, 2020 motion hearing, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for preliminary approval.

## I. BACKGROUND

### A. Factual Background

Defendant operates a chauffeured limousine and luxury car transportation service. (FAC ¶ 15.) Plaintiff and the putative class worked for Defendant as drivers. (FAC ¶ 1.)

Plaintiff alleges that Defendant misclassified its drivers as independent contractors, rather than employees. (FAC ¶¶ 15, 29.) For example, Plaintiff asserts that Defendant has and exercises extensive control over its drivers, assigning specific customers, locations, pickup times, and destinations. (FAC ¶ 18.) Further, while drivers have the right to decline assignments, they are penalized for declining jobs by not receiving future jobs from Defendant. (FAC ¶ 19.) Defendant

requires drivers to provide their own vehicles, which must usually be black, less than three years old, free of any visible damage, and be on Defendant's list of approved vehicles. (FAC ¶ 20.) Defendant requires drivers to use environmentally responsible maintenance procedures. (FAC ¶ 20.) Vehicles must be stocked with an umbrella, bottled water, newspapers, maps, GPS device, and a detailing kit. (FAC ¶ 21.) They must also be free of magazines, tissues, candy, promotional materials, or items hanging from the rearview mirror. Vehicles must be non-smoking and have a neutral odor, and not contain visible air fresheners. (FAC ¶ 21.) Drivers must use tablets with computer-generated signage, cannot speak unless spoken to, confirm radio and temperature preferences with passengers during the first five minutes of the trip, and never discuss rates with passengers. (FAC ¶ 22.)

Defendant monitors its drivers by requiring that they keep Defendant's app on and use status update buttons to indicate when they are onsite, when the passenger is onboard, and when the passenger is dropped off. (FAC ¶ 23.) Drivers must arrive at jobs fifteen minutes early, or "spot time," and attend meetings, which they are not compensated for. (FAC ¶¶ 32-33.) Defendant also requires that drivers have liability insurance in a minimum amount set by Defendant, that Defendant is listed as an Additional Insured on the insurance policy, and that the policy come from an insurance carrier with an A.M. Best rating of A-VII. (FAC ¶ 24.) Finally, Defendant has the right to terminate drivers without cause with 30 days' notice. (FAC ¶ 25.)

Plaintiff asserts that by misclassifying drivers as independent contractors, Defendant fails to reimburse drivers for expenses including vehicle costs and other operation costs such as garaging, fuel, maintenance, repair, cleaning, licensing, insurance premiums, cell phone and tablets services, and stocking the vehicle with Defendant-required items. (FAC ¶ 29.) Plaintiff further alleges that after taking into account these expenses, drivers may earn less than minimum wage. (FAC ¶ 67.) Plaintiff also points to the failure to pay for spot time and the mandatory meetings. (FAC ¶ 68.) Finally, Plaintiff alleges that Defendant failed to pay overtime because Defendant compensated its drivers at the same rate schedule for all hours worked, including overtime. (FAC ¶ 76.)

### B. Procedural History

On October 24, 2018, Plaintiff filed the instant putative class and collective action against Defendant. (Compl., Dkt. No. 1.) On January 9, 2019, Plaintiff filed his amended complaint, bringing claims for: (1) failure to pay minimum wage in violation of the FLSA; (2) failure to pay overtime in violation of the FLSA; (3) failure to pay minimum wage compensation in violation of California Labor Code §§ 1194 and 1197, and Industrial Welfare Commission ("IWC") wage orders; (4) failure to pay overtime in violation of California Labor Code §§ 510, 1194, and 1198, and IWC wage orders; (5) failure to reimburse business expenses in violation of California Labor Code § 2802; (6) failure to provide and/or authorize meal and rest periods in violation of California Labor Code §§ 226.7 and 512, and IWC wage orders; (7) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (8) waiting time penalties in violation of California Labor Code §§ 201-203; (9) unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*; and (10) civil penalties pursuant to the Private Attorneys General Act. (FAC at 12-26.)

