1  BRYAN SCHWARTZ LAW
   BRYAN SCHWARTZ (SBN 209903)
2  180 Grand Ave., Suite 1380
   Oakland, California 94612
3  Tel: (510) 444-9300
   Fax: (510) 444-9301
4  Email: bryan@bryanschwartzlaw.com
5
   *Attorney for Plaintiff and the Class*
6

7              UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORINA
9

10 | Billy Alabsi, individually, on behalf of all | CASE NO.: 4:18-cv-06510-VC
   | others similarly situated, |
11 | | **PLAINTIFFS' NOTICE OF MOTION AND**
12 | Plaintiffs, | **UNOPPOSED MOTION FOR FINAL**
   | | **APPROVAL OF AMENDED CLASS**
13 | vs. | **ACTION SETTLEMENT**
14 | | Originally filed: January 9, 2019
15 | Savoya, LLC, and Does 1 through 50, | Trial date: None set
   | inclusive |
16 | | Hearing Date: March 11, 2021
   | Defendant. | Time: 1:30 pm
17 | | Courtroom: TBD
18 | | Judge: Hon. Kandis A. Westmore
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that a hearing will be held on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement on March 11, 2021, at 1:30 pm, in the Courtroom of Honorable Kandis A. Westmore, located at 1301 Clay Street, Oakland, California 94612. At the hearing, representative Plaintiff Billy Alabsi ("Plaintiff"), through his attorneys and on behalf of all other Drivers similarly situated, will and hereby do move the Court to: (1) grant final approval of the Parties' settlement in the gross amount of $750,000, not including the employer's share of payroll taxes; (2) award a service payment to the Class Representative; and (3) enter judgment pursuant to Parties' Amended Settlement. The motion will be heard along with Plaintiff's motion for attorneys' fees and costs, filed contemporaneously herewith.

The Court granted preliminary approval of the Amended Settlement between Plaintiff and Defendant Savoya, LLC ("Defendant") on February 6, 2020 (ECF No. 79). Support for the Amended Settlement from the Class has been universal. The proposed settlement is fair, adequate, and reasonable.

This Motion is based on: this Notice of Motion; the accompanying Memorandum of Points and Authorities; Addendum to Stipulation and Settlement Agreement of Class Action and Individual Claims; the Declaration of Abigail Schwartz of Rust Consulting, Inc. (the Settlement Administrator); the Declaration of Bryan J. Schwartz, Esq., in support of this motion; Defendant's declaration in support of this motion, sought to be filed under seal; Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Defendants' statement of non-opposition (ECF Nos. 62, 64), and all documents filed in support thereof (ECF Nos. 62-1 through 62-4); Plaintiff's supplemental briefing and stipulation filed in support of the Motion for Preliminary Approval (ECF Nos. 67, 68), (ECF No. 64), and all documents filed in support thereof (ECF No. 76, 78); any oral argument of counsel; the complete files, records, and pleadings in the above captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: January 29, 2021

BRYAN SCHWARTZ LAW

By: */s/ Bryan J. Schwartz*
Bryan J. Schwartz, Esq.
*Attorney for Plaintiff and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................1

II.     PROCEDURAL BACKGROUND ......................................................................1

III.    KEY FACTUAL DISPUTES ...............................................................................3

IV.     THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES'

        DECISION TO SETTLE ...................................................................................... 4

V.      THE CLASS WAS GIVEN THE BEST NOTICE THAT WAS PRACTICABLE

        UNDER THE CIRCUMSTANCES .....................................................................5

        A.     The Notice Process Fulfilled the Promises Made at the Preliminary Approval Stage......5

        B.     The Reaction of the Class and Collective Action Members Demonstrates Support for the

               Settlement ..............................................................................................................6

        C.     An Additional Opportunity to Opt-Out Regarding the Addendum is Not Required.......6

VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........... 7

        A.     The Settlement is Fair, Adequate, and Reasonable, Warranting Final Approval and Entry

               of Judgment............................................................................................................7

               1.    Class Members Faced Significant Risk of Non-Recovery .........................................8

                     i.     The Risk of Non-Payment Arising from the Defendant's Potential

                            Insolvency ...................................................................................... 8

                     ii.    Complex Litigation Concerning Independent Contractor and
                            Exemption Defenses Always Presents Uncertainty.........................9

                     iii.   Willfulness.................................................................................... 11

               2.    The Amount Offered in Settlement Compared to the Risk, Expense, Complexity and

                     Likely Duration of Further Litigation Weights in Favor of Final Approval................... 12

               3.    The Stage of Proceedings Favors this Settlement.........................................14

               4.    The Class Has Been Fairly and Vigorously Represented by Experienced Counsel ....... 14

i

5.  The Presence of a Government Participant...................................................15

6.  The Class's Universally Favorable Reaction to the Settlement Strongly Favors

Settlement Final Approval .............................................................................16

B.  The Service Award if Warranted ...........................................................................16

C.  The Requested *Cy Pres* Beneficiary is Appropriate ..........................................18

**VII.  CONCLUSION ........................................................................................................18**

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 4:18-cv-06510-VC

1

**TABLE OF AUTHORITIES**

2
**Page(s)**

**Federal Cases**

*Alexander v. FedEx Ground Pkg. Sys., Inc.,*
    2016 WL 1427358 (N.D. Cal. 2016) ................................................................. 15

