BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
180 Grand Ave., Suite 1380
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com

*Attorney for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| Billy Alabsi, individually, on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>    vs.<br><br>Savoya, LLC, and Does 1 through 50, inclusive<br><br>                 Defendant. | CASE NO.: 4:18-cv-06510-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARD**<br><br>Originally filed: January 9, 2019<br>Trial date: None set<br><br>Hearing Date: March 11, 2021<br>Time: 1:30 pm<br>Courtroom: TBD<br>Judge: Hon. Kandis A. Westmore |

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that a hearing will be held on Plaintiff's Unopposed Motion for Attorneys' Fees and Costs on March 11, 2021 at 1:30 pm in the Courtroom of Honorable Kandis A. Westmore, located at 1301 Clay Street, Oakland, California 94612. At the hearing, representative Plaintiff Billy Alabsi ("Plaintiff"), through his attorneys and on behalf of all other Drivers similarly situated, will and hereby do move the Court to: (1) grant final approval of a fee request of $187,500 (25% of the settlement fund); (2) approve reimbursement of litigation costs in the amount of $6,000; (3) award $10,000 to compensate the Settlement Administrator Rust Consulting, Inc. ("Rust"); and (4) award an incentive payment of $7,500 to Class Representative Billy Alabsi, in accordance with the terms of the Settlement Agreement between Plaintiff and Defendant Savoya, LLC ("Defendant," together with Plaintiff, the "Parties"), which the Court preliminarily approved by order dated February 6, 2020 (ECF No. 79). The motion will be heard along with Plaintiff's Motion for Final Approval of Amended Class Action Settlement, filed contemporaneously herewith.

This Motion is based on: this Notice of Motion; the accompanying Memorandum of Points and Authorities; Addendum to Stipulation and Settlement Agreement of Class Action and Individual Claims; the Declaration of Abigail Schwartz of Rust Consulting, Inc. (the Settlement Administrator); the Declaration of Bryan J. Schwartz, Esq., in support of Final Approval; Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Defendant's statement of non-opposition (ECF Nos. 62, 64), and all documents filed in support thereof (ECF Nos. 62-1 through 62-4); Plaintiff's supplemental briefing and stipulation filed in support of the Motion for Preliminary Approval (ECF Nos. 67, 68), (ECF No. 64), and all documents filed in support thereof (ECF No. 76, 78);  any oral argument of counsel; the complete files, records, and pleadings in the above captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.Dated: January 29, 2021

BRYAN SCHWARTZ LAW

By: */s/ Bryan J. Schwartz*
Bryan J. Schwartz, Esq.
*Attorney for Plaintiff and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION....................................................................................................1

II.     SUMMARY OF SETTLEMENT TERMS..........................................................2

III.    THE ATTORNEYS' FEES REQUESTED ARE JUSTIFIED ...........................3

        A.    Given the Strong Results Obtained and the Risk Borne by Class Counsel, the Award

              Sought at the Ninth Circuit Benchmark is Justified...........................................5

              1.    The Strong Results Achieved Support the Fee Request .................................5

                    a.    Class Counsel Secured a Strong Financial Outcome ..........................5

                    b.    Class Counsel Also Vindicated the Public Policy of Payment of Wages

                          Due.......................................................................................................7

              2.    Class Counsel Has Borne Substantial Risk to Litigate this Case ................8

              3.    Class Counsel's Skill and Experience in Wage-and-Hour Cases Also Contributes to

                    the Reasonableness of the Fee Request ......................................................8

              4.    Class Counsel Have Borne the Financial Burden of Litigating on a   Contingency

                    Basis............................................................................................................9

              5.    Class Support Has Been Universal ...........................................................10

              6.    The Lodestar Cross-Check Further Support the Fee Request....................10

                    a.    Class Counsel's Rates for the Lodestar Cross-Check are Reasonable for

                          Experienced Wage-and-Hour Practitioners in the Local Legal Market.........10

                    b.    Counsel's Claimed Hours are Reasonable for this Action ................12

IV.     THE COURT SHOULD AWARD THE REQUESTED LITIGATION COSTS ...............12

V.      THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARD...............13

VI.     CONCLUSION .................................................................................................15

1

2

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alvarado v. Nederend*,
    2011 WL 1883188 (E.D. Cal. 2011) .................................................................. 14,15

