UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY ALABSI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAVOYA, LLC,<br><br>　　　　Defendant. | Case No. 18-cv-06510-KAW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL; GRANTING MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. Nos. 93, 94 |

Plaintiff Billy Alabsi filed the instant putative class and collective against Defendant Savoya, LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and various state labor laws. (*See* First Am. Compl. ("FAC"), Dkt. No. 29.) The parties subsequently settled the case, and on February 6, 2020, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Preliminary Approval Ord., Dkt. No. 79.) Pending before the Court are: (1) Plaintiff's motion for final approval of the settlement, and (2) Plaintiff's motion for attorney's fees, costs, and an incentive award. (Pl.'s Mot. for Final Approval, Dkt. No. 93; Pl.'s Mot. for Attorney's Fees, Dkt. No. 94.) No opposition was filed.

Having reviewed the parties' filings, the relevant legal authority, and the arguments made at the April 1, 2021 motion hearing, and for the reasons set forth below, Plaintiff's motion for final approval is GRANTED, and Plaintiff's motion for attorney's fees is GRANTED.

## I. BACKGROUND

### A. Factual Background

Defendant operates a chauffeured limousine and luxury car transportation service. (FAC ¶ 15.) Plaintiff and the class worked for Defendant as drivers. (FAC ¶ 1.)

Plaintiff alleges that Defendant misclassifies its drivers as independent contractors, rather

than employees. (FAC ¶¶ 15, 29.) Plaintiff asserts that Defendant has and exercises extensive control over its drivers, assigning customers, pickup locations and times, and destinations. (FAC ¶ 18.) Further, drivers are penalized for declining assignments by not receiving future assignments. (FAC ¶ 19.) Defendant requires drivers to provide their own vehicles, and imposes requirements as to color, vehicle age, vehicle type, liability insurance, and maintenance. (FAC ¶¶ 20-21, 24.) Drivers must use tablets with computer-generated signage, confirm radio and temperature preferences with passengers during the first five minutes of the trip, and never discuss rates with passengers. (FAC ¶ 22.) Drivers are required to keep Defendant's app on and use status update buttons to indicate when they are onsite, when the passenger is onboard, and when the passenger is dropped off. (FAC ¶ 23.) Drivers must also arrive at jobs fifteen minutes early, or "spot time," and attend mandatory meetings. (FAC ¶¶ 32-33.) Finally, Defendant has the right to terminate drivers without cause with 30 days' notice. (FAC ¶ 25.)

Plaintiff asserts that by misclassifying drivers, Defendant fails to reimburse drivers for expenses. (FAC ¶ 29.) Thus, drivers may earn less than minimum wage after taking into account expenses. (FAC ¶ 67.) Plaintiff also alleges that Defendant does not pay for "spot time" and mandatory meetings. (FAC ¶ 68.) Finally, Plaintiff alleges that Defendant fails to pay overtime because Defendant compensates drivers at the same rate schedule for all hours worked. (FAC ¶ 76.)

### B. Preliminary Approval

On October 24, 2018, Plaintiff filed the instant putative class and collective action. (Compl., Dkt. No. 1.) After the Court denied Defendant's motion to transfer and granted in part and denied in part Defendant's motion to dismiss, the parties attended private mediation. (Dkt. Nos. 52, 56.) On August 29, 2019, the parties successfully mediated the case, facilitated by mediator Cynthia Remmers. (Schwartz Decl. ¶ 3, Dkt. No. 95.)

On October 23, 2019, Plaintiff filed an unopposed motion for preliminary approval. (Dkt. No. 62.) The Court requested certain changes and additional supplemental briefing. (Dkt. Nos. 74, 76-78.) On February 6, 2020, the Court granted Plaintiff's motion for preliminary approval.