Defendant filed a motion to transfer and a motion to dismiss. (Dkt. Nos. 22, 34.) On March 25, 2019, the Court denied the motion to transfer and granted in part and denied in part the motion to dismiss. (Dkt. No. 52.) Plaintiff was ordered to file an amended complaint within ninety days. The parties subsequently requested that the Court stay all deadlines in order to attend private mediation. (Dkt. No. 56.)

On September 17, 2019, the Court was informed that the parties had successfully mediated the case on August 29, 2019. (Dkt. No. 60.) On October 23, 2019, Plaintiff filed the instant motion for preliminary approval of the class settlement. On November 8, 2019, Defendant filed a statement of non-opposition. (Dkt. No. 64.) On November 13, 2019, the Court requested supplemental briefing. (Dkt. No. 65.) On December 2, 2019, the parties submitted a supplemental brief in response. (Supp. Brief., Dkt. No. 67.) On January 16, 2020, the Court held a hearing on the matter, in which changes were requested. (*See* Dkt. No. 74.) On January 22, 2020, the parties filed a declaration regarding the requested changes. (Chin Decl., Dkt. No. 76.) On January 30, 2020, the Court requested additional supplemental briefing. (Dkt. No. 77.) On January 31, 2020,

the parties filed a supplemental declaration in response. (Supp. Chin Decl., Dkt. No. 78.)

**C. Settlement Agreement**

Under the terms of the settlement agreement, Defendant agrees to pay a "Total Settlement Amount" of $750,000 to settle the claims of the 44 drivers who worked for Defendant in California. (Schwartz Decl., Exh. 1("Settlement Agreement") ¶ 35, Dkt. No. 62-2; Pl.'s Mot. at 1.) Of the Total Settlement Amount, Plaintiff's counsel intends to seek an award of 25%, or $187,500 for attorney's fees and $6,000 in costs.[1] (Pl.'s Mot. at 4.) The Total Settlement Amount also includes a $7,500 incentive payment for the named Plaintiff, and an estimated $10,000 for administration costs.[2] (*Id.*; Settlement Agreement ¶¶ 45, 56.) Finally, the Maximum Settlement Amount includes $10,000 in penalties under California's Private Attorneys General Act ("PAGA"); $7,500 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $2,500 will be part of the Net Settlement Amount for distribution to the participating class members. (Settlement Agreement ¶ 61; Supp. Brief at 6.) This leaves a Net Settlement Amount of $531,500 for the 44 class members. (Pl.'s Mot. at 4.)

The Settlement will be distributed to the class members based on the number of workweeks completed during the relevant class period. (Settlement Agreement ¶¶ 25, 47.) Additionally, 5% of the Net Settlement Amount will be allotted to waiting time penalties, as the waiting time penalties represent approximately 5% of the total damages estimate. (Supp. Chin Decl. ¶ 6.) This amount will be divided between former drivers, based on their average weekly earnings. (Supp. Chin Decl. ¶ 7.) The claims being released by the Settlement are the causes of action asserted in the Action, as well as any additional wage and hour claims that could have been asserted in the Action based on the facts and transactions pled in the complaint. (Pl.'s Mot. at 12; Settlement Agreement ¶ 8.)

---

[1] At the hearing, Plaintiff's counsel stated that the 25% attorney's fees does not in fact include litigation costs, but that costs were expected to be $6,000. Thus, the net settlement fund was reduced to $531,500.

[2] In its supplemental briefing, the parties stated the expected settlement administration costs were $7,892.00.

4

Once the Court grants preliminary approval, the Settlement Administrator is responsible for mailing a Class Notice to the class members. (Settlement Agreement ¶¶ 62(d), 63(a).) The Settlement Administrator shall use the most current mailing address from Defendant's records or any more current address discovered from an address search. (Settlement Agreement ¶ 63(a).) If a Class Notice is returned with a forwarding address, the Settlement Administrator shall re-mail the Class Notice. If a Class Notice is returned without a forwarding address, the Settlement Administrator will conduct address searches using skip tracing methods, and re-mail the Class Notice. (Settlement Agreement ¶ 63(b).)

The class is bound by the settlement unless they timely submit an exclusion letter. (Settlement Agreement ¶ 64(b).) Participating class members may also file a dispute, and Defendant shall work with the Settlement Administrator to provide available information necessary to resolve the issue. (Settlement Agreement ¶ 66.)