*Alexander v. FedEx Ground Package Sys., Inc.,*
    765 F.3d 981 (9th Cir. 2014) ........................................................................... 10

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ......................................................................... 12

*Alvarez v. IBP, Inc.,*
    339 F.3d 894 (9th Cir. 2003) ........................................................................... 11

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................... 16

*Bonnette v. California Health & Welfare Agency,*
    704 F.2d 1465 (9th Cir. 1983) ......................................................................... 10

*Browning v. Yahoo! Inc.,*
    2007 WL 4105971 (N.D. Cal. 2007) .................................................................. 9

*Cody v. Hillard,*
    88 F.Supp.2d 1049 (D.S.D. 2000) .................................................................... 16

*California Trucking Ass'n v. Su,*
    2018 WL 4288953 (9th Cir. Sept. 10, 2018) .................................................... 10

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012) ........................................................................................ 11

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) .............................................................................. 6

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2013) ........................................................................... 18

*Dent v. ITC Serv. Grp., Inc.,*
    2013 WL 5437331 (D. Nev. 2013) ................................................................... 18

*Fleming v. Covidien Inc.,*
    2011 WL 7563047 (C.D. Cal. 2011) ................................................................ 12

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) ........................................................................... 7

*Franze v. Bimbo Bakeries USA, Inc.,*
    826 F. App'x 74 (2d Cir. 2020) ........................................................................ 10

*Glass v. UBS Fin. Servs., Inc.,*
    2007 WL 221862 (N.D. Cal. 2007) ............................................................. 9,16

*In re Am. Bank Note Holographics, Inc.*,
  127 F.Supp.2d 418 (S.D.N.Y. 2001) ......................................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3872788 (N.D. Cal. 2018) ............................................................................ 9

*In re Art Materials Antitrust Litig.*,
  100 F.R.D. 367 (N.D. Ohio 1983) ............................................................................. 16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................. 16

*In re Farmers Insurance Exchange*,
  471 F.3d 1119 (9th Cir. 2007) .................................................................................. 11

*In re Novartis Wage and Hour Litig.*,
  611 F.3d 141 (2d Cir. 2010) ..................................................................................... 11

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  2016 WL 7364803 (N.D. Cal. 2016) .......................................................................... 15

*In re Warner Comm'cns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................. 9

*Kakani v. Oracle Corp.*,
  2007 WL 1793774 (N.D. Cal. 2007) .......................................................................... 12

*La Parne v. Monex Deposit Co.*,
  2010 WL 4916606 (C.D. Cal. 2010) .......................................................................... 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................................... 9

*Lusby v. Gamestop Inc.*,
  2013 WL 1210283 (N.D. Cal. 2013) .......................................................................... 14

*Ma v. Covidian Holding, Inc.*,
  2014 WL 360196 (C.D. Cal. 2014) ............................................................................ 14

*Mandujano v. Basic Vegetable Prods., Inc.*,
  541 F.2d 832 (9th Cir. 1976) ..................................................................................... 16

*Officers for Justice v. Civil Service Commission of SF*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................. 8,13

*O'Sullivan v. AMN Servs., Inc.*,
  12-cv-2125 (N.D. Cal. 2014) ..................................................................................... 14

*Real v. Driscoll Strawberry Assocs., Inc.*,
  603 F.2d 748 (9th Cir. 1979) ..................................................................................... 10

*Rodriguez v. West Publ.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................ 13,14

*Ross v. U.S. Babk Nat. Ass'n*,
  2010 WL 3833922 (N.D. Cal. 2010) .......................................................................... 17

iv

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. 2012) .................................................................................. 17

*Saleem v. Corp. Transportation Grp., Ltd.*,
    854 F.3d 131 (2d Cir. 2017) ............................................................................................... 10

*Satchell v. Fed. Exp. Corp.*,
    2007 WL 1114010 (N.D. Cal. 2007) .................................................................................. 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................................ 8

*Suarez v. Big Apple Car, Inc.*,
    806 F. App'x 19 (2d Cir. 2020) .......................................................................................... 10

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................................................. 9

*Viceral v. Mistras Grp., Inc.*,
    2016 WL 5907869 (N.D. Cal. 2016) .................................................................................. 14

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. 2015) .................................................................................. 11

*Van Vranken v. Atl. Richfield Co.*,
    901 F.Supp.294 (N.D. Cal. 1995) ...................................................................................... 16

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. 2016) .................................................................................... 11


**State Cases**

*Armenta v. Osmose, Inc.*,
    135 Cal.App.4th 314 (2005) ............................................................................................... 11

*Dynamex Operations West v. Superior Court*,
    4 Cal. 5th 903 (2018) .......................................................................................................... 10

*In re Nordstrom Commission Cases*,
    186 Cal.App.4th 576 (2010) ............................................................................................... 15

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
    48 Cal.3d 341 (1989) .......................................................................................................... 10

*Vazquez v. Jan-Pro Franchising Int'l*,
    2021 WL 127201 (Cal. 2021) ............................................................................................. 11


**Federal Statutes, Rules and Regulations**

California Labor Code §§ 203 .................................................................................................. 11

California Labor Code §§ 226 .................................................................................................. 11

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 4:18-cv-06510-VC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

California Labor Code §§ 226.8(i)(4) ........................................................................ 12

California Labor Code Section 2699(e)(2) ............................................................... 12

Federal Rule of Civil Procedure 23(c)(2)(B) ............................................................. 5

29 U.S.C. §255(a) .................................................................................................... 11

29 U.S.C. §260 ........................................................................................................ 11

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 4:18-cv-06510-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a collective and class action against Defendant Savoya, LLC ("Savoya" or "Defendant"), brought by drivers allegedly misclassified as independent contractors. In this unopposed motion, Plaintiff seeks final approval of a $750,000 settlement of this matter on behalf of 44 drivers who worked for Savoya as drivers in California at any time between January 1, 2016, through February 6, 2020.