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) ................................................................................... 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................... 3

*Bond v. Ferguson Enterprises, Inc.*,
    2011 WL 2648879 (E.D. Cal. 2011) ..................................................................... 14

*Boyd v. Bank of Am. Corp.*,
    2014 WL 6473804 (C.D. Cal. 2014) ..................................................................... 10

*Boyd v. Bank of America*,
    SA13-CV-00561 (C.D. Cal. 2016) .......................................................................... 9

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 33480455 (N.D. Cal. 2011) ..................................................................... 9

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008) ................................................................................ 10

*Craft v. City of San Bernardino*,
    624 F.Supp.2d 1113 (C.D. Cal. 2008) ..................................................................... 9

*Dowdell v. City of Apopka, Florida*,
    698 F.2d 1181 (11th Cir. 1983) ............................................................................ 13

*EK Vathana v. Everbank*,
    2016 WL 3951334 (N.D. Cal. 2016) ....................................................................... 8

*Elliott v. Rolling Frito-Lay Sales, LP*,
    2014 WL 2761316 (C.D. Cal. 2014) ....................................................................... 4

*Fernandez v. Victoria Secret Stores, LLC*,
    2008 WL 8150856 (C.D. Cal. 2008) ..................................................................... 13

*Fischel v. Equitable Life Assur. Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ................................................................................. 4

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. 2007) ................................................................ 4,5,10

*Goodwin v. Citywide Home Loans, Inc.*,
    2015 WL 12868143 (C.D. Cal. 2015) ..................................................................... 4

*In re Bluetooth Headset Products Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................. 4

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005) ....................................................................... 9

ii

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539, 570 (9th Cir. 2019) ........................................................................... 4

*In re Magsafe Apple Power Adapter Litig.*,
    2015 WL 428105 (N.D. Cal. 2015) ......................................................................... 11

*In re Omnivision Technologies*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ................................................................... 5,6

*In re Optical Disk Drive Prod. Antitrust Litig.*,
    2016 WL 7364803 (N.D. Cal. 2016) ................................................................... 11,13

*Ma v. Covidian Holding, Inc.*,
    2014 WL 360196 (C.D. Cal. 2014) ........................................................................... 7

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ................................................................................ 11

*Officers for Justice v. Civil Service Commission of SF*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................... 6

*O'Sullivan v. AMN Servs., Inc.*,
    12-cv-2125 (N.D. Cal. 2014) .................................................................................... 7

*Paul, Johnon, Aliston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .................................................................................... 3

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .................................................................................. 5

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................. 14

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. 2012) ....................................................................... 12

*Singer v. Becton Dickinson & Co.*,
    2010 WL 2196104 (S.D. Cal. 2010) ................................................................... 10,14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 3

*Steiner v. Am. Board Co.*,
    248 Fed. Appx. 780 (9th Cir. 2007) .......................................................................... 9

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ................................................................................ 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................................... *passim*

*Welch v. Metro Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .................................................................................. 11

*Zamora v. Lyft*,
    2018 WL 4657308 (N.D. Cal. 2018) ....................................................................... 4,8

iii

**State Cases**

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016) ..................................................................................................................3

*McLean v. State*,
    1 Cal. 5th 615 (2016) ..................................................................................................................7

**Federal Statutes, Rules and Regulations**

Fed. R. Civ. P. 23(h) ......................................................................................................................3

NOT. OF MOT. & PL. UNOPPOSED MOT. FOR ATTORNEYS' FEES AND COSTS, AND
INCENTIVE AWARD,
CASE NO.: 4:18-cv-06510-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On February 6, 2020, this Court granted preliminary approval of all of the terms of the Parties' Settlement Agreement, including an attorneys' fee award at the Ninth Circuit's benchmark, 25% of the common fund, equal to $187,500. The Court preliminarily approved $6,000 in out-of-pocket legal costs, a $7,500 incentive payment for the named Plaintiff, and an estimated $10,000 for administration costs ECF No. 79 ("Preliminary Approval Order" or "PAO"). Class Counsel has obtained meaningful financial recovery for the class, particularly in these economically challenging times. The Class response to this Settlement has been unanimously positive – with no objections and no opt-outs. *See* Declaration of Abigail Schwartz of Rust Consulting, Inc. ("Rust Decl.") at ¶¶ 13-14.