Per the Settlement, Defendant agrees to pay a Total Settlement Amount of $750,000 to

settle the claims of the 44 drivers who worked for Defendant in California. (Schwartz Decl., Exh. A ("Settlement Agreement") ¶ 35, Dkt. No. 95-1.) Of the Total Settlement Amount, Class Counsel may seek an award of 25%, or $187,500 for attorney's fees and $6,000 in costs. (Pl.'s Mot. for Final Approval at 4.) The Total Settlement Amount also includes a $7,500 incentive payment for the named Plaintiff, and an estimated $10,000 for administration costs. (*Id.*; Settlement Agreement ¶¶ 45, 56.) Finally, the Total Settlement Amount includes $10,000 in penalties under California's Private Attorneys General Act ("PAGA"); $7,500 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $2,500 will be part of the Net Settlement Amount for distribution to the participating class members. (Settlement Agreement ¶ 61.) This leaves a Net Settlement Amount of $531,500 for the 44 class members.

Settlement funds will be distributed based on the number of workweeks completed during the class period. (Settlement Agreement ¶¶ 25, 47.) Additionally, 5% of the Net Settlement Amount will be allotted to waiting time penalties, as the waiting time penalties represent approximately 5% of the total damages estimate. (Chin Decl. ¶ 6, Dkt. No. 78.) This amount will be divided between former drivers, based on their average weekly earnings. (Chin Decl. ¶ 7.)

The claims being released by the Settlement are the causes of action asserted in the instant case, as well as any additional wage and hour claims that could have been asserted based on the facts and transactions pled in the complaint. (Settlement Agreement ¶ 8.) The class is bound by the settlement unless they timely submit an exclusion letter. (Settlement Agreement ¶ 64(b).)

Individuals who do not opt out will receive a settlement check. The settlement check will state: "By cashing this check, you are agreeing to release all claims covered by this settlement. You will be opting into the Fair Labor Standards Act ('FLSA') settlement, and you will also be exercising and releasing your claims under the FLSA." (Settlement Agreement ¶ 68(c).) Payment will be made in three installments, and Defendant was required to deliver the Total Settlement Amount in three equal payments, every six months, to the Settlement Administrator. (Settlement Agreement ¶¶ 69, 70.) The Settlement also required that Defendant obtain a Standby Letter of Credit ("SLOC") from a commercial bank, providing a guarantee to satisfy the settlement amount. (Settlement Agreement ¶ 69.)

1  Class members will have 180 days to cash the settlement check. (Settlement Agreement ¶
2  48; Dkt. No. 76-2.) Checks that are not cashed will be voided and distributed in the next
3  installment pro rata to the class members who did cash their checks. Any third installment checks
4  not cashed will be voided; if the amount is over $20,000, the amount will be re-distributed to
5  drivers who cashed their third installment check. If it is under $20,000, the amount will be paid to
6  the cy pres beneficiary, Legal Aid at Work. (Settlement Agreement ¶ 48; Dkt. No. 76-2)

### C. Post-Preliminary Approval

Plaintiff's motion for final approval was originally set for hearing on May 21, 2020. (*See* Preliminary Approval Ord. at 13.) Defendant, however, had difficulty obtaining the SLOC required by the Settlement due to the effect of the COVID-19 public health emergency on its business operations. (*See* Dkt. No. 80; *see also* Schwartz Decl. ¶¶ 9-10.) As a result, Defendant requested three continuances of the final approval hearing date, which the Court granted. (*See* Dkt. Nos. 82, 86, 90.)