Individuals who do not opt out will receive a settlement check. The settlement check will state: "By cashing this check, you are agreeing to release all claims covered by this settlement. You will be opting into the Fair Labor Standards Act ('FLSA') settlement, and you will also be exercising and releasing your claims under the FLSA." (Settlement Agreement ¶ 68(c).) Payment will be made in three installments, as Defendant will be delivering the Total Settlement Amount in three equal payments, every six months, to the Settlement Administrator. (Settlement Agreement ¶¶ 69, 70; Schwartz Decl. ¶ 11.) Defendant is also required to submit a Standby Letter of Credit from a commercial bank, providing a guarantee to satisfy the settlement amount. (Settlement Agreement ¶ 69.)

Class members will have 180 days to cash the settlement check. (Settlement Agreement ¶ 48; Chin Decl., Exh. 2.) If the first and second installment checks are not cashed, they will be voided and distributed in the next installment pro rata to the class members who did cash their checks. Subsequent checks will not be sent to class members who could not be located and/or did not cash their prior checks. (Settlement Agreement ¶ 48.) Any third installment checks not cashed will be voided; if the amount is over $20,000, the amount will be re-distributed to drivers who cashed their third installment check. If it is under $20,000, the amount will be paid to the cy

pres beneficiary, Legal Aid at Work. (Settlement Agreement ¶ 48; Chin Decl., Exh. 2.)

## II. LEGAL STANDARD

Per Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The purpose of requiring court approval "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before approving a settlement, the Court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This inquiry:

> requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Id.*; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("when . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness'"). This more "exacting review" is required "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation omitted); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry

than may normally be required under Rule 23(e)").

When applying Rule 23(e), the courts use a two-step process for the approval of class action settlements. First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-22 (N.D. Cal. 2016). At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor*, 201 F. Supp. 3d at 1122. This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014).

In addition to considering whether the settlement falls within the range of reasonableness, courts in this district also consider whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; [and] (3) does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation omitted). With respect to the level of scrutiny applied to this determination, "district courts often state or imply that scrutiny should be more lax." *Cotter*, 193 F. Supp. 3d at 1035-36. Several courts in this district have begun to question that "lax review" as "mak[ing] little practical sense." *Id.* at 1036. Instead, these courts suggest that "scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified . . . allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process." *Id.*

7

## III. DISCUSSION

### A. Class Certification

Before determining the fairness of a class action settlement, the Court must as a threshold matter "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019. The Court must also find that at least one requirement of Rule 23(b) is satisfied. *Id.* at 1022.

The Court finds that for the purposes of approval of the class action settlement, the Rule 23(a) requirements are satisfied. First, numerosity exists because the settlement class includes 44 class members. *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not"). Second, commonality exists because there are "questions of fact and law which are common to the class," namely whether Defendant misclassified its drivers as independent contractors. Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019-20 (noting that the commonality requirement is "permissive" and "has been construed permissively"). Third, typicality exists because the named Plaintiff's claims are "reasonably co-extensive with those of absent class members," as Plaintiff was a driver for Defendant during the relevant time, and was subject to the same practices of misclassification and failure to pay overtime, minimum wage, and expenses. *See Hanlon*, 150 F.3d at 1020. Finally, adequacy exists because there is no evidence that Plaintiff and Plaintiff's counsel have any conflicts of interest with the proposed class, or that Plaintiff and Plaintiff's counsel will not vigorously prosecute the case on behalf of the class. *See id.* ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

The Court also concludes that the Rule 23(b)(3) requirement is satisfied. Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Court finds that predominance is satisfied because Plaintiff's claims arise from Defendant's alleged policy of misclassifying its drivers. Further, the Court finds that superiority is satisfied because the alternative method to a class action likely involves "individual claims for a small amount of . . . damages," resulting in most cases involving "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

The Court therefore provisionally certifies the class for settlement purposes.