No binding case law addresses whether a driver for a chauffeured limousine and luxury car transportation service should be classified as an employee or an independent contractor. For example, as the Court recognized in granting preliminary approval, courts have found drivers for Uber and Grubhub to be independent contractors, rather than employees. In addition to the legal challenges, there is a significant risk of non-payment given Defendant's financial decision, evidence as to which was presented for the Court's *in camera* review previously (ECF Nos. 70, 81), and updated evidence as to which is presented, under seal, contemporaneously herewith. Accordingly, there is a high risk that Defendant would be unavailable to pay any meaningful judgment, particularly in light of the devastating impact of the COVID-19 pandemic on Defendant's business, which is focused on domestic travel.

Despite the lack of clear legal precedent and the financial risks, and after contentious litigation and an extensive, arms'-length settlement negotiation, following a full day of mediation, Plaintiff is seeking final approval of a settlement by which class members will receive meaningful financial recovery based on the number of hours they worked. Each of these workers will receive an average gross recovery of over $17,000 – an average net payment of over $12,000.

The Class appears to agree that the settlement is a successful outcome, as none of the 44 drivers opted out or filed an objection to the settlement. The Court should readily grant final approval of the proposed settlement, with the addendum featuring a payment plan that is most likely to ensure full payment to the Class as promptly as reasonably possible under the circumstances.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this class and collective action in this Court on October 24, 2018. ECF No. 1. Plaintiff's First Amended Complaint ("FAC"), filed on January 19, 2019, alleges ten causes of action

1

asserting violations of federal and state wage laws arising from Plaintiff's central theory of independent contractor misclassification. ECF No. 29. On March 25, 2019, the Court denied Defendant's motion to transfer and granted in part and denied in part Defendant's motion to dismiss, dismissing Plaintiff's claim for overtime wages with leave to amend. ECF No. 52.

The parties have completed some pre-certification and merits discovery and litigation, including Defendant's production of thousands of pages of document discovery and the class list to Plaintiff, in addition to the exchange of informal discovery in preparation for mediation. The parties attended a successful mediation with mediator Cynthia Remmers on August 29, 2019. ECF No. 62-2, Declaration of Bryan J. Schwartz ISO Motion for Preliminary Approval ("Schwartz Decl. ISO Preliminary Approval") at ¶ 5. The Parties arrived at a Memorandum of Understanding that evening (*id.* at ¶ 6), and, after additional negotiations, fully executed a Long-Form Settlement Agreement on October 18, 2019. *Id.* at ¶ 7; Schwartz Decl. ISO Preliminary Approval, Ex. 1 ("Ex. 1" or "Settlement Agreement").

In agreeing to the terms contained in the Settlement Agreement, Plaintiff relied not only upon the extensive information, documents, and data provided by Plaintiff and Defendant in discovery, but also upon Defendant's financial state as represented at mediation and corroborated by information provided subsequently. Schwartz Decl. ISO Preliminary Approval at ¶ 8. As such, Plaintiff was well-equipped to evaluate the strengths and weaknesses of his class claims regarding Defendant's liabilities, possible exemption defenses, the likelihood of class certification, Defendant's potential damages exposure, and the risk of non-payment. *Id.* at ¶ 9.

On November 13, 2019, the Court requested supplemental briefing in support of Plaintiffs' unopposed motion seeking preliminary approval of the class action settlement reached in this matter. ECF No. 63. The court presented specific questions to the Parties, which Plaintiff addressed in a supplemental brief filed on December 2, 2019. ECF No. 67.

On January 16, 2020, the Court heard Plaintiff's Motion for Preliminary Approval, and requested that the Parties amend and/or clarify certain terms in the Settlement Agreement and Class Notice. ECF No. 74. On January 22, 2020, the Parties filed an Addendum Amending Stipulation and Settlement Agreement of Class Action and Individual Claims. ECF No. 76. On January 30, 2020, the Court sought

1    further explanation as to how one of the penalties was going to be calculated. ECF No. 77. On January

2    31, 2020, Plaintiff filed a response to the Court's inquiry. ECF No. 78, Supplemental Declaration of Ryan

3    T. Chin ("Supp. Chin Decl.").

4        The Court granted preliminary approval of the proposed settlement on February 6, 2020, with the

5    amendments to the settlement agreement that the Parties implemented via stipulation. *See* ECF No. 79

6    ("Preliminary Approval Order" or "PAO"). As discussed more fully below, notice was issued to the Class

7    on February 26, 2020, pursuant to the Court's preliminary approval order.