Accordingly, as permitted under the Settlement Agreement, Class Counsel now moves for final approval of these fees and costs. The results in this case justify at least the benchmark fee award, for at least the following reasons:

- *First*, the 44 members of the Class are being offered an average net cash payment of approximately $12,079.54. Declaration of Bryan J. Schwartz ("Schwartz Decl.") at ¶ 20. This represents an excellent outcome in a misclassification case where victory and recovery were never certain, right until the conclusion of litigation. Declaration of Bryan J. Schwartz in Support of Plaintiff's Motion for Preliminary Approval ("Schwartz Decl. ISO Preliminary Approval") at ¶¶ 21-22.

- *Second,* as noted above, the Class Members completely support the settlement, having been notified of the fees and costs that were preliminarily approved; not a single class member has opted out, and no class member has objected. Rust Decl. at ¶¶ 13-14; Schwartz Decl. at ¶ 6.

- *Third*, the fees requested are slightly less than Class Counsel's documented lodestar to date – $188,992.50 – with still extensive work yet to be performed in shepherding final approval and a long-anticipated period of settlement administration Schwartz Decl. ¶ 17.

1

This represents a 0.99 lodestar multiplier.

- *Fourth*, the settlement fund is non-reversionary. If any payments made to class members remain uncashed 90 days after the initial mailing, then such payments will be either: (1) distributed to a *cy pres* recipient, if the total unclaimed funds is less than or equal to $10,000; or (2) redistributed *pro rata* to class and collective members who timely negotiated their checks, if the total unclaimed funds exceed $10,000. If any payments made to participating class members in the second distribution are uncashed 90 days after the second mailing, then such payments will be distributed to a *cy pres* recipient. Exh. A to Schwartz Decl., Settlement Agreement ("Exh. A") at ¶ 48.

- *Fifth*, the releases appropriately encompass only claims related to the facts and/or causes of action alleged in the complaint. Exh. A at ¶ 8.

- And, *sixth,* the fee award should recognize that counsel negotiated terms to maximize the chance of meaningful recovery from the small and presently COVID-impacted Defendant, originally with a Standby Letter of Credit term, and now with a payment plan based upon revenues reporting. Exh. A at ¶ 69; Addendum at pp. 2-4.

For the reasons above, and as further detailed below, the Court should readily grant final approval of Class Counsel's requested fee award and reimbursement of out-of-pocket litigation costs.[1]

## II.    SUMMARY OF SETTLEMENT TERMS

The terms of this non-reversionary settlement are set forth in more detail in Plaintiff's Motion for Preliminary Approval of the Amended Settlement. ECF No. 74. Out of the $750,000, which does not include the employer's share of payroll taxes nor the costs of settlement administration, the Settlement calls for:

- A net average distribution of $12,079.54 per class member, assuming full participation;

- $187,500 in attorneys' fees –25% of the settlement fund, and approximately equal to counsel's lodestar;

---

[1]  Relevant procedural and factual background is recited in Plaintiff's motion for final approval of class action settlement, filed herewith.

- $6,000 in out-of-pocket legal costs;[2]

- $7,500 as an incentive award for Plaintiff Billy Alabsi for his service to the Settlement Class and his enhanced release;

- $7,500 to be distributed to California's Labor Workforce Development Agency ("LWDA") to pay the government's portion of penalties under the California Labor Code's Private Attorneys General Act of 2004, as amended, California Labor Code sections 2698 et seq.; and

- $10,000 to compensate Rust Consulting, Inc., for their settlement administration services.

## III.   THE ATTORNEYS' FEES REQUESTED ARE JUSTIFIED.

Federal Rule of Civil Procedure 23(h) authorizes the Court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts may award class counsels' fees according to the percentage of the common fund sufficient to provide a reasonable fee. *See Paul, Johnon, Aliston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Here, the Defendant has agreed not to oppose Plaintiff's request for attorneys' fees of $187,500, *i.e.*, 25% of the common fund of $750,000. Ex. A at ¶ 53.

Payment to Class Counsel from the common fund on a percentage-of-the-fund basis is appropriate here. The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) ("We join the overwhelming majority of federal and state courts in holding that ... the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created. The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides

---

[2] As of filing, Class Counsel's out-of-pocket costs total $5,844.46. Given that the Addendum, filed herewith, provides for a potentially years-long payment plan for Defendant, Class Counsel requests the difference, $155.54, for incidental costs related to enforcing settlement compliance. *See* Schwartz Decl. at ¶ 16.