Defendant remains unable to obtain the SLOC. (*See* Gleason Decl. ¶ 16, Dkt. No. 98; Schwartz Decl. ¶ 9.) Further, Defendant is unable to tender its first payment of $250,000. (Gleason Decl. ¶ 22.) Accordingly, on January 26, 2021, the parties entered into an addendum to the Settlement ("Addendum"). (Schwartz Decl. ¶ 11; Dkt. No. 102-1 ("Addendum").) The Addendum provided for a payment plan, including a $60,000 initial payment. (Addendum at 2.) Thereafter, Defendant will deposit additional funds each month depending on its revenue; for example, Defendant will pay $3,500 if the previous month's revenue is at least 40% of 2019 revenue for the same month, and $7,500 if the previous month's revenue is at least 50% of 2019 revenue for the same month. (*Id.* at 2-3.) The amounts will increase up to $57,500 if the previous month's revenue is at least 80% of 2019 revenue for the same month. (*Id.* at 3.) No payment is required if revenue is less than 40% of 2019 revenue for the same month. (*Id.*) These monthly payments will continue until the total amount deposited equals the Total Settlement Amount. (*Id.*) Once $250,000 is deposited, the Settlement Administrator will issue the first installment payment, with the second and third installment payments following with each additional $250,000 in funds. (*Id.*) The parties believe that this payment plan will allow Defendant to meet its payment

obligations. (Gleason Decl. ¶ 23; Schwartz Decl. ¶¶ 11-13.)

On January 29, 2021, Plaintiff filed the instant motions for final approval, attorney's fees and costs, and an incentive award. No oppositions were filed.

## II. LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

## III. DISCUSSION

### A. Final Approval

#### i. Addendum

As an initial matter, the Court finds that the Addendum's payment plan is appropriate. The parties have provided sufficient evidence that the Settlement's prior payment schedule and SLOC requirement will result in payments being further delayed to the class and/or the possibility that Defendant will be unable to pay at all. Indeed, Class Counsel noted that he "recently experienced

5

1    the bankruptcy of another luxury transportation-related defendant after final approval was granted
2    to one of [his] class action settlements." (Schwartz Decl. ¶ 13.) Based on Class Counsel's
3    experience and his consultations with outside bankruptcy counsel on this matter, Class Counsel
4    believes that the payment plan was most likely to ensure full payment to the class. (Schwartz
5    Decl. ¶ 13.) Likewise, Defendant's Chief Operating Officer describes the effects of COVID-19 on
6    business, and asserts that Defendant "will be able to pay the full amount owed under the
7    Settlement according to the payment plan . . . before it would be able to secure an SLOC under the
8    present circumstances." (Gleason Decl. ¶¶ 16, 23-24.) Under these circumstances, the Addendum
9    is a reasonable change intended to ensure the class is paid in full under the Settlement.

10   The Court also finds that additional notice and opt-out period is not required. The Second
11   Circuit has found that "[n]either due process nor Rule 23(e)(3) requires . . . a second opt-out
12   period whenever the final terms change after the initial opt-out period," particularly when the
13   terms of the settlement improved following the original opt-out period. *Denney v. Deutsche Bank*
14   *AG*, 443 F.3d 253, 271 (2d Cir. 2006). Here, the Addendum does not materially change the
15   Settlement terms; it affects only the schedule of Defendant's payments, which was not described
16   in the Notice issued to the class. (*See* Abigail Schwartz Decl., Exh. A ("Class Notice").) Thus,
17   the change is unlikely to affect the decision of a class member to opt out, and additional notice
18   would serve no purpose but to further delay final approval and payments to the class.

### ii. *Churchill* Factors

20   The Court finds that the *Churchill* factors support final approval of the Settlement.
21   First, as noted in the Court's preliminary approval order, Plaintiff's case presented several
22   risks. For example, there was a risk that Plaintiff would not be able to establish his
23   misclassification claim. (Preliminary Approval Ord. at 10.) Further, there was a risk that Plaintiff
24   would not be able to prove that Defendant's violations were willful, which would reduce damages.
25   (Preliminary Approval Ord at 10-11.) Finally, there remains a significant risk of non-payment due
26   to Defendant's financial state, which has only been elevated by the ongoing COVID-19 pandemic.
27   (*Id.* at 11; Schwartz Decl. ¶¶ 9-10, 13.) In light of these risks, the Court finds that the first
28   *Churchill* factor favors approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case. The Court concludes that the second *Churchill* factor favors final approval.