### B. Preliminary Approval Factors

#### i. Range of Reasonableness

In considering whether the Settlement Agreement falls within the range of possible approval, the Court "primarily consider[s] plaintiffs' expected recovery balanced against the value of the settlement offer." *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016). Here, Plaintiff estimates the miscalculation of overtime at $27,283.84, missed meal breaks at $231,218.83, missed rest periods at $336,120.19, unpaid minimum wages at $44,685.27, expense reimbursements at $672,742.50, inaccurate wage statements at $59,900, and waiting time penalties at $68,801.92, for a total of $1,440,752.55. (Supp. Brief at 3-4.) Plaintiff also estimates PAGA penalties at $1,042,000. (*Id.* at 4-5.) The Gross Settlement Amount of $750,000 represents 52% of the value of the non-PAGA claims, and 30.2% of all claims. Courts in this district have approved settlements with similar discounts, depending on the strength of the plaintiff's case and the risks in pursuing further litigation. *See Viceral*, 2016 WL 5907869, at *7 (approving case which represented 8.1% of the total verdict value).

Plaintiff identifies a number of risks that make the proposed settlement fall within a range of reasonableness. First, there is a risk that Plaintiff will not be able to establish that drivers were misclassified as independent contractors. For example, under the FLSA, "employees are those who *as a matter of economic reality* are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (internal quotation omitted). In turn, California applies the *Borello* right-to-control test, which considers

9

"whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th Cir. 2014) (internal quotation omitted). Under these tests, courts have found drivers for Uber and Grubhub to be independent contractors, rather than employees. *See Razak v. Uber Techs., Inc.*, Civil Action 16-573, 2018 WL 1744467 (E.D. Penn. Apr. 11, 2018) (finding on summary judgment that UberBlack drivers were independent contractors); *Lawson v. Grubhub, Inc.*, 302 F. Supp. 3d 1071 (N.D. Cal. 2018) (finding after a bench trial that the plaintiff did not establish a right to control).

Alternatively, under the "ABC" test, an employer must prove: (A) a worker is free from the control and direction of the hiring entity with respect to performance of the work, (B) the worker performs work outside the usual course of the hiring entity's business, and (C) the worker is customarily engaged in an independently established trade, occupation, or business. *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 955-56 (2018). If the employer fails to prove any factor, a worker is an employee. In denying Defendant's motion to dismiss, the Court found Defendant had not established Part B. (Dkt. No. 52 at 25-26.) Plaintiff, however, points out that it is not clear the ABC test applies "in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.5 (9th Cir. 2018); *see Dynamex*, 4 Cal. 5th at 956-57 (finding that the ABC test applies to claims arising from an IWC order). Moreover, it is not clear if *Dynamex* applies retroactively, and the Ninth Circuit has recently certified that question to the California Supreme Court. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1048 (9th Cir. 2019). Thus, there is a risk that the ABC test would not apply to many of the claims in this case, including all claims that do not arise from an IWC wage order.

Second, Plaintiff points to the risk that he would not have been able to prove that Defendant's violations were willful, which would also reduce the damages. (Pl.'s St. at 8-9.) For example, if Plaintiff did not establish willfulness, the FLSA statute of limitations would be reduced to two years. *See* 29 U.S.C. §255(a). If Defendant established a good faith defense, Plaintiff's claims under Labor Code § 203 and 226 could be barred, and liquidated damages could

10

be eliminated for the FLSA claims. 29 U.S.C. § 260. Finally, Plaintiff asserts that its PAGA claim for violations of § 226.8 (willful misclassification) would have been reduced because § 226.8(i)(4) requires voluntarily and knowing misclassification. (Pl.'s Mot. at 8.) This claim alone is worth an estimated $420,000. (Supp. Brief at 5.)

Finally, separate from the legal challenges, Plaintiff also points to the risk of non-payment due to Defendant's financial concerns. (Pl.'s Mot. at 5-6.) At mediation, Defendant presented Plaintiff with information showing there was a significant risk of non-payment. (Schwartz Decl. ¶18.) Defendant's counsel has also presented evidence for the Court's *in camera* review regarding its financials. Such risk of non-payment, even if Plaintiff prevails on the merits, makes the proposed settlement more reasonable.

Given the numerous legal risks and the risk of Defendant's inability to pay, the Court finds that the proposed settlement falls within the range of reasonableness. This factor thus weighs in favor of preliminary approval.