8        The Final Approval Hearing was originally scheduled for May 21, 2020. However, because of

9    the ongoing pandemic and its economic impact on Defendant's business, the hearing was continued three

10   times at Defendant's request. Defendant has represented that it cannot obtain the Standby Letter of Credit

11   (SLOC) that it was obligated to obtain under the Settlement Agreement. Due to Defendant's

12   representations and the ongoing impact of the pandemic, the Parties submit a new Addendum to

13   Stipulation and Settlement Agreement of Class Action and Individual Claims ("Addendum") herewith,

14   pursuant to Paragraph 81 of the Settlement Agreement, which provides that the Settlement Agreement

15   may be amended or modified by a written instrument. The Parties believe that these amendments are

16   necessary to ensure that the Class Members receive the Total Settlement Amount, since Defendant is

17   presently unable to obtain the SLOC and not generating meaningful operating revenues, given the

18   pandemic's impact on the economy and domestic travel.

19

20   **III.    KEY FACTUAL DISPUTES**

21       Defendant operates a chauffeured limousine and luxury car transportation service. Plaintiff

22   worked as a driver for Defendant for approximately two years in San Francisco, California. PAO at 1:22-

23   23. While Plaintiff maintains that Defendant has and exercises extensive control over its drivers through

24   various mechanisms and policies, Defendant argues that these allegations, even if true, are not enough to

25   establish that Plaintiff and the other Drivers were employees rather than independent contractors. ECF

26   No. 62 ("Preliminary Approval Motion" or "PAM") at 3:5-28.

27       Plaintiff asserts that by misclassifying drivers as independent contractors, Defendant failed to

28   reimburse drivers for expenses including vehicle costs and other operation costs required to perform the

job. Plaintiff alleges that after taking into account these expenses, Drivers may earn less than minimum wage, and also alleges that Defendant failed to pay overtime premiums, because Defendant compensated its drivers at the same rate schedule for all hours worked, including overtime. Plaintiff also points to the failure to pay for spot time and mandatory meetings. *Id.* at 3:20-26. Defendant denies these allegations. *See, e.g.,* ECF No. 46, Defendant's Reply ISO Renewed Motion to Dismiss at 1:11-18.

## IV.    THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES' DECISION TO SETTLE

Out of the $750,000 gross Settlement Amount, the Settlement calls for:

- a net payment of $531,500 to 44 class members (*i.e.,* approximately $12,080 per person), none of which will revert to Defendant;

- the Ninth Circuit's benchmark, 25% of the common fund (*i.e.,* $187,500) in attorneys' fees, and a modest $6,000 in out-of-pocket expenses (PAO at 4:6-7);

- $7,500 in penalty payments to the Labor and Workforce Development (Settlement Agreement ¶ 61; PAO at 4:10-12);

- $7,500 as a service payment to representative Plaintiff Billy Alabsi (Settlement Agreement ¶ 56;

- and $10,000 to compensate the Settlement Administrator Rust Consulting, Inc. ("Rust") (Rust Decl. ¶ 15; PAO at 4:8-9.).

The Settlement will be distributed to the Class Members based on the number of workweeks completed during the relevant Class Period. Settlement Agreement ¶¶ 25, 47. Additionally, 5% of the Net Settlement Amount will be allotted to waiting time penalties, as the waiting time penalties represent approximately 5% of the total damages estimate. Supp. Chin Decl. ¶ 6. This amount will be divided between former drivers, based on their average weekly earnings. Supp. Chin Decl. ¶ 7. Any unclaimed funds, as a result of checks that remain uncashed ninety (90) days after mailing, will be redistributed *pro rata* to participating Class Members in subsequent allocations, and, if uncashed from the final allocation, will be distributed to the *cy pres* recipient, Legal Aid at Work.  Settlement Agreement at ¶ 48.

The Addendum, filed contemporaneously herewith, amends the Settlement Agreement as to the timing of Defendant's delivery of the Settlement Amount to the Settlement Administrator. Addendum pp. 2-4. Instead of obtaining a SLOC, and delivering the Settlement amount in three equal payments, as

described in Paragraph 69 of the original Settlement Agreement, Defendants will be required to deposit an Initial Payment of $60,000 into the Qualified Settlement Fund ("QSF") within 30 days of final approval, and thereafter to deposit monthly payments between $0 and $57,500, depending on Defendant's monthly revenue, until the QSF equals the Total Settlement Amount. Addendum pp. 2-3. Because of the economic impact of the pandemic, and Defendant's inability to obtain the SLOC required by the original Settlement Agreement, the Parties believe that this payment schedule is necessary to ensure that the putative class will receive the Total Settlement Amount. Addendum pp. 2; Declaration of Bryan J. Schwartz in Support of Final Approval ("Schwartz Decl.") at ¶¶ 8-13. Class Counsel takes into account the strong risk of bankruptcy absent such an agreement, which could readily result in less than the Total Settlement Amount being paid, over a longer period of time. Schwartz Decl. at ¶ 13.

## V.   THE CLASS WAS GIVEN THE BEST NOTICE THAT WAS PRACTICABLE UNDER THE CIRCUMSTANCES.

### A.   The Notice Process Fulfilled the Promises Made at the Preliminary Approval Stage.

Federal Rule of Civil Procedure 23(c)(2)(B) requires that:

"For any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice "must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court approved the Class Notice as meeting all of Rule 23's criteria (ECF No. 79), and the Parties effected notice. As detailed in the Declaration of Abigail Schwartz ("Rust Decl."), Project Manager for Rust, Rust mailed timely Notices to all 44 Class Members via First Class U.S. mail (after

first processing each address through the National Change of Address Database). Rust Decl. at ¶¶ 7-8. The approved Notice described the nature of the litigation, the terms of the settlement, and each class and collective action member's legal options with regard to the proposed settlement in language intended to be clear and easily understood by lay readers. Rust Decl., Ex. A, Notice.

Furthermore, Counsel made information regarding this case, including relevant pleadings, available online and provided this information to the Class in the class notice.[1] Rust Decl. at ¶ 5 and Ex. A to Rust Decl., Class Notice.

Rust received three returned notice letters, for which it performed address traces and obtained no more current addresses. Rust Decl. at ¶ 9. Class Counsel provided current contact information to Rust for one of these Class Members. *Id*. Another one of these Class Members phoned Rust and provided updated contact information. *Id*. Ultimately, only one Class Member's mailed notice letter remained undeliverable despite Rust's tracing efforts. *Id*. Per Class Counsel's request, Rust called and emailed the individual whose mailed notice letter remained undeliverable and advised that they could submit a written exclusion request or objection by May 22, 2020. Rust Decl. at ¶ 10.

In sum, Counsel worked diligently with Rust to ensure that Class Members were aware of this settlement and had the opportunity to consider the terms of the settlement, and to respond to all Class Members' inquiries.

**B.     The Reaction of the Class and Collective Action Members Demonstrates Support for the Settlement.**

Of the 44 Class Members, no Class Member objected to the settlement, and no Class Member excluded him or herself from this action. Rust Decl. at ¶¶ 13-14.

**C.     An Additional Opportunity to Opt-Out Regarding the Addendum is Not Required.**

The Parties need not provide an additional opt-out opportunity to the Class Members, because the modifications to the Settlement Agreement outlined in the Addendum are not core to the terms of the settlement and because they serve only to improve the terms for the class. *See Denney v. Deutsche Bank*

---

[1] The web address where the information made available to Class Members can be found is: https://www.rustconsulting.com/cases/alabsi-v-savoya.

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 4:18-cv-06510-VC

*AG*, 443 F.3d 253, 271 (2d Cir. 2006) (finding no second opt-out opportunity was needed where the original notice informed all class members of the basic settlement terms and the terms had only improved since the original notice was sent).

The Court approved the Class Notice, which included a summary of the core settlement terms. Rust Decl., Ex. A, Notice. The Notice describes that Defendant Savoya, "will pay $750,000.00 (the "Total Settlement Amount") to fully resolve the claims in the Action," but does not detail when or how Defendant will deposit its payment. *Id*. at ¶ 10. The fact that Defendant will pay the entire Settlement Amount remains true, under the Addendum. Class Members did not decide to participate in the Settlement based upon the timeline for payment, so nothing has changed that would require further notice – and, a further notice process prior to final approval would only delay payment longer.

The Addendum serves only to improve the outlook for the Class Members, *i.e.,* ensuring that the Class will still receive the Total Settlement Amount, notwithstanding the devastation of Defendant's business over the last year. *Id*. at 2: 8-16. Defendant cannot comply with the original terms of the Settlement. *Id*. Class Members risk recovering nothing, or recovering less over a longer period of time, without this Addendum modifying Defendant's payment schedule. The Addendum exists only to increase the likelihood that Class Members will recover from Defendant.

Because the Class was previously notified of the essential terms of the settlement and the Addendum only serves to improve Class Members' likelihood of recovery, an additional opt-out notice need not be required.

## VI.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

### A.    The Settlement is Fair, Adequate, and Reasonable, Warranting Final Approval and Entry of Judgment.

Federal law strongly encourages settlements in the context of class actions. *See, e.g., Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must limit the inquiry "to the extent necessary to reach a reasoned

judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; (6) the presence of a government participant, and (7) the reaction of the class to the proposed settlement. *See Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (noting that the relative importance of each of these factors will depend on the circumstances of the case). Here, all of the relevant factors weigh in favor of final approval.

### 1.    Class Members Faced Significant Risk of Non-Recovery.

#### i.    <u>The Risk of Non-Payment Arising from the Defendant's Potential Insolvency.</u>

At mediation, Defendant's counsel represented that Defendant had financial concerns about its ability to pay any judgment or settlement amount beyond a certain point. PAO at 11:5-8. Defendant's counsel subsequently presented evidence for the Court's *in camera* review regarding its financials to substantiate this assertion. *Id.* at 11:8-10. These challenges have only been further exacerbated by the COVID-19 pandemic. ECF Nos. 81-1, 81-3. *See also* Defendant's declaration submitted under seal, contemporaneously herewith.

To avoid the manifold risks, delays, and costs of potentially pursuing Defendant in bankruptcy, Plaintiff requires, as a component of the proposed Addendum to the Settlement Agreement, that Defendant pay the Total Settlement Amount in monthly installments, based on Defendant's monthly revenue. *See* Addendum at 2: 22-4:1. Defendant agrees to pay an Initial Payment of $60,000 within 30 days of Final Approval. *Id*.

The Ninth Circuit has repeatedly indicated that the risk of a defendant's bankruptcy is a factor weighing in favor of settlement approval. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (rejecting objector's challenge to class action settlement where the lower court "meaningfully accounted for potential value of members' claims . . . and noted risks of bringing such claims to trial, and evidence indicated that one of defendants that could be subject to liability under [a particular theory] was on verge of bankruptcy."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (evaluating class action settlement adequacy, finding, "[h]ere one factor predominates to make clear that the district court acted within its discretion. That factor is [the defendant's] financial condition."). Because "the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures," this factor strongly supports granting final approval here. *See In re Warner Comm'cns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985).

### ii. <u>Complex Litigation Concerning Independent Contractor and Exemption Defenses Always Presents Uncertainty.</u>

"In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval." *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) (*citing Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *3 (N.D. Cal. 2007)); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3872788, at **11, 21 (N.D. Cal. Aug. 15, 2018) ("legal uncertainty supports approval of a settlement"). Plaintiff asserts that drivers were misclassified as independent contractors, and that no relevant exemption to the payment of wages under the federal Fair Labor Standards Act (FLSA) and relevant state laws apply to drivers. Defendant vigorously disputes these assertions. In support of its contention that drivers were properly classified as independent contractors, defendant contends that many, if not all, of these derivers also performed services through their own businesses or Savoya's competitors, and note that drivers were free to determine which hours they worked for Savoya and could decline trips. Defendant argues that all of the damages are contingent upon Plaintiff prevailing on the misclassification issue. No binding Ninth Circuit case law directly addresses whether the specific job at issue – limousine drivers – may be classified as non-exempt employees, although cases elsewhere highlight the great risks that Plaintiff would confront

in pursuing these claims. *See, e.g., Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 134 (2d Cir. 2017) (holding that drivers are properly classified as "independent contractors" rather than employees for the purposes of the FLSA); *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 78 (2d Cir. 2020) (same); *Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 23 (2d Cir. 2020) (holding employee was exempt from receiving overtime wages).

The Ninth Circuit applies a multi-factor test to determine whether a worker should be classified as an independent contractor or an employee under the FLSA. *See Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). As to California claims, under the *Borello* test, California courts applied a similar, multi-factor test, emphasizing the right to control, to resolve whether a worker is an employee or independent contractor. *See Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th Cir. 2014) (*citing S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350 (1989)). As the Court noted, drivers for Uber and Grubhub have been found to be independent contractors under these tests. PAO at 10:3-8.

The California Supreme Court's decision in *Dynamex* last year simplified the inquiry regarding employee status under California law by adopting the "ABC test," at least with respect to claims brought under California Labor Code Section 1194 and applicable provisions in the Wage Orders. *See Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903, 957 (2018). However, whether the ABC test applies, for example, to claims brought under PAGA, or for reimbursements, has not been resolved. *See California Trucking Ass'n v. Su*, 2018 WL 4288953, at *3 n.4 (9th Cir. Sept. 10, 2018) ("*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections.").

In November 2020, voters approved Proposition 22, which would make it harder for drivers to prevail. *See* Ex. B to Schwartz Decl., *Uber and Lyft Drivers in California Will Remain Contractors*. Then, on January 14, 2021, the California Supreme Court held that *Dynamex* applies retroactively, thereby guaranteeing litigation on this issue for years to come (including this case, in the absence of

settlement). *See Vazquez v. Jan-Pro Franchising Int'l*, Inc., No. S258191, 2021 WL 127201, at *1 (Cal. Jan. 14, 2021).

Exemption misclassification cases always present a significant risk of losing on the merits, even after extensive litigation, as in *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt). *See also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) (*abrogating In re Novartis Wage and Hour Litig.,* 611 F.3d 141 (2d Cir. 2010)). In *Novartis,* after winning at the Second Circuit, plaintiffs settled for $99 million – and were granted final approval *less than a month* before the *Christopher* decision, which would have left them empty-handed. Schwartz Decl. ISO Preliminary Approval at ¶ 21; Ex. 3 to *id*. The risk is now greater after the Supreme Court's decision in *Encino Motors v. Navarro,* where it rejected the longstanding rule that exemptions to the FLSA should be construed narrowly. *See* 138 S. Ct. 1134, 1142 (2018).

This Settlement removes the risk to drivers of an unfavorable interpretation of the federal or state exemptions on the instant facts. Accordingly, the myriad risks surrounding complex litigation involving misclassification under the wage laws weighs strongly in favor of granting final approval of this settlement.

### iii.    Willfulness

For maximum recovery, Plaintiff would have to prove that Defendant's alleged violations of the labor laws were willful, under the FLSA and California Labor Code. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (FLSA standard for willfulness); *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 325 (2005) (standard under Labor Code § 203); *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) (standard for "knowing and intentional" violation under Labor Code § 226). If Plaintiff was unable to establish the requisite level of intent, the statute of limitations under the FLSA would be reduced to two years. *See* 29 U.S.C. § 255(a). In addition, if Defendant was successful in asserting a good-faith defense, such would bar Plaintiff's claims under Labor Code §§ 203 and 226, and eliminate liquidated damages for the FLSA collective (29 U.S.C. § 260).

Importantly, potentially the highest value claim asserted by Plaintiff – Section 226.8 penalties brought under the PAGA – requires a finding that drivers were misclassified by Defendants "voluntarily and knowingly." Cal. Lab. Code § 226.8(i)(4) (defining "willful misclassification"). Without a strong showing of willfulness under Section 226.8, any civil penalties award would at best be subject to steep reductions by the Court, as authorized by Labor Code Section 2699(e)(2). *See, e.g., Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties by 82%); Cal. Lab. Code § 2699(e)(2).

Accordingly, Defendant might avoid damages alleged in the operative complaint by persuading the trier of fact that, if Drivers were misclassified, it was based upon a good-faith if mistaken belief, and/or that any civil penalties award should be sharply reduced under Section 2699(e)(2).

**2**.     **The Amount Offered in Settlement Compared to the Risk, Expense, Complexity and Likely Duration of Further Litigation Weighs in Favor of Final Approval**.

The Settlement will provide Class Members with over $12,000 on average, net, per class member. Because the Settlement is non-reversionary, Defendant will recover none of the settlement amount paid here. *See* Settlement Agreement at ¶ 47; *La Parne v. Monex Deposit Co.*, 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) (favoring a non-reversionary settlement under similar circumstances); *cf. Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) (disapproving reversion); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that reversion of class members' recovery to the defendant is one indication of collusion in the settlement process).

If any Class Member fails to cash a check for the first or second installment within 180 days, Rust will include those funds on a *pro rata* basis in the second and third distributions respectively to those class members who negotiate their checks. Settlement Agreement at ¶ 48. Second and third installment checks will not be sent to Class Members who could not be located and/or did not cash checks in the prior installments. *Id.* If any Class Member fails to cash a check for the third installment within 90 days, Rust will distribute those funds on a *pro rata* basis to those class members who negotiate their third installment checks, unless the unclaimed funds are $20,000 or less. ECF No. 76; Settlement Agreement at ¶ 48. If any unclaimed funds total less than $20,000, then Rust will complete distribution to the *cy pres*

12

recipient granted preliminary approval, Legal Aid at Work, which helps thousands of workers with wage claims in California. PAO at 13; Class Notice at 3.

As to the amount offered in settlement, the Court need not compare the Settlement to an estimated full-relief, best-day outcome in the case if it were fully litigated. *Rodriguez v. West Publ.*, 563 F.3d 948, 965-966 (9th Cir. 2009). The Ninth Circuit explains:

> We are not persuaded … by Objectors' further submission that the court should have specifically weighed the merits of the class's case against the settlement amount and quantified the expected value of fully litigating the matter…. [T]he Seventh Circuit directs courts to "'estimate the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Id.* However, our approach, and the factors we identify, are somewhat different. We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, *Hanlon*, 150 F.3d at 1027; *Officers for Justice* [*v. Civil Service Com'n*, 688 F.2d 615, 625 (9th Cir. 1982)], and have never prescribed a particular formula by which that outcome must be tested. As we explained in *Officers for Justice*, "[u]ltimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." 688 F.2d at 625 (internal quotation marks and citation omitted).

*Rodriguez*, 563 F.3d at 965.

Even if the Court were to assume Plaintiff's victory, the settlement amount compares favorably with the estimated full relief for Plaintiff and the Class Members' claims. For his damages analysis, Plaintiff identified the total number of work weeks by each class member, and applied overtime (and where applicable, minimum wage) rates, penalties, liquidated damages under state law, and state-specific interest rates to the work weeks identified, making reasonable assumptions regarding overtime hours worked, minimum wages unpaid, California meal and rest breaks missed, and unreimbursed business expenses based on the records provided by Defendant. Schwartz Decl. ISO Preliminary Approval ¶ 10; ECF No. 67-1, Supplemental Schwartz Decl. ¶¶ 3-14. As acknowledged by the Court in its Preliminary Approval Order, Plaintiff estimates the total value of the case as: miscalculation of overtime ($27,283.84); missed meal breaks ($231,218.83); missed rest periods ($336,120.19); unpaid minimum wages ($44,685.27); expense reimbursements ($672,742.50); inaccurate wage statements ($59,900); and waiting time penalties ($68,801.92); totaling $1,440,752.55. PAO 9: 10-22; Supplemental Schwartz

Decl. ¶¶ 7-28. Plaintiff also estimates PAGA penalties at $1,042,000. Supplemental Schwartz Decl. ¶¶ 15-28.

The gross $750,000 recovered is thus 52% of the total, best-day exposure in the case, before PAGA claims, and 30.2% of all claims. PAO 9: 18-19; *see also Rodriguez*, 563 F.3d at 955 (court may calculate settlement reasonableness without considering penalties). Compare this result to *Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014), in which a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see also Viceral v. Mistras Grp., Inc.*, 216 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving a settlement representing 8.1% of the full verdict value); Exhibit 4 to Schwartz Decl. ISO Preliminary Approval (*O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal.) (Spero, M.J.) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief)).

On the other hand, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, the rejected settlement would have been $750,000 for 13,872 people – paying $0.26/shift, after fees/costs, etc. were deducted. 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) (Lloyd, M.J.). That this settlement pays such a substantial recovery, unlike *Lusby,* despite the myriad risks of non-recovery, supports final approval of the Parties' Settlement.

### 3.    The Stage of the Proceedings Favors This Settlement.

The proposed Settlement was the product of arm's-length, non-collusive negotiations, including a full day mediation with a highly experienced mediator. PAM at 11:15-22; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Plaintiff was well-informed about the strengths and weaknesses of his case after reviewing the discovery produced by Defendant and conducting a damages analysis based on data produced by Defendant. *Id*.

### 4.    The Class Has Been Fairly and Vigorously Represented by Experienced Counsel.

Class Counsel have represented tens of thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by this Court and numerous other courts in the Ninth Circuit and elsewhere. Schwartz Decl. at ¶¶ 21-32. Counsel are recognized as among the top lawyers in the wage and hour field in California. *Id*. at ¶ 32.

Class Counsel fought for terms most advantageous to the Class throughout the course of the litigation, including a number of heavily contested motions. PAM at 11:23-25. Among other advantageous terms, counsel insisted that the settlement payment be non-reversionary (*i.e.,* maximizing payments to class members and aligning the interests of all Parties to a successful settlement administration), and most recently secured a payment plan to ensure Defendant's ability to diminish the risk non-payment to the Class. *Id*. at 11:25-12:1; Settlement Agreement at ¶¶ 47; Addendum at 2: 8-16.

### 5. The Presence of a Government Participant.

While no government entity has filed an appearance in this matter, Plaintiff has complied with the PAGA's notice requirements to the California Labor Workforce Development Agency ("LWDA"). Schwartz Decl. at ¶ 7. The PAGA allocation of 1% of the gross Settlement is appropriate and generous, given the importance of the non-PAGA claims in the Parties' negotiations. *See, e.g.,* 2016 WL 5907869, at **8-9 (0.15% of settlement fund ($20,000 out of $12,952,000) was a reasonable PAGA allocation); *Alexander v. FedEx Ground Package Sys., Inc.*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% of settlement fund ($1.6 million of $226.5 million)); *Vasquez v. USM, Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67% of settlement fund ($6,700 of $1 million). In any event, PAGA claims may be allocated $0 properly, under governing California law. *See In re Nordstrom Commission Cases*, 186 Cal.App.4th 576, 579 (2010) ("[T]he trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims."). Despite months of notice regarding this settlement, neither the LWDA nor any other government entity has registered any concern or otherwise taken a position regarding this matter, further supporting final approval of the settlement. Schwartz Decl. ¶ 7; *see In re Optical Disk Drive Prod. Antitrust Litig.*, 2016 WL 7364803, at *5 (N.D. Cal. Dec. 19, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.    **The Class's Universally Favorable Reaction to the Settlement Strongly Favors Settlement Final Approval.**

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

No class action member has objected to, or opted out of, the settlement. Rust Decl. ¶¶ 13-14.

In sum, all of the relevant factors demonstrate that this is a fair, adequate and reasonable settlement, and final approval is therefore appropriate.

B.    **The Service Award is Warranted**

Plaintiff Billy Alabsi's requested service award is justified under the case law and the facts of this case. *See, e.g., Glass*, 2007 WL 221862, at *16 (approving payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed as part of the settlement agreement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's service award: 1) the risk to the class representative in commencing suit, both financial

and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id.* at 299. These factors all support the need for service payments to the Class Representative here. Moreover, the $7,500 amount for the service award for Plaintiff Alabsi is within the range of service awards approved by this Court and numerous others. *See* PAM at 15:27-16:1-10 (collecting examples of approved settlement agreements providing for comparable service award amounts).

Plaintiff Alabsi experienced reputational risk (and "notoriety") as a result of bringing this case, by severing ties with Defendant, placing himself into the public spotlight and feeling like he is losing a source of job references and future employment opportunities based on participation in this lawsuit. *See* ECF No. 62-1, Declaration of Billy Alabsi ¶¶ 5-7; *see also Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles"). For example, a Google search for "Billy Alabsi" results in a link to this Court's order on Defendant's motion to dismiss in this case on the first page of results.

Plaintiff Alabsi has spent dozens of hours on this case, over years of litigation, including:

- bringing this case as the lone named plaintiff (none of the Class would be recovering otherwise);
- reaching out to putative Class members;
- attending a full day of mediation in August 2019, in person, shutting down his business to participate in the mediation;
- reviewing briefs, declarations, and agreements;
- and consulting extensively with Plaintiff's counsel about the case both before and after the case was filed.

PAM at 16:23-28.

The personal benefit that Plaintiff Alabsi would receive if he received the same settlement payment as the rest of the class members would not come close to compensating him for the foregoing

17

personal costs he has paid and stress he has endured in order to benefit the class. Had Plaintiff Alabsi proceeded individually, rather than sacrificing for the class, he might have recovered more than his recovery as class members here. At every turn, he delayed his own potential gain to ensure his former co-workers would be given the chance to recover.

Finally, Plaintiff Alabsi is executing a much broader waiver of claims than other class members, warranting additional compensation. Settlement Agreement at ¶ 60; *see, e.g., Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour plaintiff signed a general release).

### C.    The Requested *Cy Pres* Beneficiary Is Appropriate

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (internal quotations omitted). Here, there is. This is a workers' rights suit seeking overtime and minimum wages, primarily for workers in California. Legal Aid at Work (https://legalaidatwork.org) is the leading provider of direct legal services in employment law for low-wage workers in California. Schwartz Decl. ISO Preliminary Approval at ¶ 34. The Court should thus approve this *cy pres* recipient.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff Alabsi respectfully requests that this Court grant final approval of the class settlement reached in this matter; award the requested service payments; approve the attorneys' fees and costs awards (for the reasons described in a separate fee/cost motion, submitted herewith) and enter the proposed order and judgment accordingly.

Dated: January 29, 2021                                    BRYAN SCHWARTZ LAW

                                                           By: */s/ Bryan J. Schwartz*
                                                           Bryan J. Schwartz
                                                           *Attorney for Plaintiffs*

18