NOT. OF MOT. & PL. UNOPPOSED MOT. FOR ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARD,
CASE NO.: 4:18-cv-06510-VC

counsel to seek an early settlement and avoid unnecessarily prolonging the litigation—convince us the percentage method is a valuable tool that should not be denied our trial courts.") (internal citations omitted).

The Ninth Circuit has specifically affirmed this method of calculating attorneys' fees. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit has "allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (describing "significant benefits to the percentage approach").

The Ninth Circuit's benchmark for reasonable fees under the percentage approach is 25 percent of the gross settlement amount. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *14 (N.D. Cal. Jan. 26, 2007); *see also In re Bluetooth*, 654 F.3d at 942; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Here, Class Counsel's fee request is exactly 25% of the gross settlement amount, making the request presumptively reasonable.

Class Counsel's requested fees also do not represent a windfall, so a downward adjustment from the Ninth Circuit's 25% benchmark is not warranted. *Cf. Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (finding that the district court's downward adjustment of the 25% benchmark was reasonable given that an award of 25% of the settlement amount would have been a windfall). Here, Class Counsel has spent 395.9 hours on this case as of filing, with a current lodestar of $188,992.50. Schwartz Decl. at ¶ 17. The lodestar is almost equivalent to the requested fees, with a slightly negative multiplier of 0.99. Negative lodestar multipliers have also been an explicit basis for courts to award attorneys' fees in excess of the 25% benchmark requested here. *See Goodwin v. Citywide Home Loans, Inc.,* 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015) (awarding one-third of FLSA action settlement fund in part because lodestar cross-check multiplier of 0.60); *Zamora v. Lyft, Inc.* 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (awarding one-third of settlement fund in part because lodestar cross-check multiplier of 0.86). The slightly negative lodestar multiplier here supports Class Counsel's fee request.

**A.      Given the Strong Results Obtained and the Risk Borne by Class Counsel, the Award Sought Is Justified.**

The Ninth Circuit's 25% benchmark is to be applied with "reference to all the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (internal quotation and citation omitted). Among the factors the Ninth Circuit has considered relevant to determining a fee award are: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the class; and (6) the lodestar cross-check and awards made in similar cases. *In re Omnivision Technologies* 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008). When the Court awards fees above or below the benchmark, the "record must indicate the Court's reasons for doing so." *Glass*, 2007 WL 221862, at *14 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000)). Here, each of these factors supports approval of the requested fee award.

**1.      The Strong Results Achieved Support the Fee Request.**

Class Counsel promptly achieved significant monetary relief for the class.

**a.      Class Counsel Secured a Strong Financial Outcome.**

The ultimate reasonableness of the fee hinges primarily on the "overall result and benefit to the class[.]" *In re Omnivision Technologies*, 559 F. Supp. 2d at 1046. Here, the requested compensation would appropriately compensate Class Counsel for the strong result achieved on behalf of the Class, including substantial monetary benefits to the Class Members.

Obtaining relief was never certain – Class Members could easily have gotten $0. The current economic climate presents great uncertainty for companies like Defendant. *See* PAO at 11:5-8 (reflecting Defendant's financial concerns disclosed at mediation); *see also* PAO at 11:8-10 (regarding the Court's *in camera* review of Defendant's financial information); Addendum (reflecting the impact of the ongoing pandemic and its effect on domestic travel on Defendant's inability to comply with the original Settlement Agreement).

Because of concerns about Defendant's solvency even before the COVID-19 pandemic, Class Counsel secured a Standby Letter of Credit (SLOC), so that the settlement installment payments would

be guaranteed by a bank. Schwartz Decl. at ¶ 8. However, with COVID-19's devastating impact on domestic travel, shortly before the time for final approval, the bank indicated it would not be willing to approve the SLOC, which it had previously committed to doing. *Id*. at ¶ 9. The parties maintained contact and postponed settlement approval multiple times, hoping the economy would rebound so that the SLOC could be obtained. *Id*. at ¶ 10. Since it still is not forthcoming, Class Counsel negotiated the most favorable possible terms under the circumstances, with a payment plan that ensures a meaningful contribution immediately, and then ongoing subsequent payments, depending on Defendant's revenues. *Id*. at ¶ 11. If Defendant rebounds mostly or fully once the economy begins to recover (likely with the vaccines now in distribution), then Defendant will pay off the settlement obligations promptly over the course of a year. *Id*. at ¶ 12. Having consulted with outside bankruptcy counsel, and having recently experienced the bankruptcy of another luxury transportation-related defendant after final approval was granted, undersigned Plaintiff's counsel is confident that this payment plan approach is most likely to ensure full payment in the near future to the Class Members, and certainly more likely than a protracted bankruptcy proceeding. *Id*. at ¶ 13.

"[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Service Commission of SF*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Omnivision Technologies*, 559 F. Supp. 2d at 1042. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

This Settlement, which will pay a net of $12,079.54 per participating Class Member, on average, compares very favorably with other settlements in similar cases. Schwartz Decl. at ¶ 20. Though it is not necessary to gauge the result against the percentage of best-day recovery, the settlement achieved here also compares favorably with other approved settlements by this metric. As also described in the Schwartz Declaration in Support of Plaintiff's Motion for Preliminary Approval of the Settlement (Schwartz Decl. ISO Preliminary Approval ¶ 10; ECF No. 67-1, Supplemental Schwartz Decl. ¶¶ 3-14), Plaintiff estimate that including unpaid wages, premiums, reimbursements, interest, and penalties, Class

Members' claims are worth: miscalculation of overtime ($27,283.84); missed meal breaks ($231,218.83); missed rest periods ($336,120.19); unpaid minimum wages ($44,685.27); expense reimbursements ($672,742.50); inaccurate wage statements ($59,900); and waiting time penalties ($68,801.92); totaling $1,440,752.55. PAO 9: 10-22; Supplemental Schwartz Decl. ¶¶ 7-28. Plaintiff also estimates PAGA penalties at $1,042,000. Supplemental Schwartz Decl. ¶¶ 15-28.The Settlement Fund represents approximately 52% of the total, best-day exposure in the case, before PAGA claims, and 30.2% of all claims. PAO 9: 18-19. By way of comparison, *see, e.g.*, *Viceral v. Mistras Grp., Inc.*, 216 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving a settlement representing 8.1% of the full verdict value); Schwartz Decl. ISO Preliminary Approval at 85-110, *O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal. 2014) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief); *Ma v. Covidian Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

Plaintiff's Counsel has achieved a solid result on behalf of the class and collective members, readily warranting the requested fee award.

> **b.    Class Counsel Also Vindicated the Public Policy of Payment of Wages Due.**

Particularly in a time of great economic uncertainty, the timely payment of workers' wages is an important public policy. *See, e.g.*, *Biggs v. Wilson*, 1 F.3d 1537, 1541–42 (9th Cir. 1993) (public policy of prompt payment of wages); *McLean v. State*, 1 Cal. 5th 615, 626 (2016) ("California has long regarded the timely payment of employee wage claims as indispensable to the public welfare" because "of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due.") (internal citations and quotation marks omitted)). Moreover, the Ninth Circuit has observed that "in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050 n.5.

Under the terms of the settlement, these workers will each receive substantial payments averaging

$12,079.54 net, at a moment of desperate need. The value of the relief achieved on behalf of class and collective action members weighs in favor of the requested fee award.

### 2. Class Counsel Has Borne Substantial Risk to Litigate this Case.

The substantial risks involved in prosecuting this action weigh strongly in favor of the requested compensation. *See generally Zamora* 2018 WL 4657308, at *3; *EK Vathana v. Everbank*, 2016 WL 3951334, at *2 (N.D. Cal. July 20, 2016) (awarding one third of settlement fund, noting: "All in all, the risk at trial would have been great, and while the total recovery for some Plaintiff may seem modest, it is far better than $0 that might have resulted.").

In addition to the economic risks of litigating against a corporation at risk of bankruptcy in the midst of a recession and pandemic, Class Counsel faced risks at each stage of the case. While Class Counsel believe that the Class' claims are strong, they are not without risk. Plaintiff asserts that drivers were misclassified as independent contractors, and that no relevant exemption to the payment of wages under the federal Fair Labor Standards Act (FLSA) and relevant state laws apply to drivers. Defendant vigorously disputes these assertions, insisting that drivers are independent contractors. Defendant argues that all of the damages are contingent upon Plaintiff prevailing on the misclassification issue. As is described in Plaintiff's contemporarily filed Motion for Final Approval of Amended Class Action Settlement, the issue of driver misclassification is hotly contested and ever-changing. And, in November 2020, California voters approved Proposition 22, which could only make it harder for drivers to prevail. *See* Ex. B to Schwartz Decl., *Uber and Lyft Drivers in California Will Remain Contractors*. Despite all of these risks, Class Counsel remained committed to vindicating the rights of the Class and has reached a strong settlement.

### 3. Class Counsel's Skill and Experience in Wage-and-Hour Cases Also Contributes to the Reasonableness of the Fee Request.

Class Counsel has represented tens of thousands of employees in dozens of wage/hour class actions like this one. Schwartz Decl. ¶ 22. Class Counsel Bryan Schwartz was formerly Chair of the State Bar of California's over 7,500-member Labor and Employment Section (now called the California Lawyers Association L&E Section), repeatedly led the State Bar's Advanced Wage and Hour Seminar, served on the Executive Board of the California Employment Lawyers Association (CELA), helped lead

the CELA Wage and Hour Conference, and has published frequently and spoken at numerous conferences regarding wage and hour litigation, with a special focus on class action settlements. Schwartz Decl. ¶ 26-31.  Class Counsel's excellent representation in this case, against the backdrop of their considerable expertise and leadership nationwide in wage-and-hour litigation, further supports the fee request here.

### 4. Class Counsel Have Borne the Financial Burden of Litigating on a Contingency Basis.

An attorney merits a significantly larger fee when the compensation is contingent, rather than being fixed on a time or contractual basis. *See Vizcaino*, 290 F.3d at 1048-51. In such cases, it is typical for class counsel to receive a multiplier on their lodestar of 2x or greater. *See, e.g., Vizcaino*, 290 F.3d at 1051 & n.6 (affirming lodestar multiplier of 3.65 in light of the complexity and risk, and compiling cases with multipliers up to 19.6); *Steiner v. Am. Broad Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); Schwartz Decl. ISO Preliminary Approval ¶ 19: Exh. 3, *Boyd v. Bank of America*, SA13-CV-00561 (ECF Nos. 379 and 397) (C.D. Cal. January 19, 2016) (granting one-third fee award with lodestar multiplier of 4.13 in cross-check); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123, 1125 (C.D. Cal. 2008) (applying a 5.2 multiplier and collecting cases); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 33480455, at **1-2 (N.D. Cal. June 30, 2011) (4.3 multiplier, and collecting cases). Here, Plaintiff seeks a multiplier less than 1, despite the risk and delay.

In the time that the case has been pending, Class Counsel have received no compensation or reimbursement for their efforts in prosecuting the action on behalf of the class members, and have advanced all expenses, which undersigned Class Counsel outlines in his supporting declaration. Schwartz Decl. ¶ 16. The significant outlay of monetary and personnel resources has been completely at risk and wholly dependent upon obtaining a substantial recovery for the Classes. *See In re Heritage Bond Litigation*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (granting attorneys' fees, noting as one of its reasons: "Plaintiff's counsel proceeded entirely on contingency basis, while paying for all expenses incurred. There was no guarantee of any recovery, and thus, counsel was subjected to considerable risk of no compensation for time or no reimbursement for expenses.").

The hundreds of hours spent in this contingency litigation, which could have been spent on less risky or hourly-paying matters, are a particularly heavy burden for small firms, such as Bryan Schwartz

Law, which at all times had six or fewer attorneys. Schwartz Decl. ¶ 33. *See Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) ("Firms of this size face even greater risks in litigating large class actions with no guarantee of payment. The Court finds that the considerable risk in this case due to the uncertain legal terrain, coupled with Counsel's contingency fee arrangement, weigh in favor of an increase from the benchmark rate."); *see also, e.g.*, *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding an attorney fee higher than the benchmark of 25%, among other factors supporting the upward departure, "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it for more than two years"). Here, Class Counsel is a small firm facing great risks, and still requests only the benchmark fees.

Accordingly, this factor also weighs in favor of the compensation sought here.

### 5.      Class Support Has Been Universal.

As previously mentioned, no members of the class opted out and none objected. Schwartz Decl. ¶ 6; Rust Decl. ¶¶ 13-14. This indicates strong support from the Class, weighing in favor of approving attorneys' fees here.

### 6.      The Lodestar Cross-Check Further Support the Fee Request.

The Court may perform a lodestar cross-check on the common fund fee recovery here. *See, e.g., Glass*, 2007 WL 221862, at *15 (lodestar cross-check permitted, citing, *inter alia*, *Vizcaino*, 290 F.3d at 1050-1051). Here, the lodestar provides strong support for Class Counsel's fee request. As noted above, citing *Vizcaino, inter alia,* courts routinely grant lodestar multipliers far above what Class Counsel requests here, proving the reasonableness of Class Counsel's request. In addition to the reasonableness of Class Counsel's fee request, Class Counsel's rates and hours that went into calculating Class Counsel's lodestar are also reasonable, as detailed below.

#### a.      Class Counsel's Rates for the Lodestar Cross-Check are Reasonable for Experienced Wage-and-Hour Practitioners in the Local Legal Market.

Class Counsel's claimed rates are reasonable and appropriate for experienced wage-and-hour attorneys practicing in the San Francisco Bay Area legal market. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v.*

*Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (explaining that counsel should be compensated at the "prevailing rate in the community for similar work").

Class Counsel claims 2021 hourly rates of $775 for principal attorney Bryan Schwartz (a 2000 graduate) and lesser amounts for associates and a fellow, based upon their years of graduation. Schwartz Dec. ¶ 17, 21, Exh. E to Schwartz Decl. Counsel claims their current rates, as is appropriate to compensate for delay in payment over the course of the litigation. *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement.") (internal citations omitted); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (noting that "delay in payment . . . is a factor properly considered in arriving at a reasonable hourly rate. District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement.").

These rates are also well supported by case law in the Northern District. *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.,* 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240."); *In re Optical Disk Drive Prod. Antitrust Litig.*, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving lodestar cross-check with partner rates ranging from $525 to $950, associate rates ranging from $250 to $605, and paralegal rates ranging from $125 to $265).

Undersigned counsel has repeatedly had his customary rates approved by this and other courts under similar circumstances. Schwartz Decl. ¶ 21-28.  The rates underlying the lodestar cross-check are reasonable, further supporting the request fee award.

b.       **Counsel's Claimed Hours are Reasonable for this Action.**

To date, Class Counsel have devoted substantial effort to this matter, collectively spending over 395 hours since this action's inception, as of January 29, 2021. Schwartz Decl. ¶ 17; Exh. D to Schwartz Decl. As a result, Class Counsel's collective billable fees before today represented about $188,992.50 (slightly over the requested fees of $187,500). Schwartz Decl. ¶ 17, Exh. D to Schwartz Decl. This amount does not include the additional time that Class Counsel will expend in preparing for the final approval hearing and subsequent work associated with the long period of settlement distribution. Schwartz Decl. ¶ 17.

From the filing of the Complaint, on October 24, 2018, ECF No. 1, until the present, Class Counsel: filed a complaint; participated in informal and formal discovery with Defendant; engaged in investigation and research; participated in a full-day mediation; executed a memorandum of understanding; engaged in months of settlement negotiations; executed a Settlement Agreement; obtained a tentative order granting class certification; obtained preliminary approval of the Settlement; overseen administration efforts; and executed an Addendum to the Settlement Agreement after months of discussions with Defendant, regarding their financial status and requiring a payment plan. Schwartz Decl. ¶¶ 2-4, 9-13; Schwartz Decl. ISO Preliminary Approval ¶¶ 2-7.

Even if undersigned counsel were to accrue *no* additional fees and no additional work were required between now and the finality of the settlement administration (which is not the case), the slightly negative 0.99 multiplier between the actual fees to date and the fees sought here is well within the range of reasonableness, based on the quality of the legal work and the exceptional result in the face of serious risks. *See, e.g.,. Vizcaino* 290 F.3d at 1052-54 (holding that a multiplier of 3.65 was appropriate after surveying 34 common fund cases from 1996 to 2001 with an average multiplier of 3.32).

## IV.     THE COURT SHOULD AWARD THE REQUESTED LITIGATION COSTS.

Courts routinely reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a contingent fee basis. The recovery of costs is to include all out-of-pocket costs not part of overhead which are typically billed to a client. *See, e.g., Rutti v. Lojack Corp.*, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance

telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."). *See also, e.g., Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1190 (11th Cir. 1983) ("[E]xpenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ."); *In re Optical Disk Drive*, 2016 WL 7364803, at *10  (holding, "Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs," and citing cases adding to the list court fees and fees for service of process, court reporters, transcripts, computer research, photocopies, telephone/fax, and meals and lodging). In this case, all of the categories of costs sought by Plaintiff are typically billed to a client. *See* Schwartz Decl. ¶ 16.

Plaintiff's current costs are approximately $5,844.46, and expected to reach at least $6,000, given Defendant's extended timeline for depositing the Total Settlement Amount per the Addendum. *See* Schwartz Decl. ¶ 16. These costs include but are not limited to legal research fees, printing costs, filing and service fees, and a $4,500 mediation fee. These costs are fair for a case in which such a substantial recovery has been achieved for the class. *See, e.g.*, *Everbank*, 2016 WL 3951334, at *3 (approving reimbursement of $40,127.28 out of $750,000 common fund, or 5.35% of the common fund); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (approving litigation costs of $148,402 in wage & hour settlement valued at $8.5 million, or approximately 2% of the common fund).

All costs incurred were necessary to the prosecution of this litigation and would normally have been billed to a client paying for counsel's services on a regular basis. Schwartz Decl. ¶ 16. The costs for which reimbursement is requested have been adequately documented and were reasonably incurred for the benefit of the 44 Class Members. The Court should not hesitate in awarding costs.

## V.    THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARD.

In addition to approving the requested fees and costs, the Court should approve the incentive award sought. The amount requested is reasonable in light of the ample average Class Member recovery, and are

fair compensation for the extraordinary efforts and risk of reputational harm the Plaintiff faced by bringing this case and remaining dedicated to its success for over two years.

Enhancement payments "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958-59.

Here, the only named Plaintiff, Billi Alabsi, has spent dozens of hours on this case since the commencement of this action on October 24, 2018, over two years ago. PAM at 16:23-28. Without his efforts as the lone named Plaintiff, the class members would not have recovered anything.

The enhancements sought here are less than or equal to the enhancements sought in many other cases on which plaintiffs spent time comparable to Mr. Alabsi. (*See e.g.*, *Singer v. Becton Dickinson & Co.* (S.D. Cal. June 1, 2010) 2010 WL 2196104, at *9 (awarding $25,000 to the class representative for 2.5 years of service); *Alvarado v. Nederend*, 2011 WL 1883188, at *11 (E.D. Cal. May 17, 2011) (awarding a $7,500 incentive award to each of the five representatives where gross settlement amount was $505,058.60 and representatives "(1) travelled … for mediation sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation"); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *15 (E.D. Cal. June 30, 2011) (awarding $11,250 each to two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class").

Mr. Alabsi, in his Declaration in Support of Preliminary Approval, detailed how he, among other activities: assisted Class Counsel in preparation of the pleadings in this action; submitted a declaration in support of transfer of venue; responded to Requests for Production of Documents that were served on him; produced evidentiary documents to Class Counsel; participated in a full-day mediation, requiring him to shut down his restaurant for one full day; assisted Class Counsel in settlement negotiations, ensuring that the settlement would be in the best interest of the Class; and communicated with other Class Members

14

regarding the lawsuit and settlement. These activities are arguably greater than the activities undertaken by Plaintiff in *Alvarado* and *Bond*, *supra*, especially when considering that Mr. Alabsi was the sole named Plaintiff and Class Representative in this case.

An incentive award of $7,500 is the minimum amount necessary to promote the public policy interest in encouraging workers with wage-and-hour claims to assert their rights, despite possible negative repercussions of doing so. See Schwartz Decl. ISO Preliminary Approval at ¶ 28.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court: (1) approve Class Counsel's request for attorneys' fees of $187,500 (25% of the settlement fund); (2) $6,000 to reimburse out-of-pocket legal costs; (3) a $7,500 incentive payment for the named Plaintiff; and (4) an estimated $10,000 for administration costs.

Dated: January 29, 2021                                    BRYAN SCHWARTZ LAW

                                                           By:*/s/ Bryan J. Schwartz*_____
                                                           Bryan J. Schwartz
                                                           *Attorney for Plaintiff and the Class*

NOT. OF MOT. & PL. UNOPPOSED MOT. FOR ATTORNEYS' FEES AND COSTS, AND
INCENTIVE AWARD,
CASE NO.: 4:18-cv-06510-VC