Third, it is not clear Plaintiff faced any risks as to class certification, and Plaintiff does not appear to identify any such risks. This factor disfavors final approval.

Fourth, the amount offered by the Settlement is reasonable, as the Gross Settlement Amount of $750,000 represents 52% of the value of the non-PAGA claims, and 30.2% of all claims. This discount is justified by the significant legal risks and risks of non-payment described above. The Court finds that this factor favors final approval.

Fifth, Plaintiff has engaged in sufficient investigation in this case. Prior to mediation, Class Counsel obtained thousands of pages of discovery, as well as extensive mediation-related discovery concerning damages and the class list. (Schwartz Decl. ¶ 2.) Class Counsel also used the information provided by Defendant to calculate the class members' damages. (Preliminary Approval Ord. at 11.) The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement. This factor favors final approval.

Sixth, Class Counsel supports the Settlement as fair. (Schwartz Decl. ¶ 20.) Class Counsel is experienced in this area, having litigated and resolved dozens of wage and hour class and collective actions. (Schwartz Decl. ¶¶ 20-25.) Class Counsel's experience and support for the Settlement favors final approval.

Seventh, notice of the settlement was provided to the LWDA. (Schwartz Decl. ¶ 7.) The LWDA has not lodged an objection to the settlement. (Schwartz Decl. ¶ 7.) This factor favors final approval.

Finally, the reaction of the class members to the Settlement has been positive. Per the Settlement Administrator, the class list included 44 individuals. (Abigail Schwartz Decl. ¶ 6.) One notice was deemed undeliverable, as no current address was found even after a trace was performed, but the Settlement Administrator called and e-mailed the individual to advise them of their ability to submit a written exclusion request or objection. (Abigail Schwartz Decl. ¶¶ 9-10.) No class members have opted out or objected to the Settlement. (Abigail Schwartz Decl. ¶¶ 13-

1   14.) As no class members have opted out and no individuals have objected to the Settlement

2   terms, this last *Churchill* factor favors final approval.

3         Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court

4   finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion.

5   Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there

6   is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendants.

7         Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the

8   Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion

9   for final approval.

### B.   Attorney's Fees

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.*

Here, Class Counsel seeks 25% of the common fund, or $187,500. (Pl.'s Mot. for Attorney's Fees at 1.) The Court finds that this request is reasonable, given that Class Counsel seeks the benchmark amount and that no class member has objected to the proposed fee award. This case was also risky for Class Counsel. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Further, while the Settlement represents a discount, there were risks on the merits. The Court concludes that under the percentage method, the attorney's fees requested is reasonable.

The Court also applies the lodestar method as a cross-check on the percentage method. Class Counsel asserts the following hourly rates and hours billed through January 29, 2021:

| Attorney: | Hourly Rate: | Hours Billed: | Total: |
|---|---|---|---|
| Bryan Schwartz | $775 | 64.6 | $50,065.00 |
| Ryan Chin | $525 | 81.4 | $42,735.00 |
| Rachel Terb | $475 | .7 | $332.50 |
| Eduard Meleshinsky | $425 | 120.1 | $51,042.50 |
| Maren Christensen | $450 | .5 | $225.00 |
| Logan Starr | $450 | 62 | $27,900.00 |
| Logan Talbot | $425 | .2 | $85.00 |
| DeCarol Davis | $350 | .1 | $35.00 |
| Cassidy Clark | $325 | 26.5 | $8,612.50 |
| Paralegal | $200 | 39.7 | $7,940.00 |
|  |  |  | $188,972.50 |

(Schwartz Decl., Exh. E.) Class Counsel also provided information regarding counsel's experience and qualifications, as well as billing records. (Schwartz Decl. ¶¶ 21-32, Exhs. D-E.)

The Court finds that based on a lodestar method, the amount sought is reasonable. Here, Class Counsel seeks an amount that is a .99 multiplier and can expect to spend additional time on this case given the agreed upon payment plan. With respect to Class Counsel's hourly rates, courts in this district have recognized that "[i]n the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240." *In re MagSafe Apple Power Adapter Litig.*, Case No. 09-cv-1911-EJD, 2015 U.S. Dist. LEXIS 11353, at *37 (N.D. Cal. Jan. 30, 2015). Moreover, the Court notes that other courts have approved of similar hourly rates for Class Counsel in approving class settlements. *See Buckingham v. Bank of Am.*, Case No. 15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *14 (N.D. Cal. July 11, 2017) (approving hourly rates of $375 to $675, resulting in a 4.89 multiplier). Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court therefore GRANTS Class Counsel's request for an award of attorney's fees in the amount of $187,500.

C. **Attorney's Costs**

Class Counsel seeks $6,000 in costs, which is more than the $5,844.46 currently billed. (Pl.'s Mot. for Attorney's Fees at 13; Schwartz Decl., Exh. C.) Class Counsel's costs include filing fees, mediation costs, legal research, and service fees. (Schwartz Decl., Exh. C.) Class Counsel expects costs to increase to at least $6,000 through what will likely be a lengthy settlement administration, including mailing costs and research fees. (Schwartz Decl. ¶ 16.)

9

1  Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were
2  reasonably incurred, and that Class Counsel is expected to at least incur an additional $155.54 in
3  costs from administering the settlement. Accordingly, the Court GRANTS Class Counsel's
4  request for costs in the amount of $6,000.

### D.  Incentive Award

Finally, Plaintiff requests an incentive award of $7,500 for named Plaintiff. (Pl.'s Mot. for Attorney's Fees at 15.) Incentive awards to named plaintiffs are "fairly typical in class action cases." *Rodriguez v. W Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Id.* (internal citation omitted).

"Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012). In *Ko v. Natura Pet Products, Inc.*, for example, the district court rejected the requested award of $20,000 for a plaintiff who had spent approximately 50 to 100 hours on the case. No. 09-cv-2619-SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012). The district court explained that the "$20,000 [incentive award] is quite high for this district," and concluded that the requested award was excessive. Instead, the district court awarded the standard $5,000, noting that the named plaintiff would "still be compensated handsomely for her time, the $5,000 award results in either a $100 or $50 hourly rate for the 50-100 hours Plaintiff expended on this case." *Id.* Similarly, in *Ontiveros v. Zamora*, the district court rejected a $20,000 incentive award that would have compensated the named plaintiff at a $73.80 hourly rate, instead awarding a $50 hourly rate. 303 F.R.D. 356, 366 (E.D. Cal. 2014). In justifying this downward departure, the district court explained that "[o]vercompensating named plaintiffs at the expense of a reduction in the common fund available to class []members could encourage collusion at the settlement stage of class actions where a named plaintiff's interest naturally diverges from that of the class, compromising his role as a judge of adequacy." *Id.*

Here, the $7,500 incentive award sought is greater than the presumptively reasonable $5,000 award in this district. The Court, however, finds that $7,500 is reasonable in this case. At the hearing, Plaintiff's counsel stated that Plaintiff estimated he had spent approximately 200 hours on this case. Further, Plaintiff has detailed concrete reputational harm that he suffered, including how his former coworkers refused to speak to him because of his involvement in this litigation, thus costing him many personal and professional relationships. (Alabsi Decl. ¶¶ 4-5, Dkt. No. 107.) The Court also observes that the average recovery in this case is significant, with an average net payment of over $12,000 per class member. (*See* Pl.'s Mot. for Final Approval at 1.) A $2,500 increase over the presumptive award does not significantly take away from the class's recovery, nor does it suggest a likelihood of collusion. Accordingly, the Court GRANTS the request for a $7,500 incentive award.

### IV.     CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's request for final approval of the settlement, and GRANTS Plaintiff's motion for attorney's fees, costs, and an incentive award.

The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: April 15, 2021

_____
KANDIS A. WESTMORE
United States Magistrate Judge

11