### ii. Serious, Informed Negotiations

Next, the Court considers how the parties arrived at the settlement, specifically whether the settlement was "the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, Plaintiff initiated formal discovery and obtained tens of thousands of pages of documents, and also conducted extensive mediation-related discovery concerning damages. (Schwartz Decl. ¶ 2.) The parties then attended mediation with Cynthia Remmers. (Schwartz Decl. ¶ 5.) After a full day of mediation, the parties executed a memorandum of understanding. (Schwartz Decl. ¶ 6.) In agreeing to the Settlement Agreement, Plaintiff relied on the information, documents, and data provided by Defendant. (Schwartz Decl. ¶ 8.) Plaintiff's counsel was able to calculate the class members' theoretical damages. (Schwartz Decl. ¶ 10; Supp. Schwartz Decl. ¶¶ 6-13, Dkt. No. 67-1.) The Court finds that the parties reached the settlement via an arms-length, non-collusive, negotiated resolution, and that this factor weighs in favor of preliminary approval.

### iii. No Obvious Deficiencies

The Court finds no obvious deficiencies at this time. With respect to the $7,500 incentive

11

payment, however, the Court will review the class representative service payment at the final approval stage. The Court notes that "[s]everal courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (internal quotation omitted). When moving for final approval, Plaintiff must be prepared to explain why he is entitled to more than the $5,000 benchmark amount, citing to specific cases with similar facts as to the amount of time spent by Plaintiff.

At the hearing, Plaintiff also confirmed that Plaintiff had submitted a copy of the settlement to the LWDA, and had not received any comments. Likewise, the Court requested information as to whether notice under the Class Action Fairness Act ("CAFA") was required. (Dkt. No. 65 at 3.) The parties explained that CAFA notice was not required because the case was not brought under CAFA jurisdiction but federal question jurisdiction, as there are not at least 100 plaintiffs in the class and the amount in controversy does not exceed $5 million. 28 U.S.C. §§ 1332(d)(2), (d)(5).

Finally, the Court requested changes to the Class Notice and procedures for objecting to the settlement, which the parties have modified accordingly. At the hearing, the Court required additional changes, including adding a $10,000 maximum to Paragraph 10(a)(i) and removing "up to" in Paragraph 10. The parties have submitted a new notice, and the Court has reviewed it. The Court finds that the parties' changes have addressed most of the Court's concerns, and thus this factor weighs in favor of preliminary approval.

### iv. Preferential Treatment

Finally, the Court considers whether the Settlement provides preferential treatment to any class members. The Court concludes that the Settlement does not. The Settlement provides that each class member's share will be based on their number of work weeks. Additionally, while former drivers are receiving an additional amount, this is to account for their waiting time penalties claim. This factor weighs in favor of preliminary approval.

### v. Notice Procedure

The Court has reviewed the content of the proposed notice, including the revised draft submitted on January 22, 2020, and finds that they are adequate to inform the putative class and collective action members of the terms of the Settlement Agreement and their ability to object. Accordingly, the Court approves the proposed notice procedures.

## IV. CONCLUSION

The Court finds that based on the above factors, preliminary approval is warranted, subject to the additional changes to the notices being made. The Court therefore GRANTS preliminary approval of the parties' proposed Settlement Agreement, including the provisional certification of the class action. The Court APPOINTS, for settlement purposes only, Billy Alabsi as class representative; Bryan Schwartz Law as class counsel; and Rust Consulting as Settlement Administrator. The Court APPROVES the revised notice provided by the parties on January 22, 2020. The Court sets the following schedule:

| Action: | Date: |
|---|---|
| Defendants to provide Class Member list to Settlement Administrator | 10 days from the date of this order |
| Settlement Administrator to mail Notice Packets | 20 days from the date of this order |
| Class Counsel to file Motion for Attorney's fees, costs, and class representative service awards | 35 days before the Final Approval Hearing |
| Deadline for Class Members to opt-out and/or object to the Settlement Agreement | 40 days after mailing of Notice Packets |
| Plaintiffs to file Motion for Final Settlement Approval | 35 days before the Final Approval Hearing |
| Final Approval Hearing | May 21, 2020 at 1:30 p.m. |

IT IS SO ORDERED.

Dated: February 6, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge